**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| _____<br><br>**R.Y.M.R. and Eric Matute Castro,**<br><br>              **Plaintiffs,**<br><br>              **v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>            **Defendants**<br><br>_____ | )<br>)<br>)<br>)<br>)   **No. 1:20-CV-23598**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**<u>MOTION TO DISMISS AND MEMORANDUM IN SUPPORT</u>**

Date: November 2, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DOUGLAS G. SMITH
Deputy Assistant Attorney General, Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................... 1

LEGAL FRAMEWORK ........................................................................... 2

   I.  Legal Framework for Aliens Entering The United States Unlawfully ................. 2

   II.  Legal Framework for Immigration Custody and Release of Minor Aliens ......... 4

ALLEGATIONS ..................................................................................... 6

ARGUMENT ......................................................................................... 8

   I.  R.Y.M.R. Failed To Exhaust Administrative Remedies And Does Not Have Capacity to Sue ............................................................................................... 8

   II.  Plaintiffs' Claims For Negligence and IIED Are Barred By The FTCA's Discretionary Function Exception .............................................................................. 12

   III.  Plaintiffs' Claims For Negligence and IIED Are Barred By The FTCA's Due Care Exception ......................................................................................... 21

   IV.  Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Recovery For Constitutional Torts ............................................................................ 22

   V.  Plaintiffs' Claims Are Barred Because There Is No Private Analog ................. 24

   VI.  Plaintiffs Failed To Plead Claims for Assault or Battery ................................ 27

CONCLUSION ...................................................................................... 29

CERTIFICATE OF SERVICE .................................................................. 30

i

## **<u>TABLE OF AUTHORITIES</u>**

**Statutes:**

6 C.F.R. § 115.14 ................................................................................................................... 16

8 C.F.R. § 1236.3 ................................................................................................................. 16

8 C.F.R. § 235.3 ..................................................................................................................... 3

6 U.S.C. § 279 ..................................................................................................................... 4, 5

6 U.S.C. § 279(g) ................................................................................................................. 21

8 U.S.C. § 6 ............................................................................................................................ 3

8 U.S.C. § 11 .......................................................................................................................... 4

8 U.S.C. § 1182 .......................................................................................................... 2, 3, 21

8 U.S.C. § 1225(2)(A) ........................................................................................................... 3

8 U.S.C. § 1226 ..................................................................................................................... 3

8 U.S.C. § 1231 ................................................................................................................ 3, 15

8 U.S.C. § 1232 .......................................................................................................... 4, 5, 18

8 U.S.C. § 1325 .......................................................................................................... 2, 4, 6

28 U.S.C. § 1346 ................................................................................... 2, 22, 23, 27

28 U.S.C § 2672 .......................................................................................................... 1, 11

28 U.S.C § 2674 ................................................................................................................... 23

28 U.S.C. § 2675 ........................................................................................... 7, 9, 10, 11

28 U.S.C. § 2680 ........................................................................................... 1, 2, 12, 20

**Cases:**

*Accardi v. United States,*
    435 F.2d 1239 (3d Cir. 1970) ........................................................................ 21

*Aguilar v. ICE,*
    510 F.3d 1 (1st Cir. 2007) ............................................................................. 19

*Air Shuttle Corp. v. United States,*
    112 F.3d 532 (1st Cir. 1997) ......................................................................... 24

*Akutowicz v. United States,*
    859 F.2d 1122 (2d Cir. 1988) ........................................................................ 25

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...................................................................................... 26

*Autery v. United States,*
    992 F.2d 1523 (11th Cir.1993) ...................................................................... 13

*Bailor v. Salvation Army,*
    51 F.3d 678 (7th Cir. 1995) .......................................................................... 16

*Baloco v. ex rel. Tapia v. Drummond Co. Inc.,*

    640 F.3d 1338 (11th Cir. 2011) .................................................................................. 8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .................................................................................. 26

*Bhuiyan v. United States,*
    772 F. App'x 564 (9th Cir. 2019) ................................................................ 24

*Borquez v. United States,*
    773 F.2d 1050 (9th Cir. 1985) .................................................................... 21

*Brown v. Ransweiler,*
    171 Cal. App. 4th 516 (Cal. App. 2009) ..................................................... 27

*Bunikyte v. Chertoff,*
    No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ......................... 6, 17

*Carlsen v. Koivumaki,*
    227 Cal. App. 4th 879 (2014) ..................................................................... 27

*Castro v. United States,*
    560 F.3d 381 (5th Cir. 2009) ...................................................................... 18

*Castro v. United States*
    608 F.3d 266 (5th Cir. 2010) (en banc)....................................................... 18

*Chen v. United States,*
    854 F.2d 622 (2d Cir. 1988) ...................................................................... 24

*Cohen v. United States,*
    151 F.3d 1338 (11th Cir. 1998) .................................................................. 16

*Comm. Of Cent. Am. Refugees v. I.N.S.,*
    795 F.2d 1434 (9th Cir. 1986) .................................................................... 15

*Cortez v. United States,*
    No. 10- CV-01473, 2012 WL 3861951 (S.D. Cal. Sep. 5, 2012) ............ 27-28, 28

*Cranford v. United States,*
    466 F.3d 955 (11th Cir. 2006) .................................................................... 14

*D.B. v. Cardall*
    826 F.3d 721 (4th Cir. 2016)....................................................................... 17

*Dalehite v. United States,*
    346 U.S. 15 (1953) ..................................................................................... 20

*Dalrymple v. United States,*
    460 F.3d 1318 (11th Cir. 2006) ................................................................... 9

*Denson v. United States,*
    574 F.3d 1318 (11th Cir. 2009) .................................................................. 18

*Dorman v. Simpson,*

893 F. Supp. 1073 (N.D. Ga. 1995) ........................................................................... 23

*Dupree v. United States,*
247 F.2d 819 (3d Cir. 1957) ............................................................................. 20, 21

*Elgamal v. Bernacke,*
714 F. App'x 741 (9th Cir. 2018) ......................................................................... 24-25

*Elgamal v. United States,*
No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) ............................................. 25

*FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.,*
592 F.2d 364 (7th Cir. 1979) ................................................................................. 21

*FDIC v. Meyer,*
510 U.S. 471 (1994) .................................................................................... 12, 23

*Flores v. Lynch,*
828 F.3d 898 (9th Cir. 2016) ................................................................... 5, 6, 16, 17

*Franklin Sav. Corp. v. United States,*
180 F.3d 1124 (10th Cir. 1999) ............................................................................. 14

*Gandarillas- Zambrana v. BIA,*
44 F.3d 1251 (4th Cir. 1995) ............................................................................... 15

*Gonzalez ex rel. Gonzalez v. Reno,*
86 F.Supp.2d 1167 (S.D. Fla. 2000) ...................................................................... 8, 9

*Gonzalez–Jiminez De Ruiz v. United States,*
378 F.3d 1229 (11th Cir. 2004) ............................................................................. 27

*Harrison v. Fed. Bureau of Prisons,*
464 F. Supp. 2d 552 (E.D. Va. 2006) ...................................................................... 20

*Hornbeck Offshore Transp., LLC v. United States,*
569 F.3d 506 (D.C. Cir. 2009) .............................................................................. 23

*Hughes v. United States,*
110 F.3d 765 (11th Cir. 1997) ...................................................................... 12, 13, 14

*J.F.G. v. Hott,*
921 F.3d 204 (4th Cir. 2019) ............................................................................... 19

*JBP Acquisitions, LP v. United States,*
224 F.3d 1260 (11th Cir. 2000) ............................................................................. 22

*Jennings v. Rodriguez,*
138 S. Ct. 830 (2018) ........................................................................................ 3

