**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| R.Y.M.R. and Eric Matute Castro, ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No. 1:20-CV-23598-KMW** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Defendant** ) | |
| ) | |
| ) | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Plaintiffs Eric Matute Castro and his son, R.Y.M.R., by and through undersigned counsel, respectfully file this response in opposition to Defendant's ("United States" or "Defendant") Motion to Dismiss and Memorandum in Support  (ECF No. 12) (the "Motion").

## INTRODUCTION

In Plaintiffs' Complaint (ECF No. 1), Plaintiffs plausibly allege claims for battery, assault, negligence, and intentional infliction of emotional distress based on the United States' violent separation of their family.  Plaintiffs' allegations are not only supported by detailed factual allegations, but also documented by widespread media reporting and similar lawsuits filed in the Ninth Circuit (where motions to dismiss similar to the Motion were summarily denied).  The United States' Motion, rather than address Plaintiffs' allegations on their merits, tries to rewrite the Complaint by (1) ignoring the vast majority of Plaintiffs' allegations and (2) injecting factual allegations regarding Defendant's rationale that *appear nowhere in the Complaint* through declarations and extrinsic evidence.  Relying heavily on these declarations, the United States

1

advances a series of mistaken standing and jurisdictional arguments that have been rejected by courts in similar circumstances, before concluding with a halfhearted argument that Plaintiffs' claims themselves were not adequately pleaded.  Each of these arguments should be rejected.

*First*, Defendants' own exhibits demonstrate that Plaintiffs expressly authorized the filing of this action and that their authorization complies with 28 U.S.C. §2675.  As detailed herein, every administrative requirement was fulfilled with precision with respect to R.Y.M.R.'s administrative complaint.  Moreover, Defendants' hyper-technical argument that Plaintiffs' authorization did not meet the Federal Tort Claims Act's ("FTCA") exhaustion of remedies requirement is contrary to Eleventh Circuit precedent, which holds  that a parent, party to the same lawsuit as his child, is a proper representative of that child where, as here, there no inherent conflict of interest.

*Second*, Defendants' reliance on the discretionary function and due care exceptions under the FTCA is misplaced.  It is well-settled that the discretionary function exception does not apply to constitutional violations such as those alleged here.  Indeed, as detailed *infra* at pp. 13-16, courts have repeatedly rejected arguments that the United States was simply exercising its "discretion" when those actions violated the Constitution.  And courts have also refused to apply the discretionary function exception where, as here, Defendants' misconduct was not the result of judgment or choice, nor was it the type of conduct the exception was designed to protect.  Likewise, the United States cannot hide behind the due care exception because the Complaint plainly shows that the violent separation and attack on Plaintiffs was not mandated by any statute or regulation, and clearly was not exercised with even a minimal concern for the Plaintiffs' care.

*Third*, Defendant's arguments that Plaintiffs' common law claims are "constitutional torts" or without a private analog are plainly incorrect.  Plaintiffs' claims are, in fact, specifically referenced in the FTCA as claims exempt from sovereign immunity, *see* 28 U.S.C. § 2680(a)-(h),

and courts have repeatedly found that the United States may be liable under common law theories for abuses relating to imprisonment and immigration under the FTCA. *See infra* at pp. 25-29.

**Fourth**, the Motion's suggestion that Plaintiffs have not adequately pleaded their assault and battery claims is specious. The Complaint contains detailed allegations of the harmful and violent conduct perpetrated by the United States on Plaintiffs. Government agents are quoted as expressly threatening violence (*see* Compl. at ¶¶ 64-70 ("Do you want me to take him by force? . . . Well if you want violence, you'll have it.")) before delivering on those threats (*id.* (detailing violent separation of R.Y.M.R. from his father's arms as his father was threatened with a taser and further violence)). That this misconduct was par for the course for victims of Defendant's family separation policy does not render it less tortious. Under Federal Rule of Civil Procedure 8, Plaintiffs' allegations are plainly sufficient to support their claims.

## LEGAL FRAMEWORK AND COUNTERSTATEMENT OF FACTS

Since the filing of the Complaint, many facts have come to light through a Congressional investigation into Defendant's ill-planned choice to inflict inordinate pain and suffering by separating families at the United States' border. While the Administration's plans of family separation began almost immediately after President Trump's inauguration,[1] it is now crystal clear that there was no "policy" to separate families in November 2017 when Plaintiffs were threatened with a taser and pepper spray and the young boy was torn from his father's arms. (*See* Compl. at ¶¶ 66-70.) Defendant cites but a single document allegedly relating to family separation that

---

[1] Staff of the Subcommittee on Immigration and Citizenship, H.R. Comm. on the Judiciary, 116th Cong., The Trump Administration's Family Separation Policy: Trauma, Destruction, and Chaos at 2-3 (Oct. 2020) ("H.R. Comm. on the Judiciary Report"). *See Democracy Forward Foundation v. White House Office of Am. Innovation*, 356 F. Supp. 3d 61, 69 n.6 (D.D.C. 2019) (court can take judicial notice of "facts in the public record, such as government documents"); *K.T. v. Royal Caribbean Cruises, Ltd.,* 931 F.3d 1041, 1049–50 (11th Cir. 2019) (judicial notice of Congressional Report appropriate).

predated the family separation at issue, President Trump's January 2017 Executive Order No. 13767 ("EO 13767").  (Motion at 5.)  Defendant suggests that EO 13767 mandated or encouraged the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), or U.S. Customs and Border Protection ("CBP") to separate children crossing the border from their parents—it did not.

To the contrary, EO 13767 focused primarily on the construction of a physical wall on the border,[2] while also mandating that the Attorney General *establish prosecution guidelines* to prioritize prosecution at the southern border,[3] a very preliminary step towards what would become family separation.  Not until July 2017 did CBP begin a pilot program in the El Paso Southwest Border Patrol Sector, which includes the borders in New Mexico and West Texas (though not California), to drastically increase criminal prosecutions of those who entered illegally, including of parents arriving with minor children, resulting in family separations.[4]  However, as in the case at bar, CBP separated families whether or not parents were prosecuted, as well as outside of the El Paso Southwest Border Sector.[5]  Then DHS Secretary Kirstjen Nielsen did not initiate even preliminary efforts to develop a written policy until December 2017, when she sought "draft memoranda evaluating options on 'separating Family Units.'"[6] while then Attorney General Sessions did not announce President Trump's "zero tolerance" family separation policy until April 2018.[7]

---

[2] Border Security and Immigration Enforcement Improvements, 82 FR 8793 at 8794.

[3] *Id.*

[4] H.R. Comm. on the Judiciary Report at 7.

[5] R.Y.M.R. and Mr. Matute were separated in California.  (*See* Motion at 14.)

[6] H.R. Comm. on the Judiciary Report at 10.

[7] H.R. Comm. on the Judiciary Report at 11.

Setting aside the Motion's unsubstantiated policy arguments, the Motion's factual presentation (*see* Motion at 6) improperly injects a number of facts into the record that appear nowhere in the Complaint. Most significantly, the United States offers a substantive defense of its rationale for separating Plaintiffs, claiming that the true reason for separating Mr. Matute and R.Y.M.R. was not malice, but "child safety concerns." (*See* Motion at 6, citing Exhibit 1 to the Motion (ECF No. 12-1).)[8] Plaintiffs respectfully submit that this extrinsic evidence, because it essentially argues rationale rather than presenting any additional facts relevant to the jurisdictional arguments here, should be given no probative value. Indeed, these declarations and documents have a number of irregularities—including the fact that they differ materially from documents provided to Plaintiffs as a result of their FOIA requests—that further undermine their relevance.[9] Nonetheless, to the extent that the Court considers the declarations attached to the Motion, Eleventh Circuit precedent directs that Plaintiffs should be provided with an opportunity for discovery and a hearing. *See infra* at p. 7.