*K.B. v. Walt Disney Parks and Resorts US, Inc.,*
No. 6:14-cv-190, 2017 WL 3065119 (M.D. Fla. July 19, 2017) ....................................... 8, 9

*Linder v. United States,*

937 F.3d 1087 (7th Cir. 2019) ......................................................................... 23

*Lipsey v. United States,*
   879 F.3d 249 (7th Cir. 2018) ......................................................................... 16

*Mader v. United States,*
   654 F.3d 794 (8th Cir. 2011) ................................................................... 10, 11

*Marin-Garcia Holder,*
   647 F.3d 666 (7th Cir. 2011) ......................................................................... 19

*Mazur v. United States,*
   957 F. Supp. 1041 (N.D. Ill. 1997) ............................................................. 25

*McCollum v. Bolger,*
   794 F.2d 602 (11th Cir. 1986) ...................................................................... 23

*McGowan v. United States,*
   825 F.3d 118 (2d Cir. 2016) .................................................................... 25, 26

*Mid-South Holding Co., Inc. v. United States,*
   225 F.3d 1201 (11th Cir. 2000) .................................................................... 14

*Molzof v. United States,*
   502 U.S. 301 (1992) ...................................................................................... 12

*Monzon v. United States,*
   253 F.3d 567 (11th Cir. 2001) ...................................................................... 14

*Ms. L v. ICE,*
   302 F. Supp. 3d 1149 (C.D. Cal. 2019) ...................................................... 15

*Nguyen v. United States,*
   556 F.3d 1244 (11th Cir. 2009) .................................................................... 13

*OSI, Inc. v. United States,*
   285 F.3d 947 (11th Cir. 2002) ...................................................................... 13

*Ostera v. United States,*
   769 F.2d 716 (11th Cir. 1985) ...................................................................... 19

*Payne-Barahana v. Gonzales,*
   474 F.3d 1 & n.1 (1st Cir. 2007) .................................................................. 19

*Peay v. Mortgage Elec.,*
   514 F. App'x. 896 (11th Cir. 2013) ............................................................. 26

*Peña Arita v. United States,*
   -- F. Supp. 3d --, 2020 WL 3542256 (S.D. Tex. 2020) ............................ 16, 23

*Powell v. United States,*
   233 F.2d 851 (10th Cir. 1956) ...................................................................... 20

*Reynolds v. United States,*

549 F.3d 1108 (7th Cir. 2008) ............................................................................. 14

*Richards v. United States,*
369 U.S. 1 (1962) .................................................................................... 12, 27

*S.A.P. v. State Dept. of Health and Rehab. Servs.,*
704 So.2d 583 (Fla. Dist. Ct. App. 1997) ......................................................... 8

*Santana-Rosa v. United States,*
335 F.3d 39 (1st Cir. 2003) ........................................................................... 16

*Sasso v. Milhollan,*
735 F. Supp. 1045 (S.D. Fla. 1990) ............................................................... 15

*Sickman v. United States,*
184 F.2d 616 (7th Cir. 1950) ......................................................................... 21

*Sloan v. H.U.D.,*
236 F.3d 756 (D.C. Cir. 2001) ....................................................................... 19

*Suarez v. United States,*
22 F.3d 1064 (11th Cir. 1994) (per curiam) ..................................................... 9

*Turner ex rel Turner v. United States,*
514 F.3d 1194 (11th Cir. 2008) ..................................................................... 10

*U.S. Aviation Underwriters, Inc. v. United States,*
562 F.3d 1297 (11th Cir. 2009) ..................................................................... 13

*United States v. Delgado-Garcia,*
374 F.3d 1337 (D.C. Cir. 2004) ..................................................................... 15

*United States v. Dominguez-Portillo,*
No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) ................. 5, 6, 18

*United States v. Gaubert,*
499 U.S. 315 (1991) ....................................................................... 12, 13, 14, 17

*United States v. Olson,*
546 U.S. 43 (2005) ...................................................................................... 24

*United States v. Orleans,*
425 U.S. 807 (1976) ..................................................................................... 12

*Van Dinh v. Reno,*
197 F.3d 427 (10th Cir. 1999) ................................................................. 15, 16

*W.S.R. v. Sessions,*
318 F. Supp. 3d 1116 (N.D. Ill. 2018) ........................................................... 15

*Walding v. United States,*
955 F. Supp. 2d 759 (W.D. Tex. 2013) ........................................................... 18

*Wolfish v. Levi,*

573 F.2d 118 (2d Cir. 1978) ................................................................................................. 20

**Other Authorities:**

82 Fed. Reg.  8 .................................................................................................................... 3

Fed. R. Civ. P. 12 ............................................................................................................. 1, 2

Fed. R. Civ. P. 17 ................................................................................................................ 8

*U.S. DOJ, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry*
(April 6, 2018), DOJ 18-417, 2018 WL 1666622  ............................................................. 4

Defendant United States of America respectfully moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, based on the grounds set forth below in the memorandum in support.

## **INTRODUCTION**

Plaintiffs Eric Matute Castro and R.Y.M.R., a minor, bring this action against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-2680, asserting claims arising out of the separation of Matute and R.Y.M.R. following their unlawful entry into the United States and while in the custody of U.S. Customs and Border Protection ("CBP"). Plaintiffs allege that they were injured by a "policy issued at the highest levels of the federal government to separate asylum-seeking parents from their children," which they maintain was unconstitutional and caused them to suffer trauma and emotional distress. Compl. ¶ 1. Accordingly, Plaintiffs assert claims for battery (Count 1), assault (Count 2), negligence (Count 3), and intentional infliction of emotional distress ("IIED") (Count 4).

As a threshold matter, each and all of R.Y.M.R.'s claims are barred for lack of subject matter jurisdiction because he failed to exhaust administrative remedies before filing this action. Additionally, as a minor, R.Y.M.R. does not have the capacity to sue and this action was not properly brought on his behalf.

More generally, Plaintiffs' claims are barred for lack of subject matter jurisdiction under the FTCA. First, Plaintiffs claims for negligence and IIED are barred because the discretionary function exception to the FTCA shields the United States from liability for discretionary decision-making relating to enforcement of federal immigration law and concerns regarding child welfare. 28 U.S.C. § 2680(a). Second, those same claims are barred because the due care

1

exception to the FTCA bars claims arising out of the exercise of the statutory authority set forth in the applicable statutory and regulatory framework of federal criminal and immigration law. *Id.* Third, the FTCA more broadly bars all of Plaintiffs' claims because the FTCA does not authorize recovery for "constitutional torts" like those pursued here.  The Supreme Court and the Eleventh Circuit have held that the FTCA waives the United States' sovereign immunity only for certain common-law torts and does not provide a mechanism for pursuing torts involving alleged constitutional violations.  Fourth, there is no private person analog for Plaintiffs' claims, as required for waiver of sovereign immunity under 28 U.S.C. § 1346(b)(1), because the claims arise out of the enforcement of federal statutes, determinations relating to immigration status, and decisions regarding confinement that are activities in which only the government, and not private parties, may engage.  Accordingly, Plaintiffs' claims must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.

Finally, Plaintiffs' claims that officers committed assault and battery by physically separating them should independently be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  It is well established that law enforcement officers commit no tort by using reasonable force in carrying out their duties and need not desist in the face of resistance.