---

[8] Exhibit 1 is comprised of the Declaration of Laura Perez, Supervisory Detention and Deportation Officer at ICE, and the I-213 (a form used by CBP) attached thereto ("Perez I-213"). Therein, Perez attests, under penalty of perjury, that the Perez I-213 "is a true and accurate copy of the I-213 for Eric Matute Castro."

[9] For example, the I-213 attached to the Motion differs in several significant respects from Mr. Matute's I-213 produced by the United States in response to an Americans for Immigrant Justice FOIA request ("FOIA I-213"). *See* Exhibit 1, Declaration of Lily Hartmann (attaching I-213 received from FOIA request). The principal difference is that the FOIA I-213 does *not include any reference to the family unit being separated due to child safety concerns. Id.* at 4. Tellingly, pages 1-4 of both I-213s contain multiple references to the father-son relationship between Mr. Matute and R.Y.M.R.: "Matute questioned as to *his and his son's* citizenship;" Matute acknowledged these rights on behalf of his *son*," Matute and *his son are being processed as a family unit*," "*Matute provided a Honduran national registration card for himself and a copy of Honduran birth certificate for both he and his son, bearing biographical information*," and "Matute *on behalf of his son* ▮▮▮▮ . . ." (*See* ECF No. 12-1 at 2-4 (emphasis added).) Below a dotted line, in the very last paragraph of both I-213s, without any mention of a date, particular documentation, or any evidence whatsoever, the I-213s gratuitously state: "[f]amily unit is being separated due to child safety concerns . . . adult traveling with the juvenile(s) cannot be positively identified as having the proper documentation of being the parent . . ." (*Id*. at 4.)

<u>**ARGUMENT**</u>

I.    **Legal Standard**

A motion to dismiss should be denied where a complaint alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). All inferences must be drawn in the plaintiff's favor. *Id.*; *Douglas v. United States*, 814 F.3d 1268, 1274 (11th Cir. 2016).   Indeed, even when the defendant raises jurisdictional arguments, "the standard of review is usually straightforward:  we 'accept all of the factual allegations in [the] complaint as true and ask whether the allegations state a claim sufficient to survive a motion to dismiss.'" *Douglas*, 814 F.3d at 1274 (quoting *Gaubert v. United States*, 488 U.S. 315, 327 (1991)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Where, as here, the defendant's arguments are based on extrinsic evidence such as declarations, district courts treat those arguments as ***factual*** challenges to the pleading rather than simply ***facial*** challenges under Rule 12(b)(6). *Douglas*, 814 F.3d at 1274.  "In a factual challenge the district court ***must*** give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the motion to dismiss." *Id.* (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)); *see also Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 731 (11th Cir. 1982) (plaintiff is entitled to seek discovery before a claim may be dismissed for lack of subject matter jurisdiction).  It follows that where, as here, the Defendant has injected factual allegations into the record on a motion to dismiss, Plaintiffs may include related facts not in the Complaint when opposing that motion, such as those included herein from the H.R. Comm. on the Judiciary Report, *see supra* at 3.

Furthermore, the Eleventh Circuit has expressly held that if a jurisdiction challenge implicates the merits of the underlying claim,[10] then the "'proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's claims.'" *Douglas*, 814 F. 3d at 1274 (quoting *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003); *see also Eaton,* 692 F.2d at 734 ("[w]here the jurisdictional issues are intertwined with the substantive merits, 'the jurisdictional issues should be referred to the merits"); *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981) (same).[11]  The heart of Plaintiffs' case, and their claim for tortious infliction of emotional distress in particular, is that the United States intentionally induced egregious pain and trauma on R.Y.M.R. and Eric to deter other migrants from seeking asylum.  Thus, this Court should find jurisdiction and deal with the Defendant's "objections as a direct attack on the merits."  *Id*.

## II.     The United States' Faulty Arguments Regarding R.Y.M.R.'s Capacity and Exhaustion of Administrative Remedies Should be Rejected.

The United States argues that the minor Plaintiff has not adequately shown his capacity to institute this lawsuit and that he has not exhausted administrative remedies before doing so.  Both arguments should be rejected for the reasons below.

### A.     Americans for Immigrant Justice was authorized to submit R.Y.M.R.'s claim.

On November 8, 2019, the approved Form 95 was submitted on behalf of the claimant, R.Y.M.R. c/o his attorney, Allison Norris, staff attorney for Americans for Immigrant Justice,

---

[10] Here, the United States' Motion and the corresponding exhibits clearly challenge the factual allegations of the Complaint and rely on extrinsic evidence to do so.  (*See, e.g.*, Motion at 6, Ex. 1 (arguing that the reason for the separate was not as alleged in the Complaint, but instead was "child safety concerns").)

[11] Fifth Circuit cases decided prior to October 1, 1981 are binding precedent in this circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

with the office address of Americans for Immigrant Justice and signed by Lisa Lehner, for the

Claimant.  Motion Ex. 3. The instructions that accompany the form provide:

> The claim may be filled by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant[12]. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.[13]

In accordance with these instructions, attached to the Form 95 was a document signed by

R.Y.M.R.'s father that provided:

### AUTHORIZATION TO FILE ADMINISTRATIVE TORT CLAIM

> I, Eric Matute Castro, authorize Allison Norris, Esq. and Lisa Lehner, Esq. of Americans for Immigrant Justice to submit a claim under the Federal Tort Claims Act on behalf of my minor child, ████ ████ ████, to the U.S. Department of Homeland Security, U.S. Customs and Border Protection, and the U.S. Department of Health and Human Services, and any other government agency, seeking compensation for the unlawful actions of employees or their agents against me and my minor child.

(Motion Ex. 3.)  Clearly this authorization provided the legal capacity of the Plaintiff's attorneys

and their authority to present this claim.

Although this form with the attached express authorization was filed as an exhibit to the

Government's Motion to Dismiss, the United States nonetheless suggests that this claim was

improperly presented and that R.Y.M.R did not meet the exhaustion of remedies requirement of

the statute, specifically because it was submitted by an attorney, rather than by a guardian or parent

---

[12] Notably, the agencies to whom this form was submitted never questioned any aspect of the claim or requested any further indicia of the attorneys' authorization to submit it on the Plaintiff's behalf.