## **LEGAL FRAMEWORK**

### I.      **Legal Framework for Aliens Entering The United States Unlawfully**

Under the Immigration and Nationality Act ("INA"), any alien present in the United States without being admitted or paroled is inadmissible and subject to removal.  *See* 8 U.S.C. §§ 1182(a)(6)(A)(i), 1225(b)(2)(A), 1229a.  Such individuals may also be subject to prosecution for criminal immigration violations, including entering the United States "at any time or place other

than as designated by immigration officers" and eluding "examination or inspection by immigration officers." 8 U.S.C. § 1325.

Aliens present in the United States without being admitted are considered "applicant[s] for admission" and are "inspected by immigration officers[.]" *See* 8 U.S.C. §§ 1225(a)(1), (a)(3), (b). The INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded." *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018). Specifically, such aliens "shall be detained pending a final determination of credible fear of persecution and, if found not to have such fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) and (b)(2)(A). The Department of Homeland Security ("DHS") may in its "discretion" grant parole and release such individuals only under narrowly prescribed circumstances assessed on a "case-by-case basis." *See* 8 U.S.C. § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii) and (b)(4)(ii). The detention of aliens is further authorized by 8 U.S.C. § 1226(a), which provides that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *See* 8 U.S.C. § 1231(g)(1).

Furthermore, in January 2017, the President issued Executive Order No. 13767 ("EO 13767") stating that "[i]t is the policy of the executive branch to . . . detain individuals apprehended on suspicion of violating Federal or State law, including Federal immigration law, pending further proceedings regarding those violations[.]" Exec. Order No. 13767, 82 Fed. Reg. 8,793 (Jan. 25, 2017) at § 2(b). EO 13767 directed DHS to "ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country to the extent permitted by law[,]" *id*. § 6, and to

exercise its parole authority "only on a case-by-case basis in accordance with the plain language of the statute . . . and in all circumstances only when an individual demonstrates urgent humanitarian reasons or a significant public benefit derived from such parole," *id*. § 11(d).[1]

## II.    Legal Framework for Immigration Custody and Release of Minor Aliens

Federal immigration law expressly authorizes the United States to provide for the custody and care of minor children entering the United States unlawfully.  *See* 6 U.S.C. § 279 and 8 U.S.C. § 1232.  Specifically, the Department of Health and Human Services' Office of Refugee Resettlement ("ORR") is charged with "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status."  6 U.S.C. § 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  The term "unaccompanied alien child" or "UAC" is defined as a child who: (1) "has no lawful immigration status in the United States"; (2) "has not attained 18 years of age"; and (3) "with respect to whom . . . there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody."  6 U.S.C. § 279(g)(2).

Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), "[e]xcept in the case of exceptional circumstances, any department or agency . . . shall transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child."  8 U.S.C. § 1232(b)(3).  ORR seeks to place UACs "in the least

---

[1] Additionally, on April 6, 2018, the Attorney General issued a "Memorandum for Federal Prosecutors along the Southwest Border."  U.S. Department of Justice, News Release: Attorney General Announces Zero-Tolerance Policy for Criminal Illegal Entry (April 6, 2018), DOJ 18-417, 2018 WL 1666622 (hereinafter referred to as "Zero Tolerance Memorandum"). This memorandum directed federal prosecutors along the Southwest border to immediately accept for prosecution, to the extent practicable, all § 1325(a) offenses referred for prosecution. Compl.  ¶¶ 21-22.  Plaintiffs reference this zero-tolerance policy in the Complaint, and allege that family separations occurred pursuant to this policy.  *Id*.  However, this policy went into effect several months after Plaintiffs were apprehended and released.

restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).  However, ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(2)(B). Children may be in a secure facility only if it is determined that the child poses a danger to him- or herself or others, or has been charged with a criminal offense. 8 U.S.C. § 1232(c)(2)(A).

The TVPRA provides that a child may be placed with a proposed custodian only after ORR "makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being."  8 U.S.C. §1232(c)(3)(A).  "Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child."  *Id.*

In addition to this legal framework, the federal government entered into a consent decree (the *Flores* Agreement)[2] enforced in the Central District of California that "sets out nationwide policy for the detention, release, and treatment of minors in the custody of the INS."  *Flores v. Lynch*, 828 F.3d 898, 901 (9th Cir. 2016) (citing *Flores* Agreement ¶ 9).  Under the *Flores* Agreement, "[w]ithin five days of arrest, [DHS] must transfer the minor to a non-secure, licensed facility[.]"  *Id.* at 902-03 (quoting *Flores* Agreement ¶ 12).

However, the Agreement "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'"  *Id*. at 906; *see also United States v. Dominguez-Portillo,* No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

---

[2] *See Flores v. Sessions*, No. 85-cv-4544 (C.D. Cal. Feb. 2, 2015) (ECF 101).

Nor does the *Flores* Agreement provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007).  While the *Flores* Agreement gives preference to release of minors to a parent, that "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Flores*, 828 F.3d at 908.

## ALLEGATIONS

On or about November 13, 2017, Matute and R.Y.M.R. illegally crossed the United States border into California between ports of entry in violation of 8 U.S.C. § 1325.   Compl. ¶ 55.   Shortly after crossing the border, they were apprehended by CBP agents and transported to the Chula Vista Station in California.  Compl. ¶¶ 55-56.   From November 13 through November 17, 2017, they were detained together in CBP facilities or a motel.  Compl.  ¶ 61.

On November 17, 2017, CBP officers informed Matute that he was going to be separated from R.Y.M.R.  Comp. ¶¶ 64, 72.   The stated reason in the record for the separation was "child safety concerns" because Matute could not be positively verified as being the parent of R.Y.M.R. *See* Exhibit 1 (Declaration of Laura Perez).[3]

The complaint alleges that Matute "held R.Y.M.R. firmly in his arms and repeated to the officers that he would not allow them to take his child away."  Comp. ¶¶ 66, 82-83, 92. Plaintiffs maintain that an officer "pried R.Y.M.R. from [Matute's] arms." Comp. ¶¶ 84; *see id.* at ¶¶ 70, 93.

---

[3] The attachment to the declaration contains redactions to protect from disclosure confidential and sensitive information.

R.Y.M.R. was designated a UAC and transferred to the custody of ORR, which placed him at a shelter in San Antonio, Texas.  Comp. ¶¶ 5, 72.  Matute was transferred to the custody of  U.S. Immigration and Customs Enforcement ("ICE") and detained at Otay Mesa Detention Center in San Diego pending his immigration proceedings.  Compl.  ¶ 76.  Matute alleges he had no communication with R.Y.M.R. while in ICE detention.  Compl.  ¶ 74.

Matute was released from ICE custody on or about January 15, 2018 to Jacksonville, Florida, where he lived with a friend for approximately two weeks.  Compl.  ¶ 77.  On January 29, 2018, R.Y.M.R. was released from ORR custody to his mother, who was approved by ORR to be the sponsor of R.Y.M.R.  *See* Exhibit 2 (Declaration of James De La Cruz).[4]  Matute and R.Y.M.R. were reunited in Miami on or about January 29, 2018 after roughly 73 days apart.  Compl.  ¶ 77.

Plaintiffs allege that they were separated pursuant to a "policy issued at the highest levels of the federal government" that was designed to "deter future asylum seekers" by "separat[ing] asylum-seeking parents from their children."  Compl. ¶¶ 1-2.  Plaintiffs maintain that this policy and their separation was in violation of "the U.S. Constitution's clearly established due process rights governing immigration detainees and the right to family integrity."  Compl. ¶ 79.

The complaint alleges that administrative claims were submitted on  November 14, 2019, but, after six months passed since the submission of the claims without a final disposition, Plaintiffs deemed the claims finally denied pursuant to 28 U.S.C. § 2675(a) and filed suit.  Compl. ¶ 11.