[13] The language included in instructions on the Form 95 is derived from 28 C.F.R. § 14.2 (a) and is not in the statute.  *See Jama* v. *U.S. I.N.S.*, 22 F. Supp. 2d 353, 368 (D.N.J. 1998).  As discussed, *infra*, Eleventh Circuit precedent has not required strict compliance with this regulation.  *See Adams* v. *United States*, 615 F.2d 284, 289 (5th Cir. 1980).

acting as next friend on his behalf.  (Motion at 16-18.)  As is evident, the form that was submitted fully complied with the statutory prerequisite under 28 U.S.C. §2675 to institute a FTCA suit against the United States.  But in this Circuit, an individual with a claim against the United States, satisfies §2675's requirement that "the claimant shall have first presented the claim to the appropriate Federal agency" if the claimant (1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and (2) places a value on his or her claim. *Burchfield* v. *United States*, 168 F.3d 1252, 1255 (11th Cir. 1999) citing *Adams* v. *United States,* 615 F.2d 284, 289 (5th Cir. 1980), *decision clarified on denial of reh'g*, 622 F.2d 197 (5th Cir. 1980).[14]  The Sixth, Ninth, Tenth and D.C. Circuits, like the Eleventh Circuit, treat as a "claim" any document that identifies the incident said to be tortious and demands a sum certain in damage.[15]

Even were this Court to require the claim to include the "authority to present a claim on behalf of the claimant as agent . . . or other representative" that is listed in 28 C.F.R. § 14.2, the authorization attached to the Plaintiff's Form 95 clearly suffices in this regard.[16]  In fact, courts have recognized evidence of the authority of an attorney to submit a claim far less explicit  than that submitted in the case at bar.  In *Leaty* v. *United States*, 748 F. Supp. 268 (D.N.J. 1990), the court held that a "letter of representation containing an offer to negotiate and settle the claim, sent

---

[14] *Accord Douglas* v. *United States*, 658 F.2d 445, 447–48 (6th Cir. 1981); *Warren* v. *Department of the Interior Bureau of Land Management,* 724 F.2d 776 (9th Cir. 1984) (*en banc*); *Cizek* v. *United States*, 953 F.2d 1232 (10th Cir. 1992); *GAF Corp.* v. *United States*, 818 F.2d 901(D.C. Cir. 1987) (circuits have ruled that "minimal notice" makes out a statutory claim, without requiring the additional conformance with the regulation in 28 C.F.R. § 14.2).

[15] *But see Kanar* v. *United States*, 118 F.3d 527 (7th Cir. 1997); *Pennsylvania* v. *National Association of Flood Insurers*, 520 F.2d 11, 19–20 (3rd Cir. 1975); *Lunsford* v. *United States*, 570 F.2d 221, 225–27 (8th Cir. 1977) (the regulation supplies the definition of a "claim).

[16] Under  28 C.F.R. § 14.2(a)  a "claim" has four elements: (i) notification of the incident; (ii) a demand for a sum certain; (iii) the title or capacity of the person signing; and (iv) evidence of this person's authority to represent the claimant.

by plaintiff's attorney" satisfies the requirements of 28 U.S.C. § 2675 and 28 C.F.R. § 14.2.  *See also 55 Motor Ave. Co*. v. *Liberty Indus. Finishing Corp*., 885 F. Supp. 410, 417 (E.D.N.Y. 1994) (letter from plaintiffs' attorney stating that he represents plaintiffs and attaching a complaint that was to be filed is sufficient evidence of authorization to represent the plaintiffs).

Ignoring the binding precedent of the Fifth Circuit in *Adams* v. *United States* that only requires only "minimal notice," the United States relies on the Eighth Circuit case of *Mader* v. *United States*, 654 F.3d 794 (8th Cir. 2011). As discussed *supra*, the Eighth Circuit, unlike the Eleventh, does subsume the regulation into the definition of what constitutes a proper claim. Additionally, *Mader is* so factually distinguished from the instant one as to render it irrelevant to this discussion.  In *Mader*, a wrongful death suit against the U.S., the decedent's wife filed the claim with the Department of Veterans Affairs; however, her authority to act as personal representative of the claimant's estate was flawed for several reasons.  First, she failed to submit any evidence of her status as personal representative. either when she filed the claim or later when the agency followed up.  Notably, as revealed at oral argument, Mrs. Mader's status as personal representative had expired at the time she filed the claim and by the time she filed the lawsuit and thus, under state law, she had no authority to represent her husband's estate.  Thus, the court ruled that even if the government had wished to settle the statutory beneficiaries' wrongful death claim, it could not do so because Ms. Mader's state-law authority to act on behalf of the beneficiaries had expired.  *Id. at* 802.

Finally, the Defendant must be mindful that this case involves a young child.  Courts have expressed the unwillingness to "permit the United States to stand on technicalities once a claim has been filed," especially when "the rights of children are involved, and inequity would result." *Forest* v. *United States*, 539 F. Supp. 171, 174 (D. Mont. 1982;) *Locke* v. *United States*, 351 F.

Supp. 185, 188 (D. Haw. 1972) ("legal representative does not require the claims on behalf of decedent and of the minor children, to be rejected for failure to comply with the Federal Tort Claims Act."); *accord Stokes* v. *United States*, 444 F.2d 69 (4th Cir. 1971); *Young* v. *United States*, 372 F. Supp. 736 (S.D.Ga.1974).

### B.   The Motion's misguided attack on R.Y.M.R.'s capacity to sue as a minor child should be rejected.

The Complaint was filed by "Plaintiffs R.Y.M.R.  and his father, Eric Matute Castro  ("Mr. Matute"), by their attorneys." (*See* ECF No. 1.)  The phrase "capacity to sue" refers to "'a party's personal right to litigate in a federal court,'" *Glickstein* v. *Sun Bank/Miami, N.A*., 922 F.2d 666, 670 (11th Cir. 1991) (quoting 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1542, at 327 (2d ed.1990)).  As distinct from the standing and real party in interest analyses, capacity doctrine speaks to a party's "legal qualification, such as legal age, that determines one's ability to sue or be sued. . . ."  Black's Law Dictionary 199 (7th ed.1999) (emphasis added).   Citing to a few inapposite cases,[17] the Defendant posits that despite the fact that this case was brought by R.M.Y.R. and his father as Co-plaintiffs, that there is a consequence[18] attached to R.Y.M.R.'s minority status.

---

[17] *Baloco ex rel. Tapia* v. *Drummond Co.*, 640 F.3d 1338, 1342 (11th Cir. 2011) (children of murdered Columbian fathers lacked standing under federal statutes to sue for their own damages where the statutes provide for damages only to the deceased person); *J.B. by & through K.B.* v. *Walt Disney Parks Resorts US, Inc.,* & No. 614-CV-1900-ORL-22GJK, 2017 WL 3065119, at *4 (M.D. Fla. July 19, 2017) (taxation of costs against minor's next friend-parent can be done only in the next friend's representative capacity); *Gonzalez ex rel. Gonzalez* v. *Reno*, 86 F. Supp. 2d 1167, 1185 (S.D. Fla. 2000), *aff'd sub nom. Gonzalez* v. *Reno*, 212 F.3d 1338 (11th Cir. 2000) (where father is not involved in filing of complaint court should  examine the interest of  would-be next friend where that interest may not be aligned with child's interest).

[18] Whereas this contention is raised under the auspices of the Defendant's jurisdictional argument, the Motion does not state specifically why the minor's purported lack of capacity to sue should affect this Court's jurisdiction—and it does not.  Were the Court to find that the minor lacked the requisite capacity to sue, the result pursuant to Rule 17(c) would be to appoint a guardian in the event there was a conflict of interest between the father and son.  *See Gonzalez,* 212 F.3d at 1185.

The Defendant has not suggested that there is a conflict between Mr. Matute and his son, and, indeed there is none.  Where, as in this case, a parent brings an action on behalf of a child, and it is evident that the interests of each are the same, no need exists for someone other than the parent to represent the child's interests under Rule 17(c) that authorizes the district court to appoint a guardian ad litem 'for an infant . . . not otherwise represented in an action." *Gonzalez ex rel. Gonzalez* v. *Reno*, 86 F. Supp. 2d 1167, 1185 (S.D. Fla. 2000), aff'd sub nom. *Gonzalez* v. *Reno*, 212 F.3d 1338 (11th Cir. 2000); *see also Burke* v. *Smith*, 252 F.3d 1260, 1265 (11th Cir. 2001); *Croce* v. *Bromley Corp.*, 623 F.2d 1084, 1093 (5th Cir. 1980) (ruling that the district court did not commit reversible error by failing to appoint a guardian ad litem for a child whose mother/legal guardian brought an action on the child's behalf).