---

[4] The attachment to the declaration contains redactions to protect from disclosure confidential and sensitive information.

7

## ARGUMENT

**I.    R.Y.M.R. Failed To Exhaust Administrative Remedies And Does Not Have Capacity to Sue**

Because of R.Y.M.R.'s inability act on his own behalf given his status as a minor, this court lacks jurisdiction over each and all of R.Y.M.R.'s claims.  "The FTCA is a specific, congressional exception" to the United States' sovereign immunity for tort claims, under which the government may "be sued by certain parties under certain circumstances for particular tortious acts committed by employees of the government."  *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994) (per curiam).  This waiver "must be scrupulously observed, and not expanded, by the courts."  *Id*.  A federal court does not have "jurisdiction over a suit under the FTCA unless the claimant first files an administrative claim with the appropriate agency . . . within two years from the time the claim accrues[.]"  *See Dalrymple v. United States*, 460 F.3d 1318, 1324 (11th Cir.2006) (citing 28 U.S.C. § 2675(a)).[5]  "The FTCA requires that *each* claim and *each* claimant meet the prerequisites for maintaining a suit against the government."  *Id*. at 1325 (emphasis in original).  Thus, "in multiple claimant actions under the FTCA, each claimant must individually satisfy the jurisdictional prerequisite of filing a proper claim." *Id*.  Because "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies, the district court lacks subject matter jurisdiction over prematurely filed

---

[5] "An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail."  28 U.S.C. § 2675(a).

suits." *Turner ex rel Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

The administrative claim of R.Y.M.R. was submitted by an attorney (who was not appointed guardian) rather than by a guardian or parent acting as next friend on his behalf. *See* Exhibit 3.[6]   Because the administrative claim of R.Y.M.R. was not properly presented, the FTCA's administrative claim requirement was not exhausted before the filing of this lawsuit.

Particularly illustrative here is *Mader v. United States*, 654 F.3d 794 (8th Cir. 2011).  In *Mader*, the widow of a decedent sought to bring claims under the FTCA on behalf of statutory beneficiaries.  In the administrative claim, the widow purported to be the personal representative of the estate and to act on behalf of the statutory beneficiaries, but she failed to provide evidence to the agency of such authority.  *Id.* at 799.  The widow filed a wrongful death action in district court, again claiming to be the personal representative of the estate and purporting to on behalf of the statutory beneficiaries.  *Id*.  However, the widow's appointment as representative of the estate had terminated before she presented the administrative claim.  *Id*. at 802.

The court of appeals stated, "When § 2675(a) is read in light of its sister statute [§ 2672], it becomes readily apparent that the administrative presentment requirement  serves a practical purpose – it provides federal agencies a fair opportunity to meaningfully consider, ascertain, adjust, determine, compromise, deny, or settle FTCA claims prior to suit."  *Mader*, 654 F.3d at 800-801 (citing *McNeil*, 508 U.S. at 112).  Thus, allowing the claim in *Mader* to proceed would "fail[] to give full effect to § 2675(a)'s manifest purpose and fail[] to take into account the

---

[6] The administrative claim attached hereto as an exhibit contains redactions to protect from disclosure confidential and sensitive information.   The separate claim for Matute is attached as Exhibit 4, also redacted to protect from disclosure confidential and sensitive information.

realities of the administrative consideration process contemplated in §§ 2675(a) and 2672." *Id.* at 801. Without a duly appointed representative, there was no person with whom the federal agency could legally seek to compromise or settle the claim. *Id.* at 802 (the agency "could not definitively discern that any negotiations by [the widow] or any agreements with her on behalf of the claim's beneficiaries, including a release of claims, would have been ineffective[,]" and "[b]eing ultra vires in nature, such negotiations with [the widow] would have improperly jeopardized the time, treasure and superintendence responsibilities of the [agency]"). As the court rightly noted, "[s]imilar representation problems may also extend beyond the wrongful death context [to] claims involving questions of age, competency and numerosity[.]" *Id.* at 803.

The representation problems involving age noted in *Mader* are present here. Because R.Y.M.R.'s claim was not administratively presented by a guardian or next friend who could act in a representative capacity on his behalf, there was, as in *Mader*, no one with whom the federal agency could seek to resolve his claims. Thus, the very purpose of the administrative claims process was frustrated. Because R.Y.M.R. failed to properly exhaust his administrative remedies before filing suit, this court lacks jurisdiction over his claims.

Moreover, R.Y.M.R. cannot bring this action in his own capacity. Although R.Y.M.R. is a minor, this action was not brought on his behalf by a guardian or next friend, as demonstrated by both the caption and content of the complaint. Minors do not have the capacity to sue in their own right. *Baloco v. ex rel. Tapia v. Drummond Co. Inc.*, 640 F.3d 1338, 1350 (11th Cir. 2011); *see also J.B. by and through K.B. v. Walt Disney Parks and Resorts US, Inc.*, No: 6:14-cv-190, 2017 WL 3065119, *4 (M.D. Fla. July 19, 2017) ("[A] minor child generally cannot bring a

cause of action in his own right but may only sue by a representative, *i.e.*, the guardian ad litem or by his next friend, who is most often a parent.").[7]

Fed. R. Civ. P. 17(c)(2) provides that a minor may sue (or be sued) through a "duly appointed representative," by a "next friend," or by a "guardian ad litem," and instructs district courts that they "must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action." *Id*. at 1350-51 (citing *Roberts v. Ohio Cas. Ins. Co*., 256 F.2d 35, 38–39 (5th Cir.1958)); *J.B.*, 2017 WL 3065119 at *4 (M.D. Fla. July 19, 2017) ("Federal Rule of Civil Procedure 17(c)(2) specifically provides that an infant or incompetent who does not have a general representative may sue by a next friend or a guardian ad litem[.]").

"[T]he mere listing of a child on a complaint as a plaintiff does not alone ensure that the child is a proper party in that suit." *Id*. at 1351. Simply because a putative parent is also listed as a plaintiff does not mean a court can "presume that [the parent] intended to represent their children's separate legal interests." *Id*.; *see also Gonzalez*, 86 F. Supp. 2d. at 1185 ("The ability to function as a next friend is not granted automatically to whomever seeks to pursue an action on behalf of another. . . . Instead, a would-be next friend . . . must satisfy specific criteria[.]") (citations and internal quotation marks omitted).

---

[7] *See also S.A.P. v. State Dept. of Health and Rehab. Servs*., 704 So.2d 583, 585–86 (Fla. Dist. Ct. App. 1997) ("Under Florida Rule of Civil Procedure 1.210 a minor is incapable of bringing an action on his or her own behalf, but can only sue by and through a guardian ad litem, next friend, or other duly appointed representative."); *Gonzalez ex rel. Gonzalez v. Reno*, 86 F.Supp.2d 1167, 1184 (S.D.Fla.2000) (minor lacked capacity to sue under Florida law). Of course, this is the law regardless of which State law is applicable to this issue in this instance.

Here, Matute does not purport to bring this action on the behalf of R.Y.M.R., and the fact that he also appears as a plaintiff does not remedy this defect. Accordingly, R.Y.M.R. cannot proceed as a plaintiff in this action on his own behalf.

## II.   Plaintiffs' Claims For Negligence and IIED Are Barred By The FTCA's Discretionary Function Exception

The Court further lacks subject matter jurisdiction over Plaintiffs' claims because the United States has not waived sovereign immunity for these claims under the FTCA. The United States enjoys broad immunity from suit and "can be sued only to the extent that it has waived its immunity." *United States v. Orleans*, 425 U.S. 807, 814 (1976). Accordingly, absent a specific waiver, sovereign immunity bars a suit against the government for lack of subject matter jurisdiction. *See FDIC v. Meyer*, 510 U.S. 471, 475-76 (1994).