In sum, the Defendant's arguments concerning the sufficiency of the Plaintiff's submission of his claim and his capacity to sue are unavailing.

III.     **The United States' Response Fails to Demonstrate that the Discretionary Function Exception Applies to Plaintiffs' Negligence and Intentional Infliction of Emotional Distress Claims.**

The United States bears the burden of demonstrating to the Court that the FTCA's discretionary function exception applies to Plaintiffs' negligence and intentional infliction of emotional distress claims. *Prescott v. United States*, 973 F.2d 696, 701-02 (9th Cir. 1992) (citing 28 U.S.C. § 1346(b)).  Because application of the discretionary function exception may turn on the facts relating to the decisions made by the United States and the policies at issue, numerous courts have found that it can be premature at the motion to dismiss stage to decide whether the discretionary function exception applies. *See, e.g., Peterson v. Martinez*, Case No. 3:19-cv-01447-WHO, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020) (denying motion to dismiss based on discretionary function exception); *In re Katrina Canal Breaches Consolidated Litigation*, 471 F. Supp. 2d 684, 705 (E.D. La. 2007) ("the law mandates that this Court should not find as a matter

of law at this juncture that all the decisions that have been made with respect to the MRGO were grounded in policy"); *Wesberry v. United States*, 205 F. Supp. 3d 120, 123 (D.D.C. 2016) (denying motion to dismiss without prejudice where it would be "premature to determine whether any binding mandate governs the agency's decision-making process").

In its Motion, the United States concedes, as it must, that the discretionary function exception to the FTCA does not shield the United States from liability for unconstitutional acts. (*See* Motion at 19); *see Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (holding that "the Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply"); *Fazaga v. F.B.I.*, 916 F.3d 1202, 1251 (9th Cir. 2019) (same).)   Accordingly, the United States must demonstrate not only that the exception applies, but also that its conduct was constitutional.  *See id.*; *see also Loumiet v. United States*, 828 F.3d 935, 943 (D.C. Cir. 2016) ("the United States lacks discretion to make unconstitutional policies choices") (citations and quotations omitted).

### A.       The United States' actions in separating families were unconstitutional.

Here, the United States' misconduct in separating clients is not protected by the discretionary function exception because the Complaint clearly alleges that those actions violated Plaintiffs' constitutional rights.  (*See*, *e.g.*, Compl. ¶¶ 29, 49, 51, 79.)  Plaintiffs allege that the United States' actions not only violated "Plaintiff's constitutional right to family integrity" (*id.* at ¶ 29), a right recognized and affirmed by courts throughout the country, but also "the U.S. Constitution's established due process rights governing immigration detainees and the right to family integrity" (*id.* at ¶ 79).  Indeed, the lack of basic record-keeping, notice to families of their children's whereabouts, and "reasonable measures to minimize the predictable" harms from the United States' separation of Plaintiff  R.Y.M.R. from his father "alleged in the Complaint cannot satisfy the requirements of due process."  (*Id.* at ¶ 79 (quoting *Ms. L. v. U.S. Immigration and*

*Customs Enf't*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018) ("*Ms. L I*"), *modified*, 330 F.R.D. 284 (S.D. Cal. 2019), *and enforcement granted in part, denied in part sub nom. Ms. L. v. U.S. Immigration & Customs Enf't*, 415 F. Supp. 3d 980 (S.D. Cal. 2020).)

District courts have denied application of the discretionary function exception in circumstances far less egregious than those alleged here. For example, in *APF v. United States*, Case No. CV-20-00065-PHX-SRB, ECF No. 36 at *7 (D. Ariz. July 27, 2020) (attached as Exhibit 2), a district court recently denied a motion to dismiss after the United States argued that its forcible separation, confinement, and treatment of families was protected by the discretionary function exception. The court held that, at the motion to dismiss stage, allegations demonstrating such conduct were sufficient to plausibly state a constitutional violation:

> Plaintiff have plausibly alleged that the government's separation of their families violated their constitutional rights. In a related suit brought by a class of migrant parents, a district court found that the government's practice of separating families, and the procedures used to implement this practice, likely violated due process. . . . Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs.

*Id.* at *7 (citing *Ms. L I*, 310 F. Supp. 3d at 1145 (S.D. Cal. 2018)).[19]

Other courts are in accord. *See Ms. L I*, 310 F. Supp. 3d at 1145 (S.D. Cal. 2018) (finding that the United States' "practice of separating class members from their minor children, and failing to reunify class members with those children, without any showing that the parent is unfit or presents a danger to the child is sufficient to find Plaintiffs have a likelihood of success on their [substantive] due process claim"); *Ms. L. v. U.S. Immigration and Customs Enforcement*, 302 F.

---

[19] As *APF* explains, "[b]ecause each of Plaintiffs' causes of action stem from this separation, none are barred by the discretionary function exception." *APF* (Exhibit 2), Case No. CV-20-00065-PHX-SRB, ECF No. 36 at *7. Likewise, each of Plaintiffs' claims here stem from their forcible separation by the United States.

Supp. 3d 1149, 1167 (S.D. Cal. 2018) ("*Ms. L II*") (denying motion to dismiss substantive due process claims based on separation of children from parents).  The United States argues that Plaintiffs cannot "circumvent the discretionary function exception simply by alleging that the separation violated the constitutional right to family integrity," but courts have rejected that exact argument in other cases.  *C.M. v. United States*, Case No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at \*4 (D. Ariz. Mar. 30, 2020) (rejecting argument plaintiffs were trying to "circumvent the discretionary function exception simply by labeling governmental conduct as unconstitutional") (emphasis added); *see also Nurse*, 226 F.3d at 1002 (reversing dismissal of plaintiff's FTCA claims where plaintiff alleged a constitutional violation); *Plascencia v. United States*, No. EDCV1702515JGBSPX, 2018 WL 6133713, at \*9 (C.D. Cal. May 25, 2018) (discretionary function exception does not apply when Plaintiffs allege injuries resulting from unconstitutional conduct in immigration-related detention).[20]  Accordingly, because Plaintiffs have adequately alleged that the United States violated their constitutional rights, the discretionary function exception does not apply.  *See C.M.*, 2020 WL 1698191 at \*4 ("Plaintiffs plausibly alleged that the government's separation of their families violated their constitutional rights, which is not shielded by the discretionary function exception.")

---

[20] Defendant mischaracterizes the Eleventh Circuit's holding in *Denson v. United States*, 574 F.3d 1318 (11th Cir. 2009), asserting that, in an FTCA action, "allegations of a constitutional violation do not defeat discretionary function exception" unless the constitutional right at issue is "clearly established." (Motion at 18.)   In fact, in *Denson*, when considering the FTCA claims at issue, the Eleventh Circuit chose not to consider the discretionary function exception.  *Id*. at 1245.  Instead, the *Denson* court focused on the supremacy clause and whether the law enforcement officers at issue "did no more than what was necessary and proper … as demarcated by the Constitution …"  *Id*. at 1345-47.  In any event, as established herein, the violent and pointless family separation in this case blatantly infringed Plaintiffs' constitutional right to family integrity which, indeed, is well established.  *See, e.g.*, *Jacinto-Castanon*, 319 F. Supp. 3d at 501.