While the United States has waived sovereign immunity under the FTCA for certain tort claims, the FTCA contains express exceptions in the FTCA that "are designed to protect certain important governmental functions and prerogatives from disruption." *Molzof v. United States*, 502 U.S. 301, 311 (1992); *see also Richards v. United States*, 369 U.S. 1, 13 n.28 (1962). One such exception – the "discretionary function" exception – bars "[a]ny claim" that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). As the legislative history of the FTCA explains, the statute was "not intended to authorize suit for damages to test the validity of or provide a remedy on account of such discretionary acts even though negligently performed and involving an abuse

12

of discretion."  H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10.  This exception bars

Plaintiffs' claims for negligence and IIED here.[8]

The Supreme Court has created a two-part test for determining whether the

discretionary function exception bars suit against the United States.  If both prongs of the

discretionary function test are met, the United States is shielded from liability, even if its actions

were negligent.  *See United States v. Gaubert*, 499 U.S. 315, 323 (1991); *Hughes v. United

States*, 110 F.3d 765, 768 n.1 (11th Cir. 1997).  "When the discretionary function exception to

the FTCA applies, no federal subject matter jurisdiction exists."  *U.S. Aviation Underwriters,

Inc. v. United States*, 562 F.3d 1297, 1299 (11th Cir. 2009).

First, courts must determine whether the act "involv[es] an element of judgment or

choice." *Gauber*t, 499 U.S. at 322.  This inquiry focuses on "whether the controlling statute or

regulation mandates that a government agent perform his or her function in a specific manner."

*Hughes*, 110 F.3d at 768; *see also Autery v. United States*, 992 F.2d 1523, 1529 (11th Cir.1993)

(a function involves discretion unless "a federal statute, regulation, or policy specifically

prescribes a course of action embodying a fixed or readily ascertainable standard").  Moreover, if

the applicable laws and regulations do set forth a specific mandate with which the government

employee complies, then the exception applies.  *See Gaubert*, 499 U.S. at 323 ("[I]f a regulation

---

[8] The Eleventh Circuit has held that the discretionary function exception is not applicable to claims for the enumerated torts in the "law enforcement proviso" at 28 U.S.C. § 2680(h), which includes the torts of assault and battery.  *See Nguyen v. United States*, 556 F.3d 1244, 1256-57 (11th Cir. 2009).  While that ruling is binding on this court, the United States disagrees with this ruling and hereby preserves its objection for further review, if necessary.  As the Eleventh Circuit itself acknowledged in *Nguyen*, its ruling is in conflict with the rulings of several other circuits that have held that the discretionary function exception can apply to the enumerated torts in the law enforcement proviso at 28 U.S.C. § 2680(h). *Id.* (collecting cases).

mandates particular conduct, and the employee obeys the direction, the Government will be

protected because the action will be deemed in furtherance of the policies which led to the

promulgation of the regulation.") (citation omitted).

Second, if the conduct does "involv[e] an element of judgment or choice," courts then

look at "whether that judgment is of the kind that the discretionary function exception was

designed to shield." *Gaubert*, 499 U.S. at 322-23 (quoting *United States v. Varig Airlines*, 467

U.S. 797, 813 (1984)).  The discretionary function exception is intended "to prevent judicial

second-guessing of legislative and administrative decisions grounded in social, economic, and

political policy through the medium of an action in tort."  *Id.* at 323 (quoting *Varig Airlines*, 467

U.S. at 814).  "When established governmental policy, as expressed or implied by statute,

regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be

presumed that the agent's acts are grounded in policy when exercising that discretion."  *Gaube*rt,

499 U.S. at 323; *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002) ("If the decision

is inherently one allowing discretion, we presume that the act was grounded in policy whenever

that discretion is employed.") (citation omitted).  "For a complaint to survive a motion to

dismiss, it must allege facts which would support a finding that the challenged actions are not the

kind of conduct that can be said to be grounded in the policy of the regulatory regime."  *Monzon

v. United State*s, 253 F.3d 567, 572 (11th Cir. 2001).

Notably, it is immaterial whether the various policy considerations actually were

balanced or considered; the relevant question is whether the conduct is "susceptible to policy

analysis."  *Gaubert*, 499 U.S. at 325 ("The focus of the inquiry is not on the agent's subjective

intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.").[9]

Here, Plaintiffs allege that they were injured by a "policy issued at the highest level of the federal government."  Compl.  ¶ 1.  This is precisely the sort of policy-based decision-making that the discretionary function exception contemplates.  *Gaubert*, 499 U.S. at 322-23.

As a threshold matter, Plaintiffs do not and cannot challenge the decision to detain Matute in immigration detention in light of the Federal law expressly authorizing – indeed mandating – his detention.  This is particularly so considering that at the time of his apprehension and detention, DHS was operating under an Executive Order to fully exercise its detention authority.   Indeed, courts have recognized that "border-control policies are of crucial importance to the national security and foreign policy of the United States."  *United States v. Delgado-Garcia*, 374 F.3d 1337, 1345 (D.C. Cir. 2004).  Once that detention occurred, the governing laws dictated the separation that Plaintiffs now challenge.

---

[9] *See also Hughes*, 110 F.3d at 768 (the exception does not require actual "weighing of policy considerations") (citation omitted); *Mid-South Holding Co., Inc. v. United States*, 225 F.3d 1201,1207 (11th Cir. 2000) (observing that the test is objective and the discretionary function exception applies so long as it is "conceivabl[e]" that challenged conduct was in furtherance of policy objectives); *Cranford v. United States*, 466 F.3d 955, 958 (11th Cir. 2006) ("Our inquiry does not focus either on the subjective intent of the government agent. . . or on whether the agent actually weighed policy considerations[.]") (citations omitted); *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (discretionary function exception applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis"); *Franklin Sav. Corp. v. United States*, 180 F.3d 1124 (10th Cir. 1999) ("FTCA claims are not vehicles to second-guess policymaking.  That principle requires a federal court to dismiss an FTCA claim if jurisdiction is so dependent on allegations about government officials' intent or decisionmaking process that resolving the claim would require judicial inquiry into those subjective matters.").

15

More generally, determinations regarding where to place detainees involve precisely the sort of discretionary decision-making that is shielded by the FTCA.[10]  The federal government possesses the express statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  *See* 8 U.S.C. § 1231(g)(1).  "Congress has placed the responsibility of determining where aliens are detained *within the discretion* of the [Secretary]."  *Comm. Of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1440 (9th Cir. 1986) (emphasis added).[11]  Indeed, decisions relating to aliens, including placement and detention, are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."  *Id.* (quoting *Hampton v. Mow Sung Wong*, 426 U.S. 88 (1975)).[12]  This policy-

---

[10] To the extent Plaintiffs maintain that the putative right to family integrity required the release of Matute so as to avoid separation from R.Y.M.R., such argument further fails because no such right required his release.  *See W.S.R. v. Sessions*, 318 F. Supp. 3d 1116, 1133 (N.D. Ill. 2018) (there is no authority for "the proposition that the substantive due process to family integrity dictates release of the parents (as distinct from reunification)."); *Ms. L v. ICE*, 302 F. Supp. 3d 1149, 1159 n.3 (C.D. Cal. 2019) (plaintiffs did not challenge the decision to detain adult aliens while in removal proceedings for the "sound reasons" that the law calls for mandatory detention with parole in strictly limited circumstances).

[11] *See also Gandarillas- Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another."); *Sasso v. Milhollan*, 735 F. Supp. 1045, 1046 (S.D. Fla. 1990) (holding that the Attorney General has discretion over the location of detention); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute).