### B.     Plaintiffs' separations did not result from the enforcement of federal law.

Setting aside Plaintiffs' plausible allegations showing the unconstitutionality of the United States' conduct, the United States does not satisfy its burden of showing that the discretionary function exception applies here.  As the United States explains, it must satisfy a two-part test to show that this exception applies—and, for purposes of a motion to dismiss, must show that there is no issue of fact as to either part of the test.  (*See* Motion at 12-13.)  First, the United States must show that its actions "'involv[ed] an element of judgment or choice.'"  (*Id*. at 13 (quoting *Gaubert*, 499 U.S. at 322).)  Second, the United States must show that its judgment or choice was "'of the kind that the discretionary function exception was designed to shield.'"  (*Id*. at 14 (quoting *Gaubert*, 499 U.S. at 323).)  When, as here, a complaint alleges facts that "would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime," then a motion to dismiss should be denied.  *Monzon v. United States*, 253 F.3d 567, 572 (11th Cir. 2001).

### 1.     The Complaint's allegations show that the United States' actions did not involve judgment or choice.

Here, the United States argues that "determinations regarding where to place detainees involve precisely the sort of discretionary decision-making that is shielded by the FTCA."  (Motion at 16; *see id.* at 17 (arguing that "decisions relating to aliens, including placement and detention," require discretion).)  But this is a bait-and-switch, as Plaintiffs' allegations are not directed at any such determination.   Instead, Plaintiffs' allegations arise from the tortious conduct and constitutional violations involved in the forcible separation of R.Y.M.R. from his father—that, not the separate matter of detainee relocation, is the conduct at issue in the Complaint.  *Woodruff v. United States*, Case No. 16-1884 (RDM), 2020 WL 3297233, at *6 (D.D.C. June 18, 2020) (citations omitted) ("As a starting point, courts have recognized that, before determining whether

16

the complained-of conduct was grounded in judgment or choice, it is crucial to determine exactly what conduct is at issue."). That conduct had nothing to do with a "discretionary" determination regarding how detainees are cared for (or, more accurately, are not cared for).[21] *See C.M. v. United States*, Case No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020) (rejecting discretionary function argument that "rests on the false premise that by taking custody of children whose parents are 'amenable to prosecution,' the United States is simply enforcing federal law").

Although the United States haphazardly cites a number of statutes regarding the detention of aliens (*see* Motion at 16-17), none of the federal statutes cited mandate the tortious acts alleged in the Complaint. The arguments made in the Motion are, at most, premature and faulty summary judgment arguments, as the United States claims that "separation of [an] adult from a child . . . is *required*" after "it decides to detain an adult alien in a secure adult detention facility." (*Id.* at 17.) Thus, setting aside the fact that the Complaint plausibly alleges that the United States violated the Constitution, the United States does not show that any of the acts that cause Plaintiffs' harm— which culminated when it forcibly removed R.Y.M.R. from his father's custody without a finding of parental unfitness and kept them apart for months—was made pursuant to any express grant of discretion relating to detention policies.

Regardless, the United States ultimately cannot carry its burden of showing that its actions involved an element of "judgment or choice" because its actions violated multiple mandatory, non-discretionary duties. *See Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 544 (1988) ("When

---

[21] The Motion elsewhere describes the United States' decision-making as "relating to enforcement of federal immigration law and concerns regarding child welfare." (Motion at 1.) But this depiction poses the same problem—the United States is trying to sidestep the allegations in the Complaint, which challenge entirely different conduct.

a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply."); *Faber v. United States*, 56 F. 3d 1122, 1125–26 (9th Cir. 1995) (refusing to apply the discretionary function exception where the United States "failed to follow specifically prescribed policies").  Here, Plaintiffs have alleged that the United States has violated non-discretionary obligations including, among other things, its "obligations under the *Flores* consent decree and 8 C.F.R. § 1236.3 by not prioritizing family unity and instead needlessly separating R.Y.M.R. from his father."  (Compl. at ¶ 31; *see Flores v. Lynch*, 828 F.3d 898 (9th Cir. 2016); *Flores v. Barr*, 934 F.3d 910 (9th Cir. 2019).)[22]  And, as outlined *supra*, Plaintiffs have plausibly alleged that Defendant's separation of families and failure to track separated families and permit regular communications violated federal law and policy, including Plaintiffs' constitutional rights. (*See* Compl. ¶¶ 47, 75 ("[U]nder long-standing legal obligations, imposed by regulations and by consent decree, the federal officers who took custody of Plaintiff violated multiple non-discretionary duties that were designed to protect families, and particularly children."); *see also Jacinto-Castanon*, 319 F. Supp. 3d at 501 (United States "directly and substantially burdened plaintiffs' right to family integrity" where it "continued to detain Ms. Jacinto-Castanon and her sons in separate facilities for many weeks with only periodic phone calls"); *Ms. L. I*, 310 F. Supp. 3d at 1144 (failure to track separated children cannot satisfy due process requirements).)

---

[22] Moreover, "once the Government has undertaken responsibility for the safety of a project, the execution of that responsibility is not subject to the discretionary function exception." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1215 (9th Cir. 2001).  In the context of the *Flores* settlement agreement, the Complaint's allegations are not protected by a use of discretion because they reflect a failure to meet its "duty to maintain safety measures once undertaken."  *Id.* at 1216–17.

### 2.    The allegations of Plaintiffs' forcible separation are not the kind of actions the discretionary function exception was designed to shield.

With respect to whether the United States' "judgment is of the kind that the discretionary function exception was designed to shield," *Gaubert*, 499 U.S. at 322–23, the Motion itself demonstrates that this is an issue of fact.  As the United States concedes, the discretionary function exception is intended to prevent second-guessing of decisions that are "'grounded in social, economic and political policy through the medium of an action in tort.'"  (Motion at 14 (quoting *Gaubert*, 499 U.S. at 323).)  It is well-settled that, in arguing this point, "[i]t is not sufficient for the United States merely to waive the flag of policy as a cover for anything and everything it does that is discretionary in nature."  *Terbush v. United States*, 516 F.3d 1125, 1134 (9th Cir. 2008).

Here, the United States relies on purported fact and policy arguments that appear nowhere in the allegations in the Complaint.  For example, based on evidentiary declarations unrelated to the Complaint's allegations that, as discussed *supra*, are plainly improper on a motion to dismiss, the United States cites "child safety concerns" as its stated goal in forcibly separating Plaintiff from his father.  (*See* Motion at 6-7 (citing Exhibit 1).)[23]  That the United States would need to submit purported—and untested—witness declarations simply to argue for the application of the discretionary function exception shows that the Complaint states a plausible claim that the United States' conduct does not fall within that exception.  Indeed, other courts in this context have noted that, where the record is unclear on whether the United States' actions are susceptible to policy analysis, a motion to dismiss should be denied as premature.  *See, e.g., Peterson v. Martinez*, Case No. 3:19-cv-01447-WHO, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020) (denying motion to

---

[23] Notably, after violating Plaintiffs' constitutional rights and inflicting the harm alleged in the Complaint, the United States set aside its feigned concern over "safety concerns"—no explanation is offered for this change in position in the declarations—and Plaintiffs were reunited 73 days later (*See* Motion at 7.)

dismiss based on discretionary function exception); *Young v. United States*, 769 F.3d 1047, 1057 (9th Cir. 2014) (there must be "some support in the record that the particular decision . . . made was actually susceptible to analysis under the policies the government identified").