[12] *See also Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) (decisions regarding where to place prisoners are policy-based decisions protected by the discretionary function exception); *Bailor v. Salvation Army,* 51 F.3d 678, 685 (7th Cir. 1995) (decisions regarding whether to detain or release are policy-based decisions protected by the discretionary function exception); *Lipsey v. United States*, 879 F.3d 249, 255 (7th Cir. 2018) (placement decisions are susceptible to policy analysis); *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("assignment to particular institutions or units. . . must be viewed as falling within the discretionary function exception to the FTCA").

based discretion necessarily entails decisions regarding with whom aliens are detained, including decisions regarding whether adults and minors can be detained in the same facility and whether to detain family members together. *See Peña-Arita,* 2020 WL 3542256, at *7 (holding that decisions made in the field by DHS to separate family members are policy-based decisions protected by the discretionary function exception).

When, as here, children are involved, there are additional policy considerations to take into account, including considerations of child welfare and safety and the type of setting appropriate for children. In particular, children are to be placed "in the least restrictive setting appropriate to the juvenile's age and special needs . . . ." 6 C.F.R. § 115.14(a). Moreover, as explained above, the *Flores* Agreement does not require release of an adult to remain with a child or mandate the transfer of the adult and child to family detention. And, of course, children cannot be in secure detention with adults.[13] Therefore, once the discretionary, policy-based decision is made to detain an adult alien in a secure adult detention facility, separation of that adult from a child with whom he or she crossed the border is required.

Considerations of the welfare and safety of children are especially significant where, as here, officers making the decisions regarding the placement of family units are not satisfied that

---

[13] Paragraph 14 of the Flores Settlement Agreement lists to whom a minor can be released "from [DHS] custody." Further, Paragraph 21 of the Flores Settlement Agreement governs when minors can be held in secure detention. Minors not described in paragraph 21 may not be held in a secure detention facility for any period of time. Moreover, minors subject to secure detention pursuant to paragraph 21 are not held in secure adult detention facilities. Plaintiff's reliance on 8 C.F.R. § 1236.3 is misplaced. *See* Compl. ¶¶ 30-31. This regulation merely addresses the types of individuals to whom children are released, expressing a "preference" for release to parents followed by legal guardians and adult relatives. *See* 8 C.F.R. § 1236.3 (providing "preference" for release to certain individuals); *Flores*, 828 F.3d at 908 ("if available, the parent is the first choice"). In additions, § 1236.3 is not applicable here because it applies only to "[j]uveniles for whom bond has been posted, for whom parole is authorized, or who have been ordered released on recognizance."

the accompanying adult is in fact the parent of the child.  *See* Exhibit 1.  Such a decision, of

course, involves the exercise of judgment regarding the safety and best interests of the child, and

this is the very sort of decision that is grounded in the child safety and welfare policy goals of the

TVPRA.  *See Gaubert*, 499 U.S. at 323 (decisions that are "grounded in the social, economic, or

political goals of the statute and regulations are protected").  Therefore, for multiple reasons, the

decision to designate R.Y.M.R. as a UAC and transfer him to ORR custody pursuant to the

TVPRA is protected by the discretionary function exception.[14]

Moreover, the discretionary function exception likewise shields decisions regarding

where a UAC is housed and cared for, as "[i]t is clear that the ultimate choice of facility for

housing unaccompanied alien children is a decision vested with policy considerations."  *Walding*

*v. United States*, 955 F. Supp. 2d 759, 771-72 (W.D. Tex. 2013).   In addition, decisions by ORR

regarding to whom a UAC is released – in this case R.Y.M.R.'s mother – involve the exercise of

discretion, including verifying the "custodian's identity and relationship to the child" and

ensuring "that the proposed custodian is capable of providing for the child's physical and mental

well-being."  8 U.S.C. § 1232(c)(3)(A).  Again, such decisions are grounded in the policy goals

of the TVPRA.

---

[14] As noted above, the statutory UAC definition is a broad one that includes circumstances where a parent is physically present but nevertheless unavailable.  For example, in *D.B. v. Cardall*, the court upheld the government's determination that a minor was an "unaccompanied alien child" and affirmed transfer to ORR custody even though the minor lived with the mother in their family home because the mother's lack of fitness precluded her from "provid[ing] what is necessary for the child's health, welfare, maintenance, and protection.  826 F.3d 721, 734 (4th Cir. 2016).  In any event, Plaintiff here was housed in a secure facility, and the *Flores* Agreement precluded detention of R.Y.M.R. in such a facility regardless of whether he is a UAC.  Under *Flores*, "[DHS] must transfer the minor to a non-secure, licensed facility."  828 F.3d at 902-03; *see also Bunikyte*, 2007 WL 1074070 at *16 (to comply with the *Flores* Agreement, DHS must "releas[e] the children to adult relatives not in custody, adult friends designated by their parents, or even state-operated foster care[.]").

Nor can Plaintiffs circumvent the discretionary function exception simply by alleging that the separation violated the constitutional right to family integrity.  Comp. ¶ 79.  Whether, in retrospect, the separation at issue here violated such a right has no bearing on the application of the discretionary function exception.  What is relevant to the inquiry is whether such a right was clearly established at the time.  *See Denson v. United States*, 574 F.3d 1318, 1137-38 (11th Cir. 2009) (allegations of constitutional violations do not defeat discretionary function exception unless evidence is sufficient to establish a *Bivens* claim based on that same conduct, which requires a showing the constitutional right was clearly established); *Castro v. United States*, 560 F.3d 381, 394 (5th Cir. 2009) (Smith, J., dissenting), 608 F.3d 266 (5th Cir. 2010) (en banc) (panel opinion vacated and district court decision affirmed), cert denied, 562 U.S. 1168 (2011) (it would "turn[] Bivens on its head" to conclude that "the United States may be liable for conduct even where its officers cannot be.").

Notably, at the time of the separation here, there was no case law clearly establishing a due process right to family integrity while in immigration detention.  *See Dominguez-Portillo*, 2018 WL 315759, at *6 (noting "lack of clearly established parental rights in these circumstances and under case law").  Indeed, such a right in the context of immigration detention still is not clearly established, as the issue was squarely addressed by the Fourth Circuit, which found that no such right exists.  *See Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e . . . have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal.").[15]

---

[15] *Accord Aguilar v. ICE*, 510 F.3d 1, 22 (1st Cir. 2007) (rejecting the notion of a due process right to family visitation in immigration detention); *Marin-Garcia Holder*, 647 F.3d 666, 674 (7th Cir. 2011) ("nothing in the Constitution prohibits" separation of citizen children from parents when parents deported); *Payne-Barahana v. Gonzales*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits that have addressed the constitutional issue (under varying incarnations of

19

Finally, any related allegations regarding Plaintiffs' conditions of confinement, such as allegations regarding Matute's lack of communication with R.Y.M.R. during the period of their separation, would be barred for similar reasons   The discretionary function exception bars all claims that are inextricably tied to such physical separations, including those based on limited communications between and about family members while an adult alien is in secure detention facilities.  *See Ostera v. United States*, 769 F.2d 716, 718 (11th Cir. 1985) (claims that are "inextricably tied" to conduct protected by section 2680(a) are also barred); *Sloan v. H.U.D.*, 236 F.3d 756, 762 (D.C. Cir. 2001) (same).  This is so because the lack of communication is a direct consequence of the physical separation.