Regardless, the Complaint's allegations regarding the United States' misconduct are not "the kind [of governmental decisions] that the discretionary function exception was designed to shield," *i.e.* "legislative and administrative decisions grounded in social, economic, and political policy." *Berkovitz*, 486 U.S. at 536–37.  The Complaint alleges that the United States failed to follow its own directives and willfully violated Plaintiffs' constitutional rights to family integrity by forcibly separating Plaintiffs and acted toward them tortiously and negligently.  (*See* Compl. at ¶¶ 29-31 and 56-109.)  This conduct does not reflect "weighing of practical and policy considerations [that] represents the kind of policy judgment that Congress intended to protect through the discretionary function exception[.]" *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1214 (9th Cir. 2001); *Ruiz ex rel. E.R. v. United States*, Case No. 13-CV-1241 (KAM), 2014 WL 4662241, at *8 (E.D.N.Y. Sept. 18, 2014) ("The court cannot discern how deciding to wait fourteen hours before contacting E.R.'s parents and to only provide the child with a cookie and soda over twenty hours could constitute a considered judgment grounded in social, economic, or political policies.").  Indeed, the conduct alleged in the Complaint "appear[s] more plausibly to be the result of negligence or laziness, and these actions do not warrant the application of the discretionary function exception." *Ruiz*, 2014 WL 4662241, at * (citing *Couthurst v. United States*, 214 F.3d 106, 111 (2d Cir. 2000)).

**IV.     The Due Care Exception Does Not Apply to Plaintiffs' Forcible Separation and the Other Misconduct Alleged in the Complaint.**

The United States argues that Plaintiffs' claims for negligence and IIED are barred by the FTCA's "due care" exception set forth in 28 U.S.C. §2680(a).  Here, the crux of the United States'

argument is that due care exception "bars the negligence and IIED claims because the United States plainly had the statutory authority to determine whether and where to detain Plaintiffs after they entered the country illegally." (*See* Motion at 22.) This argument fails because (1) the due care exception does not apply when there is no statute or regulation authorizing the misconduct alleged and (2) the allegations in the Complaint plausibly allege that the United States did not exercise due care in this case.

The due care exception states in pertinent part that the FTCA does not apply to "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. §2680(a). The intent of this exception is to protect the United States from suits based on a federal employee's execution of a statute or regulation. *Gaubert,* 499 U.S. at 322 (1991). The due care exception applies when "a federal statute, regulation or policy specifically proscribes a course of action for an employee to follow . . . as long as the employee has exercised due care in following the dictates of the statute or regulation." *Crumpton v. Stone,* 59 F.3d 1400, 1403 (D.C. Cir. 1995).[24]

Thus, the due care exception bars claims "based upon an act or omission of an employee of the Government, exercising due care, in the execution of a *statute or regulation*, whether or not such *statute or regulation* be valid." 28 U.S.C. § 2680(a) (emphases added). The government bears the burden to prove this exception applies. *See Prescott v. United States*, 973 F.2d 696, 702 (9th

---

[24] Courts in other circuits apply a two-part test set forth in *Welch v. United States*, 409 F.3d 646, 652 (4th Cir. 2005), to determine whether the due care exception applies. *See, e.g.*, *Ferguson v. United States*, 2016 WL 4793180, at *7 (S.D. Cal. Sept. 14, 2016); *Kwai Fun Wong v. Beebe*, 2006 WL 977746, at *7–8 (D. Or. Apr. 10, 2006). *Welch*, 409 F.3d at 651–52. Even under this two-part test, the Government's argument fails because, for the reasons set forth herein, the first element cannot be satisfied because there is no statute or regulation that specifically prescribes the course of conduct for an officer to follow.

Cir. 1992) ("We thus hold explicitly that the United States bears the burden of proving the applicability of one of the exceptions to the FTCA's general waiver of immunity.").

A.     **No statute or regulation proscribed the United States' misconduct here.**

The United States' misconduct of separating children from their parents at the border is not protected by the due care exception because there is no statute proscribing such conduct.  Indeed, courts in other family separation cases have held that "[t]he United States has cited no statute explicitly authorizing the government to detain parents and children in separate facilities before it has charged either with a crime."  *CM*, 2020 WL 1698191, at *3; *APF* (Exhibit 2), Case No. CV-20-00065-PHX-SRB, ECF No. 36 at *6 ("The United States cites no statue or regulation requiring the detention of individuals who are 'amenable to prosecution' in facilities different from those who are not 'amenable to prosecution,' or any statute more generally requiring the separation of Plaintiffs upon their entry into the country.").  The Complaint here alleges similar misconduct— all arising out of the executive branch's family separation *policy*—to the misconduct alleged in *CM* and *APF*.

Instead of addressing the conduct at issue, the United States defends conduct not attacked. The Government is missing the proverbial mark here.   For example, the Government unscrupulously attempts to argue that the TVPRA actually mandates the separation "once R.Y.M.R. was designated a UAC" (*See* Motion at 22);[25]" however, the Government ignores the obvious fact that its misconduct in removing R.Y.M.R from the custody of a parent is what ***caused*** the designation as a UAC.  It is that misconduct that underlies Plaintiffs' tort claims.  The United

---

[25] In *Bunikyte v. Chertoff*, the court observed that a Congressional committee had rejected the definition the Defendant seems to be advancing here: "Children who are apprehended by DHS while in the company of their parents are not in fact 'unaccompanied' and if their welfare is not at issue, they should not be placed in ORR custody."  2007 WL 1074070, *1–2 (W.D. Tex. Apr. 9, 2007) (citing H. REP. NO. 109-79, at 38 (2006)).

States tries to sidestep the Complaint's allegations because, ultimately, it is undisputed that there is no statute mandating or proscribing the Government separating of R.Y.M.R. from a parent. *See, e.g.*, *Gonzalez*, 2013 WL 942363, at *3–4 ("Because Plaintiff's detention was not the result of a statutorily prescribed course of action," his claims were not barred by the due care exception.); *Watson v. United States*, 179 F. Supp. 3d 251, 270–71 (E.D.N.Y. 2016) (concluding the due care exception, which "applies to situations where a statute or regulation *requires* an action to be taken," was inapplicable because the statutes the government cited did not *mandate* the conduct at issue— detention of plaintiff), *aff'd in part, rev'd in part on other grounds*, 865 F.3d 123 (2d Cir. 2017).

What instigated the separation of R.Y.M.R. from his father was a poorly thought out, pre-policy decision made by the Trump Administration to separate families and thereby deter others from seeking asylum in the United States. (Compl. ¶¶ 1, 2 5-8, 18, 22, 23, 48, and 49; see also *supra* at 3, 4.)  It was this decision, not reflected in any Executive Order or regulation, that inflicted the emotional distress upon Plaintiffs. *Id.*; *see also CM*, 2020 WL2698191, at *3 (family separation, even when it became a formal policy, not covered by due care exception since the exception only applies to governing statutes and regulations); *APF* (Exhibit 2), Case No. CV-20-00065-PHX-SRB, ECF No. 36 at *6 (noting "the family separations were conducted pursuant to executive policy, not pursuant to any statute or regulation").

 The due care exception does not apply where a policy, or, as in this case, a pre-policy experiment, rather than a statute or regulation, mandated the conduct at issue. *Garcia-Feliciano v. United States*, 2014 WL 1653143, at *4 n.8 (D.P.R. Apr. 23, 2014) (citing *Welch*, 409 F.3d at 652) (due care exception "would not apply here . . . because a policy—not a statute or regulation— pr[e]scribed the deputy's conduct"); *APF* (Exhibit 2), Case No. CV-20-00065-PHX-SRB, ECF No. 36 at *6 (same).