Moreover, even if viewed as a distinct claim, it would be barred.  Decisions regarding when, with what frequency, and the means to afford communication between adult aliens in secure immigration detention and their separated children (or the caretakers of the children) necessarily involves balancing various policy considerations, including accessibility and cost of communications, staffing and resource allocation at the secured detention facilities in order to facilitate such calls, the children's placement sites, and parents and children's respective responses to communications.  *See Wolfish v. Levi*, 573 F.2d 118, 126 (2d Cir. 1978) ("[T]o require the [prison] to return to court whenever it seeks to make any change, however minor, in its telephone service, would place great strains on overburdened federal judges and would, in essence, preempt the role of prison officials."), *rev'd on other grounds, Bell v. Wolfish*, 441 U.S. 520 (1979); *Harrison v. Fed. Bureau of Prisons*, 464 F. Supp. 2d 552, 559 (E.D. Va. 2006) ("[T]he BOP's provision of telephone services is a matter committed to its discretion that will

---

the immigration laws and in varying procedural postures) have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right.").

not be second-guessed through an FTCA claim.").  Accordingly, such allegations are likewise barred under the discretionary function exception.

### III.     Plaintiffs' Claims For Negligence and IIED Are Barred By The FTCA's Due Care Exception

Plaintiffs' claims for negligence and IIED also are barred by the FTCA's "due care exception," which bars "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid."  28 U.S.C. § 2680(a).  Among other things, this exception "bars tests by tort action of the legality of statutes and regulations."  *Dalehite v. United States*, 346 U.S. 15, 33 (1953).  The "Tort Claims Act did not contemplate that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort.  Nor did it contemplate a remedy for damages sustained by reason of the application of invalid laws or regulations."  *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (citation and internal quotation marks omitted).  *See also* H.R. Rep. No. 77-2245, 77th Cong., 2d Sess., at 10 (noting that it was not "desirable or intended that the constitutionality of legislation, or the legality of a rule or regulation should be tested through the medium of a damage suit for tort"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . even though the regulation may be irregular or ineffective").

Accordingly, where a government employee's actions are authorized by statute or regulation, the due care exception applies and the claim must be dismissed for lack of subject matter jurisdiction.[16]  Here, the due care exception likewise bars the negligence and IIED claims

---

[16] *See, e.g., Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950) (landowners' claims were barred by the due care exception because the claims arose out of the government's

because the United States plainly had the statutory authority to determine whether and where to detain Plaintiffs after they entered the country illegally, *see* 8 U.S.C. §§ 1225, 1226(a), 1231(g)(1), as well as the authority to place R.Y.M.R. in the custody and care of ORR while he was detained, *see* 8 U.S.C. §§ 1232(b)(3), 1232(c)(2)(A), 8 U.S.C. § 279(g).  Indeed, the separation was expressly mandated by the TVPRA once R.Y.M.R. was designated a UAC. Thus, the separation resulting from by the execution of these statutes is not compensable.  *See Dupree*, 247 F.2d at 824 ("Where government employees act pursuant to and in furtherance of regulations, resulting harm is not compensable under the act[.]"); *Accardi v. United States*, 435 F.2d 1239, 1241 (3d Cir. 1970) (claim arising out of "the enforcement of 'rules and regulations'" barred by due care exception).

### IV. Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Recovery For Constitutional Torts

More generally, Plaintiffs' claims are all barred because the FTCA does not waive the government's sovereign immunity for constitutional torts of the sort that Plaintiffs allege here. While the FTCA provides a limited waiver of sovereign immunity that authorizes suits against the United States for certain common-law tort claims, the Supreme Court has held that the FTCA

---

execution of the Migratory Bird Treaty Act, 16 U.S.C.A., § 703 *et seq.*, which "provides that the Secretary of Interior is authorized and directed to determine when, to what extent if at all, and by what means it is compatible with the terms of the conventions between the United States, Great Britain and the United Mexican States to allow hunting and killing of migratory birds."); *FDIC v. Citizens Bank & Trust Co. of Park Ridge, Ill.*, 592 F.2d 364, 366 (7th Cir. 1979) (applying due care exception to claim based on the FDIC's execution of 12 U.S.C. § 1823(e), pursuant to which the "FDIC was authorized to enter into purchase and assumption agreements with respect to the assets of failing or closed banks"); *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) (due care exception barred claim based on exercise of statutory authority to transfer responsibility for care and maintenance of a dam, which provided that the Secretary of the Interior was "authorized, in his discretion, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe").

does not provide a cause of action for torts involving alleged constitutional violations.  *Meyer*, 510 U.S. at 477.  As the Supreme Court explained in *Meyer*, a claim is actionable under the FTCA only if the United States would be liable as a "'private person'" "'in accordance with the law of the place where the act or omission occurred.'"  *Id.* (quoting 28 U.S.C. § 1346(b)).  "A constitutional tort claim . . . could not contain such an allegation."  *Id.* at 477-78.  This is because, as the Supreme Court observed, the Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State – the source of substantive liability under the FTCA."  *Id.* at 478.  "By definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right."  *Id.*  Accordingly, "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims."  *Id.*

Although Plaintiffs label the claims as claims for negligence, IIED, assault and battery, Plaintiffs' complaint demonstrates that these claims are based on alleged constitutional violations.  In particular, Plaintiffs allege that federal officers performed their federal duties and executed federal law in a manner that violated the constitutional right to due process.  Compl. ¶¶ 29, 79.  Plaintiffs cannot escape the true nature of the claims based on the mere labels they apply to them.  *See JBP Acquisitions, LP v. United States*, 224 F.3d 1260, 1265 (11th Cir. 2000) (jurisdiction depends on "the substance of the claim and not the language used in stating it").  In sum, claims involving alleged constitutional violations like those in Plaintiffs' complaint are not cognizable under the FTCA.  *See McCollum v. Bolger,* 794 F.2d 602, 608 (11th Cir. 1986) ("By definition, constitutional torts are not based on state law."); *Dorman v. Simpson*, 893 F. Supp. 1073, 1078 (N.D. Ga. 1995) ("Even if the Court construed Plaintiff's claims as common law tort claims brought under the FTCA, Plaintiff's claims still would be barred by sovereign immunity

because the FTCA does not waive immunity for tort claims which are constitutional in nature.")
(citations omitted); *accord Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 509
(D.C. Cir. 2009) (a plaintiff cannot establish subject matter jurisdiction under the FTCA by
"merely re-label[ing] a violation of a federal statute as common law claims.").

As courts applying these principles have recognized, including in the family separation
context, the FTCA "does not apply to constitutional violations." *Linder v. United States*, 937 F.3d
1087, 1091 (7th Cir. 2019) (affirming dismissal of claims for intentional infliction of emotional
distress and malicious prosecution on grounds that FTCA is "a means to seek damages for
common-law torts, *without regard to constitutional theories*.") (emphasis added); *see also Peña
Arita v. United States*, -- F. Supp. 3d --, 2020 WL 3542256, at *8 (S.D. Tex. June 30, 2020)
(granting motion to dismiss claims based on alleged family separation at the border, holding among
other things, that insofar as plaintiff asserted the "Constitution itself furnishes a nondiscretionary
standard . . . such claim is entirely jurisdictionally barred.").

## V.        Plaintiffs' Claims Are Barred Because There Is No Private Analog

Plaintiffs' claims further fail because the government acts that Plaintiffs attack have no
private person analog.  The FTCA requires a plaintiff to allege "circumstances where the United
States, if a private person, would be liable to the claimant in accordance with the law of the place
where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  The statute authorizes tort
recovery against the United States only "in the same manner and to the same extent as a private
individual under like circumstances."  28 U.S.C. § 2674.