### B.     The United States did not act with due care.

"Due care" under § 2680(a) "'implies at least some minimal concern for the rights of others.'" *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (quoting *Hatahley v. United States*, 351 U.S. 173, 181 (1956)); *see Hydrogen Tech. Corp. v. United States*, 831 F.2d 1155, 1161 (1st Cir. 1987) (standard for due care is "one of reasonableness"). The United States demonstrated a complete and total disregard for Plaintiffs' rights and safety. Officials acting on behalf of the United States cursed at Plaintiffs (Compl. at ¶¶ 57-59), prevented them from going to the bathroom—leaving a minor to remain in urine-soaked clothes for four days (*id.*) and left them for hours in a cold temperature room (*id.* at ¶ 60). After days of this abuse, United States officials threatened Mr. Matute with a taser and violence before forcibly separating him from his son. (*Id.* at ¶ 60-65 (telling Plaintiffs, "Well if you want violence, then you'll have it").) The suggestion that even minimal care is reflected in these allegations is specious. *See Myers & Myers, Inc.*, 527 F.2d at 1262 (government must show "at least some minimal concern for the rights of others"); *see also, e.g.*, *Lyttle v. United States*, 867 F. Supp. 2d 1256, 1299-1300 (M.D. Ga. 2012).

### V.     Plaintiffs Common Law Claims are Not Constitutional Torts.

Defendants ask the Court to dismiss Plaintiffs' common law tort claims on the basis that they are constitutional claims masquerading as tort claims, and are therefore barred by sovereign immunity. There is absolutely no merit to this Trojan Horse constitutional claims theory and no support in the law that well-pleaded common law claims are something else in disguise. In fact, in the FTCA Congress explicitly names three of Plaintiffs' claims as those exempt from sovereign immunity: negligence, as provided for in 28 U.S.C. § 2680(a), and assault and battery, as provided for in 28 U.S.C. § 2680(h).

24

The cases cited by Defendant stand for the proposition that the FTCA does not waive sovereign immunity for constitutional claims. All but one of Defendant's cases include the dismissal of claims for explicit constitutional violations. *See, e.g., McCollum v. Bolger*, 794 F.2d 602, 606 (11th Cir. 1986) (dismissal of claims for First and Fifth Amendment rights violations); *Dorman v. Simpson*, 893 F. Supp. 1073, 1084 (N.D. Ga. 1995) (dismissal of claim for "constitutional and due process violations"). The only case cited by Defendant wherein a court dismissed a common law claim on the basis that it was not in fact what it represented to be is *Hornbeck Offshore Transp., LLC v. United States*, 569 F.3d 506, 509 (D.C. Cir. 2009). The complaint in *Hornbeck* brought a claim for negligence that was not based on the principles of negligence but on the violation of a very specific federal law. *Id*. Such is not the case here, where Plaintiffs have stated distinct and specific claims of negligence, assault, battery, and IIED.

## VI.     Plaintiffs' Tort Allegations Satisfy the Broad Private Analog Inquiry.

Defendant erroneously contends that it cannot be liable under the FTCA for IIED, negligence, assault, or battery due to an alleged lack of state tort analogs. According to Defendant, "only the Federal government has the authority to enforce the Nation's criminal and immigration Law" (*See* Motion at 25), and therefore no state law analogs exist. However, the Supreme Court has made clear that the private analog doctrine, which provides that the United States is liable "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, must be interpreted broadly. As the Supreme Court explained in *Indian Towing Co. v. United States*, 350 U.S. 61 (1955):

> While the area of liability is circumscribed by certain provisions of the Federal Tort Claims Act, *see* 28 U.S.C. s 2680, 28 U.S.C.A. s 2680, all Government activity is inescapably 'uniquely governmental' in that it is performed by the Government…. On the other hand, it is hard to think of any governmental activity on the 'operational level,' our present concern, which is 'uniquely

25

> governmental,' in the sense that its kind has not at one time or
> another been, or could not conceivably be, privately performed.
> There is nothing in the Tort Claims Act which shows that Congress
> intended to draw distinctions so finespun and capricious as to be
> almost incapable of being held in the mind for adequate formulation.

*Id.* at 67–68.  Rather, Congress' chief intent in drafting the FTCA was not "to create new causes

of action" but "simply to provide redress for ordinary torts recognized by state law." *See Pate v.

Oakwood Mobile Homes, Inc.*, 374 F.3d 1081, 1083–84 (11th Cir. 2004) (citing *Howell v. United

States,* 932 F.2d 915, 917 (11th Cir. 1991)).  Indeed, the FTCA's requirement that a claim address

"like circumstances" does not mean "under the same circumstances." *See Indian Towing Co.*, 350

U.S. at 64.  Rather, courts must look "further afield" to find analogous torts. *United States v. Olson*,

546 U.S. 43, 46 (2005); *see also Pate v. Oakwood Mobile Homes, Inc.,* 374 F.3d 1081, 1084 (11th

Cir. 2004) ("comparison of activities need not be exact").

It is well settled that the United States can be liable for FTCA claims where it abuses its

exclusive authority, including abuses relating to imprisonment and immigration.  In *United States

v. Muniz*, 374 U.S. 150, 159-62, 165–66 (1963), the Supreme Court sustained the FTCA negligence

claims alleged by a federal prisoner for injuries sustained while he was imprisoned.  Similarly,

Federal Courts have repeatedly allowed FTCA claims to proceed in the immigration context

although the actions of immigration officers are "uniquely governmental."  For instance, in *Xue

Lu v. Powell*, 621 F.3d 944, 947-50 (9th Cir. 2010), the Ninth Circuit rejected the government's

private analog defense and allowed the plaintiffs' IIED claim where an asylum officer

conditioned outcomes in the plaintiffs' immigration proceedings on satisfaction of demands for

money and sexual favors. *See also Liranzo v. United States*, 690 F.3d 78, 80-81, 94-95 (2d Cir.

2012) (false arrest and imprisonment FTCA claims held viable where immigration officers

erroneous detention of plaintiff analogous to New York claim for wrongful citizen's arrest); *Lyttle*

*v. United States*, 867 F. Supp. 2d 1256, 1301 (M.D. Ga. 2012) (where ICE's actions respecting plaintiff's wrongful detention and deportation comprised elements of claims for negligence and negligent infliction of emotional distress under Georgia law, FTCA counts properly plead).

In the case at bar, Plaintiffs allege injuries arising from the government's forcible and needlessly violent removal of R.Y.M.R. from his father's care, as well as its utter failure to allow father and son to maintain contact.  (*See, e.g.*, Compl. at ¶¶ 1, 4-6, 23, 28, 45, 49, 63-70, 80, *et al.*) California courts have held private persons liable in tort under analogous circumstances.

In *Surina v. Lucey*, 168 Cal. App. 3d 539 (Ct. App. 1985), a California Court noted that "it has long been established that the unlawful taking or withholding of a minor child from the custody of the parent or guardian entitled to such custody constitutes an actionable tort" and held that the parents adequately alleged intentional infliction of emotion distress where their child was taken from them.  *Id*. at 542-45; *see also Tekle v. United States*, 511 F.3d 839, 855–56 (9th Cir. 2007) (holding IIED properly alleged as private analog in case involving alleged assault and battery of eleven-year-old boy).

Similarly, California recognizes a claim for negligence where one with actual custody and control over a child willfully causes or permits the child to suffer or inflicts unjustifiable physical pain or mental suffering on the child.  *See Quigley v. First Church of Christ, Scientist*, 65 Cal. App. 4th 1027, 1036 & 1039 (1998) (noting duty created by Cal. Penal Code § 273a); *see also Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1389–90 (2010) (where mother and her infant daughter resided in private correctional facility, the facility owed and breached its duty of care to the infant).