Accordingly, the FTCA "requires a court to look to the state-law liability of private entities,
not to that of public entities, when assessing the Government's liability under the FTCA [even] in
the performance of activities which private persons do not perform."  *United States v. Olson*, 546

U.S. 43, 46 (2005) (internal quotations omitted).  The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law."  *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted).

Because only the federal government has the authority to enforce federal criminal and immigration laws and make determinations concerning detention, there is no private person analog that would support a claim under the FTCA.  The alleged harms here stem from the federal government's decision to enforce the federal immigration laws and detain Matute in secure adult detention pending his immigration proceedings, rendering R.Y.M.R. "unaccompanied," which resulted in his placement in the care and custody of ORR.  The United States has not waived its sovereign immunity for such decisions to enforce federal law because such decisions have no private person counterpart.  *See Air Shuttle Corp. v. United States*, 112 F.3d 532, 537 (1st Cir. 1997) (decision regarding whether to take enforcement action under federal law was not conduct for which private individual could be held liable and thus did not give rise to FTCA action).

Indeed, courts have repeatedly held that various governmental immigration decisions have no private person counterpart and thus cannot be the basis for a claim under the FTCA. *See, e.g., Bhuiyan v. United States*, 772 F. App'x 564, 565 (9th Cir. 2019) ("[T]here is, as a general matter, no private analogue to governmental withdrawal of immigration benefits."); *Elgamal v. Bernacke*, 714 F. App'x 741, 742 (9th Cir. 2018) ("[B]ecause no private person could be sued for anything sufficiently analogous to the negligent denial of an immigration status adjustment application, that claim must be dismissed as well."); *Elgamal v. United States*, No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz. July 8, 2015) (recognizing that "immigration

matters" are "an inherently governmental function"); *Mazur v. United States*, 957 F. Supp. 1041, 1042-43 (N.D. Ill. 1997) (in matters relating to naturalization of aliens, "only the United States has the power to act," and, "[a]ccordingly . . . there is no private analog under state law").

The Second Circuit's decision in *Akutowicz v. United States* is instructive. 859 F.2d 1122, 1125-26 (2d Cir. 1988). There, the court rejected the plaintiff's FTCA suit challenging the Department of State's wrongful revocation of his U.S. citizenship on the ground that there was no private person analog. The court observed that, "for liability to rise under the FTCA, a plaintiff's cause of action must be 'comparable' to a 'cause of action against a private citizen' recognized in the jurisdiction where the tort occurred." *Id.* at 1125. The court concluded that there was no such "comparable" action against a private citizen: "[Q]uasi-legislative or quasi-adjudicative action by an agency of the federal government is action of the type that private persons could not engage in and hence could not be liable for under local law." *Id.* The fact that the State Department allegedly erred in the interpretation and application of the pertinent provisions of the INA was not relevant. The Second Circuit held that "the withdrawal of a person's citizenship constitutes a quasi-adjudicative action for which no private analog exists." *Id.* at 1126.

The same is true here where the federal government's detention decisions are ones that no private actor could make: "Private persons cannot establish facilities to detain other persons – only the government can, either on its own or through a government contractor." *McGowan v. United States*, 825 F.3d 118, 127 (2d Cir. 2016). Accordingly, Plaintiffs claims should be dismissed as well. *See id.* (wrongful confinement claim brought by federal prisoner moved from halfway house to special housing unit in a detention facility not cognizable under the FTCA

because decisions relating to location and conditions of detention cannot be made by private persons).

## VI.    Plaintiffs Failed To Plead Claims for Assault or Battery

Plaintiffs' claims for assault and battery also should be dismissed because the allegations do not sufficiently state a claim.  In California, where the alleged assault and battery occurred, the elements of a cause of action for assault are: (1) the defendant acted with intent to cause harmful or offensive contact, or threatened to touch the plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed he was about to be touched in a harmful or offensive manner or it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm. *Carlsen v. Koivumaki*, 227 Cal. App. 4th 879, 890 (2014).   Further, the elements of a cause of action for battery under California law are: (1) the defendant touched the plaintiff, or caused the plaintiff to be touched, with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's position would have been offended by the touching. *Id*.[17]

---

[17]   Under the FTCA, the United States is liable for personal injury caused by the negligent or wrongful act or omission of a federal employee under circumstances where the United States, if a private person, would be liable to the claimant according to the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b)(1).  The FTCA "requires application of the whole law of the State where the act or omission occurred[,]" including its choice of law rules. *Richards v. United States*, 369 U.S. 1, 11 (1962); *Gonzalez–Jiminez De Ruiz v. United States*, 378 F.3d 1229, 1230 n.1 (11th Cir. 2004) (citations omitted).  For purposes of this motion to dismiss only, the United States addresses the application of California law to the assault and battery claims.

Under California law, however, a law enforcement officer "may use reasonable force to make an arrest, prevent escape or overcome resistance, *and need not desist in the face of resistance*[.]" *See Brown v. Ransweiler*, 171 Cal. App. 4th 516, 526-27 (Cal. App. 2009) (emphasis added).   Law enforcement officers are "not similarly situated to the ordinary battery defendant and need not be treated the same." *Id*. at 527.  Ultimately, "[t]he question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer[,]" and "[t]he test is 'highly deferential to the police officer's need to protect himself and others." *Id*. (citations and quotation marks omitted); *see also Cortez v. United States*, No. 10- CV-01473, 2012 WL 3861951, *6 (S.D. Cal. Sep. 5, 2012 ("To establish a claim for assault and battery by a law enforcement officer under California law, the force used to detain the plaintiff must be unreasonable."); *Robinson v. Adams*, No. 1:08–cv–01380, 2015 WL 3706388, *2 (E.D. Cal. June 1, 2015) ("In cases involving a peace officer, a plaintiff must also show that a defendant officer used excessive force.")

Here, the officers separated Matute and R.Y.M.R. as authorized by federal law.  Indeed, the officers were obligated do so under the TVPRA once R.Y.M.R. was designated a UAC. Matute *admits* that he did not comply with the officers' orders to relinquish R.Y.M.R., thus necessitating that the officers physically remove R.Y.M.R from his grip.  Compl. ¶ 69 ("[Matute] held R.Y.M.R. firmly in his arms and repeated to the officers that he would not allow them to take his child.").  The facts as alleged are that the officers did what was reasonable under the circumstances to overcome Matute's resistance.  *See, e.g., Cortez*, 2012 WL 3861951 at *6 (customs officer assuming a "bladed stance with his hand on his holster ready to draw his weapon" was not unreasonable show of force "to obtain [the plaintiff's] cooperation" with

order.).  Accordingly, the allegations do not establish the elements of assault or battery under state law.

Moreover, to survive a motion to dismiss, a plaintiff must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  To meet this standard, the complaint must "allow . . . the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*.

In asserting claims for assault and battery, the complaint merely alleges that the officers caused  "damage, loss and harm" and "substantial damages."  Compl, ¶¶ 87-88, 97-98. However, the complaint fails to allege any facts describing the nature or severity of this supposed injury.  This "'formulaic recitation' of the injury element is fatal to" these claims.  *See Peay v. Mortgage Elec.*, 514 F. Appx. 896 (11th Cir. 2013) (quoting *Twombley*, 550 U.S. at 555).

## <u>CONCLUSION</u>

For the foregoing reasons, this action should be dismissed.


Date: November 2, 2020                         Respectfully submitted,

                                              JEFFREY BOSSERT CLARK
                                              Acting Assistant Attorney General

                                              DOUGLAS G. SMITH
                                              Deputy Assistant Attorney General, Civil Division

                                              JAMES G. TOUHEY, JR.
                                              Director, Torts Branch

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America


## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America

30