The Ninth Circuit, in *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007), considered assault and battery claims based on the police's unnecessarily rough and threatening treatment of

an eleven-year-old boy ("Tekle") during the execution of search and seizure warrants at his home. The misconduct included maliciously pointing firearms of all kinds at Tekle and pushing him to the ground. The *Tekle* Court held that the private assault and battery claims alleged met the FTCA analog test. *Id*. at 854–55; *see also Barouh v. Haberman*, 26 Cal. App. 4th 40, 45 (1994) (setting forth elements of civil battery under California law).

Given the recognized responsibilities under California law, the United States' analog argument cannot stand. Furthermore, due to the ruling in *Nguyen v. United States*, 556 F.3d 1244 (11th Cir. 2009), the private analog requirement for assault and battery claims is arguably inapplicable in the Eleventh Circuit. The purpose of the 1974 Amendment to 28 U.S.C.A. Section 2680(h) was to insure that, going forward, innocent families would be able to sue the United States for the torts enumerated therein (including assault and battery). *See id*. at 1255–56. In order to assure that purpose, the Eleventh Circuit ruled that the 2680(h), law enforcement exception[26] trumped the discretionary function exception with respect to the enumerated torts.[27] While the *Nguyen* opinion did not address the analog requirement, the Eleventh Circuit made manifest that the torts enumerated in 2680(h), including the assault and battery Plaintiffs have alleged, must be permitted to proceed regardless of other provisions of the FTCA. *Id*.

---

[26] The referenced exception provides that the FTCA is applicable ". . . with regard to acts or omissions of investigative or law enforcement officers of the United States Government . . . to any claim arising . . . out of *assault, battery*, false imprisonment, false arrest, abuse of process, or malicious prosecution." 28 U.S.C.A. § 2680(h) (emphasis added).

[27] *See also Liranzo v. United States*, 690 F.3d 78, 96 (2d Cir. 2012) (court's finding that there is a private analog to the government behavior at issue was further supported where the torts at issue were among those enumerated in 28 U.S.C.A. § 2680(h)); *Mayorov v. United States*, 84 F. Supp. 3d 678, 683 (N.D. Ill. 2015) (holding that the waiver of sovereign immunity for specific torts in §2680(h) supports the notion that a private analog exists for those torts).

**VII.**      **Plaintiffs Adequately Allege Their Assault and Battery Claims**

The United States in its Motion recites the elements of assault and battery under California law and does not contest that Plaintiffs failed to plead those elements. (*See* Motion at 35-38.) Because the Defendant does not contend that the Complaint fails to allege the elements of these causes of action, its reliance on *Peay* v. *Mortg. Elec.*, 514 F. App'x 896, 897–98 (11th Cir. 2013) is unavailing. *Peay* was a wrongful mortgage foreclosure case in Georgia where the Plaintiff failed to allege an element of her claim, the causal connection between the breach of that duty and the injury [she] sustained and damages, which is clearly inapposite to the sufficiency pleading the elements of an assault and battery claim under California law.[28]

The Motion to Dismiss raises possible defenses to assault and battery, including the reasonableness of the officers' actions and federal statutes that may or may not limit their liability depending on the facts developed in this litigation.  (*See* Motion at 36.)   However, at the pleading stage, Supreme Court precedent requires that only the four corners of the Complaint be considered to determine whether Plaintiffs' assault and battery claims are plausibly pleaded. *See, e.g., Twombly*, 550 U.S. at 570 (motion to dismiss should be denied where complaint leads "enough facts to state a claim to relief that is plausible on its face").

In its final contention, Defendant argues that Plaintiffs failed to allege the nature and severity of their injuries.  (*See* Motion at 37.)  This is nonsense.   Plaintiffs have alleged severe and ongoing trauma incurred as a result of the Defendant's tortious conduct (Compl. at ¶ 6) as well as physical pain and suffering, mental and emotional pain and anguish (*id.* at ¶ 80).  These allegations, along with Plaintiffs' other damage allegations and prayer for relief, satisfy the rules

---

[28] In assessing the United States' liability under the FTCA, courts are required to apply the law of the state in which the alleged tort occurred." *Tekle* v. *United States*, 511 F.3d 839, 853 (9th Cir. 2007) citing *Conrad* v. *United States*, 447 F.3d 760, 767 (9th Cir. 2006).

of pleading general damages under California law.  Indeed, California courts find that general damages refer to damages for harm or loss such as pain, suffering, emotional distress, and other forms of detriment that are sometimes characterized as "subjective" or not directly "quantifiable." *Beeman* v. *Burling*, 216 Cal. App. 3d 1586, 1599 (Ct. App. 1990).  "General damages are 'those which necessarily result from the act complained of,' and are implied by law to have thereby accrued to plaintiff."  *Id*. (citing *Myers* v. *Stephens*  233 Cal. App .2d 104, 120-121 (Ct. App. 1965)).  A plaintiff is not required to plead general damages with particularity. *Beeman* at 1600; *see also Waypoint Biomedical, Inc.* v. *Convenience Store Brokers, Inc.,* Case No. 07-8163, 2008 WL 4500554, at *3 (C.D. Cal. Oct. 6, 2008) ("Moreover, plaintiff is not required to plead damages with particularity because they are not seeking 'special damages.'") (citation omitted); *Myers* v. *Stephens* at 120 (general damages need not be specially pleaded).  During the course of this litigation, evidence of the extent of the Plaintiffs' injuries will be presented. However, at the pleading stage, Plaintiffs have sufficiently stated their claims.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss, and grant such other relief as may be deemed just and proper.

Respectfully submitted:  December 2, 2020

/s/ Jennifer Coberly
Jennifer Coberly, Fla. Bar No. 930466
Lisa Lehner, Fla. Bar 382191
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 2201
Miami, FL 33166
Phone: (305) 573-1106 Ext. 1995
Fax: (305) 576-6273
jcoberly@aijustice.org
llehner@aijustice.org

/s/ Ian Ross
Ian M. Ross, Fla. Bar No. 091214
Michael Nadler, Fla. Bar No. 051264
Erica L. Perdomo, Fla. Bar No. 105466
STUMPHAUZER FOSLID SLOMAN ROSS
   & KOLAYA, PLLC
Two South Biscayne Blvd., Suite 1600
Miami, FL 33131
(305) 614-1400
iross@sfslaw.com
mnadler@sfslaw.com
eperdomo@sfslaw.com

/s/ Robert Parks
Robert Parks, Fla. Bar No. 61436
799 Brickell Plaza, Suite 900
Miami, Florida 33131
Tel: (305) 445-4430
Fax: (305) 445-4431
BParks@rlplegal.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 2nd day of December, 2020, I electronically filed the foregoing

document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document

is being served on Plaintiff's counsel via transmission of Notices of Electronic Filing generated by

CM/ECF.

/s/ Ian M. Ross
IAN M. ROSS

### <u>SERVICE LIST</u>
*R.Y.M.R. and Eric Matute Castro v. United States*
**Case No. 1:20-CV-23598-KMW**
**United States District Court, Southern District of Florida**

Phil MacWilliams
United States Department of Justice
Civil Division, Torts Branch
Post Office Box 888
Washington, DC  20044
Tel:  202-614-4285
Fax: 202-616-5200
phil.macwilliams@usdoj.gov

*Attorney for United States of America*