# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

_____

R.Y.M.R. and Eric Matute Castro,        )
                                             )
                     Plaintiffs,     )
                                             )
                        v.         )   No. 1:20-CV-23598
                                           )
UNITED STATES OF AMERICA,        )
                                           )
                  Defendants    )
                                           )
_____  )

## REPLY IN SUPPORT OF MOTION TO DISMISS

Date: December 22, 2020

JEFFREY BOSSERT CLARK
Acting Assistant Attorney General

DOUGLAS G. SMITH
Deputy Assistant Attorney General, Civil Division

JAMES G. TOUHEY, JR.
Director, Torts Branch

PHILIP D. MACWILLIAMS
Trial Attorney
D.C. Bar No. 482883
THEODORE W. ATKINSON
Trial Attorney
D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

ARGUMENT IN REPLY ........................................................................................................... 1

   I.  R.Y.M.R. Failed To Exhaust Administrative Remedies And Does Not Have Capacity to

     Sue ...................................................................................................................................... 1

   II.  Plaintiffs' Claims For Negligence and IIED Are Barred By the Discretionary Function

     Exception ............................................................................................................................ 3

     A.  Allegations of Constitutional Violations Do Not Overcome the Discretionary Function
     Exception ........................................................................................................................ 3

     B.  The Separation At Issue Was A Policy-Based, Discretionary Decision .......................... 6

   III.  Plaintiffs' Claims For Negligence And IIED Are Barred By The Due Care Exception.... 11

   IV.  Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Recovery For

     Constitutional Torts .......................................................................................................... 15

   V.  Plaintiffs' Claims Are Barred Because There Is No Private Analogue ............................ 17

   VI.  Plaintiffs Failed To Plead Claims for Assault or Battery ................................................. 18

CONCLUSION......................................................................................................................... 19

CERTIFICATE OF SERVICE ................................................................................................. 20

i

## TABLE OF AUTHORITIES

Cases

*Andrade v. Miami Dade Cty.*,
   No. 09–23220, 2011 WL 4345665 (S.D. Fla. Sept. 16, 2011) ............................................... 19
*Arita v. United States*,
   470 F. Supp. 3d 663 (S.D. Tex. 2020) .............................................................................. 10, 16
*Baloco ex rel. Tapia v. Drummond Co.*,
   640 F.3d 1338 (11th Cir. 2011) .................................................................................................. 3
*Blanco Ayala v. United States*,
   No. 19-1862, 2020 WL 7050099 (4th Cir. Dec. 2, 2020)........................................................ 7
*Borquez v. United States*,
   773 F.2d 1050 (9th Cir. 1985) ................................................................................................ 12
*Bruesewitz v. Wyeth LLC*,
   562 U.S. 223 (2011)................................................................................................................ 14
*Bunikyte v. Chertoff*,
   No. 07-164, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) ................................................. 8, 9
*Cortez v. United States*,
   No. 10-CV-01473, 2012 WL 3861951 (S.D. Cal. Sept. 5, 2012).......................................... 19
*D.B. v. Cardall*,
   826 F.3d 721 (4th Cir. 2016) ................................................................................................. 13
*Daniels v. Williams*,
   474 U.S. 327 (1986).................................................................................................................. 3
*Denson v. United States*,
   574 F.3d 1318 (11th Cir. 2009) ............................................................................................... 4
*Denson v. United States*,
   No. 98-7256, 2005 WL 8160747 (S.D. Fla. Aug. 9, 2005) ................................................... 18
*Doe v. DiGenova*,
   779 F.2d 74 (D.C. Cir. 1985).................................................................................................. 12
*Dupree v. United States*,
   247 F.2d 819 (3d Cir. 1957)............................................................................................. 12, 13
*Edwards v. Johnson*,
   209 F.3d 772 (5th Cir. 2000) ................................................................................................... 6
*FDIC v. Meyer*,
   510 U.S. 471 (1994)........................................................................................................... 15, 17
*Flores v. Lynch*,
   828 F.3d 898 (9th Cir. 2016) ................................................................................................... 8
*Foster Logging, Inc. v. United States*,
   973 F.3d 1152 (11th Cir. 2020) ......................................................................................... 10, 11
*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982).................................................................................................................. 4
*Hatahley v. United States*,
   351 U.S. 173 (1956)................................................................................................................ 14
*Jacinto-Castanon v. ICE*,
   319 F. Supp. 3d 491 (D.D.C. 2018)......................................................................................... 5

*Jennings v. Rodriguez*,
   138 S. Ct. 830 (2018) ................................................................................................. 13
*Linder v. United States*,
   937 F.3d 1087 (7th Cir. 2019) .................................................................................. 15
*Liranzo v. United States*,
   690 F.3d 78 (2d Cir. 2012) ......................................................................................... 17
*Long v. Slaton*,
   508 F.3d 576 (11th Cir. 2007) .................................................................................. 19
*Marin-Garcia v. Holder*,
   647 F.3d 666 (7th Cir. 2011) ...................................................................................... 6
*Ms. L. v. ICE*,
   310 F. Supp. 3d 1133 (S.D. Cal. 2018) ...................................................................... 5
*Mullenix v. Luna*,
   136 S. Ct. 305 (2015) ................................................................................................... 5
*Nettles v. New Horizons of the Treasure Coast, Inc.*,
   559 F. App'x 946 (11th Cir. 2014) ........................................................................... 19
*Nurse v. United States*,
   226 F.3d 996 (9th Cir. 2000) ....................................................................................... 6
*Olim v. Wakinekona*,
   461 U.S. 238 (1983) ...................................................................................................... 6
Payne-Barahona v. Gonzales,
   474 F.3d 1 (1st Cir. 2007) ............................................................................................ 6
*Powell v. United States*,
   233 F.2d 851 (10th Cir. 1956) ................................................................................... 12
*Ryan v. ICE*,
   974 F.3d 9 (1st Cir. 2020) .......................................................................................... 18
*Shansky v. United States*,
   164 F.3d 688 (1st Cir. 1999) ..................................................................................... 11
*Sickman v. United States*,
   184 F.2d 616 (7th Cir. 1950) ..................................................................................... 12
*Southerland v. Thigpen*,
   784 F.2d 713 (5th Cir. 1986) ....................................................................................... 6
*United States v. Dominguez-Portillo*,
   No. 17-MJ-4409, 2018 WL 315759 (W.D. Tex. Jan. 5, 2018) .................................. 8
*Villafranca v. United States*,
   587 F.3d 257 (5th Cir. 2009) ..................................................................................... 18
*Welch v. United States*,
   409 F.3d 646 (4th Cir. 2005) ..................................................................................... 12
*White v. Pazin*,
   No. 112-CV-00917, 2016 WL 6124234 (E.D. Cal. Oct. 19, 2016) ............................ 6
*Xue Lu v. Powell*,
   621 F.3d 944 (9th Cir. 2010) ..................................................................................... 17
*Youngstown Sheet & Tube Co. v. Sawyer*,
   103 F. Supp. 569 (D.D.C. 1952) ............................................................................... 14
*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1953) .................................................................................................... 14

iii

Statutes

6 U.S.C. § 279(g)(2) ............................................................................................. 13
8 U.S.C. § 1231(g)(1) ....................................................................................... 7, 15
8 U.S.C. § 1232(b)(3) ........................................................................................... 13
8 U.S.C. § 1232(c)(3)(A) ........................................................................................ 9
8 U.S.C. § 1225 ................................................................................................ 7, 15
28 U.S.C. § 1346(b)(1) ........................................................................................ 16
28 U.S.C. § 2680(a) ........................................................................................ 3, 12

**ARGUMENT IN REPLY**

The United States' motion to dismiss and memorandum in support ("MTD") set forth multiple legal grounds supporting dismissal of Plaintiffs' complaint.  In opposition ("Opp'n"), Plaintiffs repeatedly assert that government agents carried out their discretionary duties in an unconstitutional manner.  However, no such characterizations change the fundamental legal principles barring this action.  In short, the issue here is whether the Federal Tort Claims Act ("FTCA") waives the United States' sovereign immunity and authorizes claims for money damages of the sort Plaintiffs bring here.  It does not, as Congress did not contemplate any such action under the FTCA.  Moreover, R.Y.M.R. failed to properly exhaust administrative remedies before bringing this lawsuit and does not have capacity to sue.  This case should therefore be dismissed.

## I. R.Y.M.R. Failed To Exhaust Administrative Remedies And Does Not Have Capacity to Sue

R.Y.M.R. failed to exhaust administrative remedies before filing suit because an administrative claim was not properly presented on his behalf.  As established in the United States' motion, as a minor R.Y.M.R. lacked capacity to present an administrative claim on his own behalf, which is precisely what occurred here.  Although Matute presented an administrative claim *on his own behalf*, he did not also present a claim that was clearly brought *on R.Y.M.R.'s behalf*.  Rather, a separate, stand-alone claim was submitted by *R.Y.M.R. individually*.  That Matute authorized an attorney to submit R.Y.M.R.'s claim to a federal agency is immaterial.  *See* Opp'n 7-9.  To satisfy the FTCA's jurisdictional administrative claim requirement, R.Y.M.R.'s claim must have been presented by *Matute, or a duly appointed guardian, on behalf of R.Y.M.R.*  Neither of which occurred here.

This administrative claim defect is no mere technicality, as Plaintiffs claim.  Rather, by proceeding as they did, Plaintiffs created precisely the type of situation warned against in *Mader*: where it is not clear to the federal agency with whom it can or should negotiate the claim.  *See* MTD at 10.  In particular, because the claim was not presented by Matute on R.Y.M.R.'s behalf, it would not be clear to the agency whether Matute could negotiate the claim.  Because the claim for R.Y.M.R., a minor, was improperly submitted in his individual capacity, the very purpose of the FTCA's administrative claims process was frustrated.  Therefore, R.Y.M.R. failed to properly exhaust his administrative remedies before filing suit, and this court lacks jurisdiction over his claims.

Plaintiffs argue that R.Y.M.R. should be excused from the FTCA's jurisdictional administrative claim requirements because he is a minor.  *See* Opp'n at 10-11.  Such contention, however, finds no support in the law.  Plaintiffs rely on inapposite cases involving whether there was sufficient *evidence* of authority provided to a federal agency to have properly presented a claim.  But none of the cases upon which Plaintiffs rely involve presentment of a claim by a minor *in his own capacity*.  *See* Opp'n at 10-11.  Plaintiffs' arguments conflate the necessity to demonstrate to the federal agency that a purported representative has authority to present an otherwise valid administrative claim and whether, as here, the administrative claim itself is invalid because it was brought by a minor in his individual capacity rather than by a parent or duly appointed guardian on the minor's behalf.

Likewise, R.Y.M.R. cannot bring an action in this Court in his own capacity.  This action was not brought on R.Y.M.R.'s behalf by a guardian or next friend, as demonstrated by both the caption and content of the complaint.  MTD at 10.  Plaintiffs suggest that this Court can simply presume that Matute represents the child's interest.  *See* Opp'n at 12.  However, the Eleventh

2

Circuit has instructed courts not to make such a presumption. *Baloco ex rel. Tapia v. Drummond Co.*, 640 F.3d 1338, 1350 (11th Cir. 2011) (courts not to "presume that [the parent] intended to represent their children's separate legal interests."). Moreover, while Matute alleges that he and R.Y.M.R. were "reunited in Miami on or about January 29, 2018,"(Compl. ¶ 77), it is notable that R.Y.M.R. was released to the custody of his mother – not to Matute. *See* MTD at 7 (citing Exhibit 2).

## II.     Plaintiffs' Claims For Negligence and IIED Are Barred By the Discretionary Function Exception

Plaintiffs do not dispute the FTCA's plain language that the discretionary function exception bars any claim "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Instead, Plaintiffs misstate the exception's test and argue, contrary to well-settled law, that the government actions at issue were not discretionary or susceptible to policy considerations.

### A. Allegations of Constitutional Violations Do Not Overcome the Discretionary Function Exception

Plaintiffs attempt to circumvent the discretionary function exception by arguing that their separation violated their constitutional rights. *See* Opp'n at 13-15.[1] As a threshold matter, negligence cannot violate the Constitution. *See Daniels v. Williams*, 474 U.S. 327, 331-32

---

[1] Plaintiffs state, wrongly, that "the United States concedes, as it must, that the discretionary function exception to the FTCA does not shield the United State from liability for unconstitutional acts." *See* Opp'n at 13. The United States' arguments clearly are to the contrary. *See* MTD at 19. Moreover, as discussed *infra*, Plaintiffs' focus on the alleged constitutional violations only confirms that their claims in this lawsuit are constitutional claims brought under the guise of tort claims.

(1986).  Thus, allegations of constitutional violations cannot defeat the application of the discretionary function exception to Plaintiffs' negligence claims.

Moreover, Plaintiffs misconstrue the relationship between the FTCA's discretionary function exception and the Constitution.  In particular, Plaintiffs try to avoid Eleventh Circuit precedent altogether, citing *Denson v. United States*, 574 F.3d 1318 (11th Cir. 2009) solely in a footnote.  *See* Opp'n at 15 n.20.  Although the Eleventh Circuit in *Denson* ultimately did not decide whether the discretionary function exception would bar the plaintiffs' claims, it nevertheless clearly articulated the test for application of the discretionary function exception and the relationship between the exception and the Constitution.  As stated in the United States' motion, the Eleventh Circuit made clear that violations of the Constitution cannot defeat the discretionary function exception if the rights at issue were not clearly established in that particular context at the time of the challenged government conduct.  *See* MTD at 19 (citing *Denson*, 574 F.3d at 1137-38).

Indeed, the Supreme Court has long recognized that conduct may be discretionary even if it is later determined to have violated the Constitution.  The common law doctrine of official immunity thus applies to the exercise of "discretionary functions" even when conduct violates the Constitution, as long as the constitutional right was not defined sufficiently so that the official should have known the act was prohibited.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

The United States demonstrated in its motion that the putative right to family integrity in the context of immigration detention was not clearly established at the time of Plaintiffs'

4

separation.  *See* MTD at 19 & n.15.  Plaintiffs fail to respond with an argument to the contrary, merely citing to *Ms. L. v. ICE*, 310 F. Supp. 3d 1133 (S.D. Cal. 2018).  *See* Opp'n, at 13-14.  *Ms. L.*, however, was decided many months *after* the separations at issue here.  And, far from clearly establishing the right to family integrity in the context of immigration detention, the court in *Ms. L.* merely addressed the likelihood of a constitutional violation when applying the test for a preliminary injunction.[2]

While Plaintiffs argue that a general right to family integrity has long been recognized, the issue here is whether and to what extent the right to family integrity was *clearly established in the specific context of immigration detention* at the time of the challenged separations.  *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality . . . . This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.") (citations and quotation marks omitted).  For the reasons stated herein and in the United States' motion to dismiss, such a right in the specific context of immigration detention was not clearly established at the time of Plaintiffs' separation.  Indeed, courts (including the Fourth Circuit) have rejected the notion that separating children from parents who were in detention facilities violated any right to family integrity, just as numerous courts have more generally held that separating children from parents as a result of deportation or who were detained before trial for criminal violations does not

---

[2] Plaintiffs also cite to *Jacinto-Castanon v. ICE*, 319 F. Supp. 3d 491 (D.D.C. 2018), *see* Opp'n at 15 n.20, which likewise was decided several months *after* the separation at issue here and applied the preliminary injunction standard.

violate the Constitution.  *See* MTD at 19 & n.15.[3]  Thus, Plaintiffs' allegations of constitutional

violations cannot overcome the discretionary function exception.[4]

### B.  The Separation At Issue Was A Policy-Based, Discretionary Decision

In addressing the two-prong test for application of the discretionary function exception,

Plaintiffs argue that the first prong of the test is not met because the conduct at issue was not a

product of judgment or choice.  *See* Opp'n at 16-18.  Plaintiffs claim that the relevant conduct

for purposes of the discretionary function exception analysis is the "tortious conduct and

constitutional violations involved in the forcible separation of R.Y.M.R. from his father[.]"

---

[3] *See also Marin-Garcia v. Holder*, 647 F.3d 666, 674 (7th Cir. 2011) ("nothing in the [C]onstitution prohibits" separation of citizen children from parents when parents deported); *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 & n.1 (1st Cir. 2007) ("The circuits that have addressed the constitutional issue (under varying incarnations of the immigration laws and in varying procedural postures) have uniformly held that a parent's otherwise valid deportation does not violate a child's constitutional right."); *Olim v. Wakinekona*, 461 U.S. 238, 247- 48 n.8 (1983) (interstate transfer of criminal detainee does not violate any due process right, even if transfer leaves detainee separated hundreds of miles from family); *Southerland v. Thigpen*, 784 F.2d 713, 716 (5th Cir. 1986) ("The considerations that underlie our penal system justify the separation of prisoners from their spouses and children and necessitate the curtailment of many parental rights that otherwise would be protected."); *White v. Pazin*, No. 112CV00917, 2016 WL 6124234, at *6 (E.D. Cal. Oct. 19, 2016) (there is not "any clearly established right protecting an inmate from policies banning visitations with his minor children"); *Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000) ("We consider a person detained for deportation to be the equivalent of a pretrial detainee.").

[4] Instead of addressing Eleventh Circuit precedent, Plaintiffs rely on unpublished district court cases from within the Ninth Circuit to argue that that a constitutional violation need only be "plausibly alleged." *See* Opp'n at 14-15.  Of course, such cases are not binding on this Court. Further, they employ a test not articulated or adopted by the Ninth Circuit.  To the contrary, the Ninth Circuit has simply observed that "the Constitution *can* limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply[,]" *Nurse v. United States*, 226 F.3d 996, 1002 n.2 (9th Cir. 2000) (emphasis added), but did not address the precise circumstances where a constitutional violation would overcome the discretionary function exception.  Rather, the court expressly deferred the decision as to "the level of specificity with which a constitutional proscription must be articulated in order to remove the discretion of a federal actor."  *Id.*  Nonetheless, here Plaintiffs have not alleged any plausible constitutional violation.

*See* Opp'n at 16.  Insofar as Plaintiffs now are focused on the physical act of separating Matute and R.Y.M.R., Plaintiffs have considerably narrowed the conduct at issue in this lawsuit.

To the extent that Plaintiffs continue to challenge the government's decision-making that resulted in the separation, however, Plaintiffs' argument that such decision-making does not involve discretion is without merit.  Plaintiffs do not – and cannot – refute that the federal government possesses the express statutory authority to detain aliens after they enter the country illegally, *see* 8 U.S.C. §§ 1225, 1226(a), and to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."  *See* 8 U.S.C. § 1231(g)(1).  These decisions indisputably involve discretion.  *See* MTD at 16-17.  Indeed, courts have recognized that "[d]iscretion lies at the heart of the DHS law enforcement function."  *Blanco Ayala v. United States*, No. 19-1862, 2020 WL 7050099, at *3 (4th Cir. Dec. 2, 2020).

In exercising this function, DHS agents must "make all the kinds of classic judgment calls the discretionary function exception was meant to exempt from tort liability."  *Id.*  Moreover, because (among other things) immigration policy involves "vital national interests in law enforcement at the borders," "DHS officers' decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations."  *Id.* at *5.

Plaintiffs do not cite any statute, regulation, or agency policy that cabins this broad grant of discretionary authority.  Rather, Plaintiffs contend that family unity is required by the *Flores* consent decree.  *See* Opp'n at 18.[5]  Yet as the United States demonstrated in its motion, the

---

[5] While the federal government has clear statutory authority to exercise discretion as to whether and where aliens are detained, a showing of such authority is not necessary to establish that the discretionary function exception applies.  Rather, the exception applies if there is no statute, regulation, or established agency policy that deprives the government of discretion by setting forth a specific and mandatory course of action to follow.  *See* MTD at 13-14.  However, because such clear, express statutory authority exists here, any argument that the government did not have discretion is unpersuasive.

courts responsible for enforcing the *Flores* consent decree have made clear that it does not.  *See* MTD at 5-6, 17-18, & n.13-14.  According to the Ninth Circuit, the *Flores* consent decree "does not address . . . the housing of family units and the scope of parental rights for adults apprehended with their children[,]" and it "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'"  *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016); *see also United States v. Dominguez-Portillo*, No. 17-MJ-4409, 2018 WL 315759, at *9 (W.D. Tex. Jan. 5, 2018) ("[*Flores*] does not provide that parents are entitled to care for their children if they were simultaneously arrested by immigration authorities[.]").

Nor does the *Flores* consent decree provide any rights to adult detainees, including any rights of release.  *Flores*, 828 F.3d at 908; *see also Dominguez-Portillo*, 2018 WL 315759, at *14-15; *Bunikyte v. Chertoff*, No. 07-164, 2007 WL 1074070, at *16 (W.D. Tex. Apr. 9, 2007).  While the *Flores* consent decree gives preference for release of minors to a parent, this preference "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice."  *Flores*, 828 F.3d at 908.  Accordingly, *Flores* does nothing to change the statutes and regulations requiring minors to be transferred to ORR custody and placed in the "least restrictive" facility when their parents are detained by immigration authorities.  *Id.* at 904.  Under federal law and the *Flores* consent decree, such children cannot be detained in adult detention facilities.  Thus, far from prohibiting separation, once an adult is securely detained the law essentially requires it.  As one court explained:

> Though family unification is a stated goal of both the *Flores* Settlement and U.S. immigration policy generally, nothing in the settlement agreement expresses a preference for releasing parents who have violated immigration laws.  In fact, the context of the *Flores* Settlement argues against this result: the Settlement was the product of litigation in which unaccompanied minors argued that release to adults other than their parents was preferable to remaining in custody until their parents could come get them.

8

*Bunikyte*, 2007 WL 1074070, at *16.

Likewise, nothing in *Flores* would authorize the government to circumvent the statutory procedures governing release of children from ORR custody.  The statutory framework prescribes a process that the agency must follow to ensure, based on its own inquiry, that the individuals who will receive custody of the children are who they say they are and that the health and safety of the children will be ensured before they are released from ORR custody.  Thus, the TVPRA states that a child may be placed with a proposed custodian only after ORR "makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being."  8 U.S.C. § 1232(c)(3)(A).  Among other things, ORR must "verify" the information and make its own "independent finding" after investigating the custodian's past activities: "Such determination shall, at a minimum, include verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child."  *Id.*  Thus, decisions regarding where to place children whose parents are in detention, and when and to whom to release them, are imbued with discretion.

As to the second prong of the test, decisions regarding whether and where to detain aliens, including members of the family units, are quintessentially the kind of policy-based decisions the discretionary function exception was intended to protect.  *See* MTD at 16-18.  This is especially true here when the decision implicates not only law enforcement and national security considerations, but considerations of child safety and welfare.

Because Plaintiffs cannot plausibly contend otherwise, they attempt to characterize the inquiry as one that cannot be resolved without discovery and an evidentiary hearing.  *See* Opp'n at 19-20.  This is untrue.  Determining whether conduct is susceptible to policy analysis is an

objective inquiry, which looks only to the nature of the conduct at issue and does not involve inquiring into what, if any, actual policy considerations were taken into account or the subjective intent of those whose conduct or decision is at issue.  *See* MTD at 15 & n.9.  As the Eleventh Circuit recently re-iterated:

> The inquiry here is not fact-based[.]   Rather, *Gaubert* . . . cautions against conducting a fact-based inquiry into the circumstances surrounding the government actor's exercise of a particular discretionary function, urging courts instead to look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one we would expect inherently to be grounded in considerations of policy.

*Foster Logging, Inc. v. United States*, 973 F.3d 1152, 1159 (11th Cir. 2020) (citations and internal quotation marks omitted).  Accordingly, similar family separation claims have been dismissed without discovery.  *See Peña Arita v. United States*, 470 F. Supp. 3d 663 (S.D. Tex. 2020).

Further, this inquiry is "not concerned with the subjective intent of the government employee[,]" *Foster Logging*, 973 F.3d at 1158 (citation and quotation marks omitted), and all that needs to be noted are "policy implications the  . . . employees might reasonably need to consider[.]"  *Id.*

That the United States included an exhibit that provided additional information beyond what Plaintiffs alleged in the Complaint does not change the analysis.  In support of its motion to dismiss, the United States attached an exhibit demonstrating that, among various other policy-based considerations, issues of parentage were present with respect to Plaintiffs.  *See* MTD at 6, 17-18 (citing Exhibit 1).  Attachment of such an exhibit neither implicates the merits of Plaintiffs' underlying claims, nor necessitates the need for discovery or a hearing.  This is

especially so here where, for purposes of the motion to dismiss, the United States did not

contradict any factual allegations in the Complaint, but rather accepted them as true.[6]

Indeed, in *Foster Logging*, the Eleventh Circuit expressly rejected the very argument

made here by Plaintiffs that policy considerations should be limited to the allegations on the face

of the complaint.  *Foster Logging*, 973 F.3d at 1159 (such an argument "misunderstand[s] the

pleading requirements and the relevant inquiry underlying the discretionary-function

exception").  Notably, the district court considered evidence outside the pleadings of "certain

policy considerations [which] actually were at play" but did not err in doing so in "its facial

analysis of Plaintiffs' complaint."  *Id.* at 1159-60.  In any event, the exhibit attached to the

United States' motion simply evinces one of several policy considerations at play that suffice to

establish the second prong of the discretionary function test.[7]

### III.    Plaintiffs' Claims For Negligence And IIED Are Barred By The Due Care Exception

Plaintiffs' claims also are barred by the FTCA's "due care exception," which prohibits

"[a]ny claim based upon an act or omission of an employee of the Government, exercising due

---

[6] Plaintiffs do not challenge the authenticity of Exhibit 1.  Rather, Plaintiffs merely assert that the exhibit differs from a version of the document that "[did] not include any reference to the family unit being separated due to child safety concerns."  *See* Opp'n at 5 n.9.  However, the relevant language in Exhibit 1 was clearly part of an addendum to the document, and an addendum by its very nature and purpose adds to an existing document.

[7] Plaintiffs also seek to undermine the existence here of child welfare and safety concerns by arguing that the government ultimately must have "set aside its feigned concern over 'safety concerns' given that Matute and R.Y.M.R. were "reunited."  *See* Opp'n at 19 n.23.  Even if this were the case, it would be immaterial because a subsequent determination does not mean an initial decision was not susceptible to policy considerations.  *See Shansky v. United States*, 164 F.3d 688, 695 (1st Cir. 1999) ("An agency that has discretion to make policy choices can change its view as to the proper balance of relevant concerns as time passes and experience accrues.").  Moreover, any implication by Plaintiffs that R.Y.M.R. was released to the custody of Matute is misleading.  As Exhibit 2 to the United States' motion demonstrates, R.Y.M.R. was released from ORR custody to the custody of his mother, not Matute.  *See* MTD at 7 (citing Exhibit 2).

care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Plaintiffs argue that under the Fourth Circuit's decision in *Welch v. United States*, 409 F.3d 646 (4th Cir. 2005), the exception only applies where a statute or law *requires* certain conduct. Yet, as Plaintiffs implicitly acknowledge, the Eleventh Circuit has never adopted this standard, which is inconsistent with the plain language of section 2680(a). *See* Opp'n at 21 n.24. Indeed, section 2680 refers to the "execution" of a statute or regulation – such language encompasses statutes and regulations that "require" certain actions as well as statutes and regulation which simply "authorize" certain conduct. *See* MTD at 21-22 & n.16. Many courts have held that claims were barred by the due care exception because the government's actions were "authorized" by law. *Sickman v. United States*, 184 F.2d 616, 619 (7th Cir. 1950) (landowners' claims barred because government actions authorized by Migratory Bird Treaty Act);[8] *Borquez v. United States*, 773 F.2d 1050, 1053 (9th Cir. 1985) (due care exception barred claim where Secretary of the Interior was "authorized, *in his discretion*, to transfer . . . the care, operation, and maintenance of all or any part of the project works, subject to such rules and regulations as he may prescribe") (emphasis added); *Doe v. DiGenova*, 779 F.2d 74, 88 n.26 (D.C. Cir. 1985) (actions authorized by regulations protected by due care exception); *Dupree v. United States*, 247 F.2d 819, 824 (3d Cir. 1957) (exception applies "[w]here government employees act pursuant to and in furtherance of regulations"); *Powell v. United States*, 233 F.2d 851, 855 (10th Cir. 1956) (due care exception barred claims based on employees' acts "performed under and in furtherance of the regulation . . . . even though the regulation may be irregular or ineffective").

---

[8] The court of appeals also decided that the government actions were "discretionary" and thus the discretionary function exception barred the landowner's claims.

12

As these courts recognize, the due care exception inquiry turns on whether government employees acted pursuant to or in furtherance of the authority afforded by statute or regulation, not whether a statute or regulation mandated the specific alleged harm.  *Dupree*, 247 F.2d at 824 ("Where government employees act pursuant to and in furtherance of regulations, *resulting harm* is not compensable under the act[.]") (emphasis added; citations omitted).

Nonetheless, even under the standard Plaintiffs advocate, the due care exception still bars their claims because the applicable statutory and regulatory framework requires separation when a parent is securely detained.  As the United States' established in its motion, the INA "mandate[s] detention of applicants for admission until certain [removal] proceedings have concluded."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 842 (2018).  Once Matute was detained, R.Y.M.R. was rendered an unaccompanied alien child, 6 U.S.C. § 279(g)(2), and the TVPRA mandated that DHS "*shall transfer the custody of such child* to [ORR] not later than 72 hours after determining that such child is an unaccompanied alien child," 8 U.S.C. § 1232(b)(3) (emphasis added).  As established in the United States' motion, *see* MTD at 5-6, 17-18, R.Y.M.R. could not be held in a secure detention facility with Matute.  Thus, federal law not only authorized, but mandated the separation.

Plaintiffs next claim that R.Y.M.R. was improperly classified as "unaccompanied" because he and Matute entered the United States together.  *See* Opp'n at 22-23.  However, the statutory definition of "unaccompanied alien child" expressly encompasses the circumstances when parents are physically present in the United States but not "available to provide care and physical custody" of their children.  6 U.S.C. § 279(g)(2); *D.B. v. Cardall*, 826 F.3d 721, 734 (4th Cir. 2016).  Such a situation arises when a parent is held in secure immigration detention pending removal – pursuant to the government's express statutory authority – and thus is not

13

available to provide care and physical custody of his or her child.  Indeed, Plaintiffs cite no

federal statute, regulation, or controlling precedent precluding such a classification when adult

aliens arriving with minors are securely detained.[9]

Plaintiffs also try to circumvent the due care exception by arguing that it applies only to

the execution of federal statutes or regulations, not to the execution of a policy.  *See* Opp'n at 22.

However, the United States did not argue that the due care exception applies to a policy, but

rather the execution of federal statutes.  *See* MTD at 21-22.  In any event, at the time of

Plaintiffs' separation, DHS was operating under an Executive Order and other executive branch

directives for federal agencies to strictly enforce federal immigration statutes, including the

detention of adult aliens pending removal proceedings, the result of which is the separation of

such adults from children.  *See* MTD at 3-4, 21.  Courts have recognized that actions taken

pursuant to the dictates of an Executive Order are shielded by the due care exception.  *See, e.g.*,

*Youngstown Sheet & Tube Co. v. Sawyer*, 103 F. Supp. 569, 577 (D.D.C.), *aff'd*, 343 U.S. 579

(1953).

Finally, Plaintiffs' assertion that government employees failed to act with "due care"

because they allegedly cursed at them and threatened violence misconstrues the due care

exception.  *See* Opp'n at 24.  The "due care" inquiry asks only whether a government employee

acted pursuant to statute or regulation.  *Hatahley v. United* States, 351 U.S. 173, 181 (1956)

(finding a lack of due care because the government did not follow the requirements of its own

---

[9] Plaintiffs rely on comments made in a House Appropriations Committee report, *see* Opp'n at 22 n.23 (citing H.R. No. 109-79, at 38 (2006)), which was related to an appropriations bill considered by Congress years *after* the passage of the HSA, the statute which defines the term UAC.  Such comments are afforded no weight when interpreting a statute.  *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) (no weight afforded to a later Congress' interpretation of statute).

regulations).  Plaintiffs do not allege that government employees deviated from the statutory

framework regarding immigration detention set forth at 8 U.S.C. § 1225 and 8 U.S.C. §

1231(g)(1), or the dictates of the TVPRA in transferring custody of R.Y.M.R. to ORR.  In fact,

the transfer was statutorily required.  The conduct upon which Plaintiffs' claims are based – the

separation of Matute and R.Y.M.R. – resulted from the government's enforcement of federal

immigration statutes.  Plaintiffs' interpretation would effectively remove the due care exception

from the FTCA wherever plaintiffs allege the government failed to act with "due care"— that is,

according to Plaintiffs, negligently or tortuously.  But every claim under the FTCA alleges

tortious or negligent conduct.  Thus, the due care exception would provide the United States no

immunity at all if it is inapplicable in cases where a plaintiff simply alleges that government

employees acted negligently or tortuously.

## IV.   Plaintiffs' Claims Are Barred Because the FTCA Does Not Authorize Recovery For Constitutional Torts

Plaintiffs do not dispute that the Supreme Court has held that plaintiffs bringing claims

under the FTCA may not recover for constitutional torts.  *See* MTD at 22-23 (citing *FDIC v.*

*Meyer*, 510 U.S. 471, 478 (1994)).  Nonetheless, Plaintiffs contend that the complaint does not

assert claims involving constitutional violations because they pleaded "common-law claims", not

"claims for explicit constitutional arguments."  *See* Opp'n at 24-25.  But this argument

improperly focuses on the labels that Plaintiffs' apply to their claims, rather than the substance of

such claims.  The law is clear that the particular label a plaintiff applies to a claim does not

deprive it of its constitutional nature, and indeed courts routinely hold that claims pleaded as so-

called "common-law torts" are in fact prohibited "constitutional torts" because they invoke

alleged constitutional violations.  *See* MTD at 23-24; *Linder v. United States*, 937 F.3d 1087,

1091 (7th Cir. 2019) (dismissing claims for malicious prosecution and IIED because claims

15

invoked constitutional theories); *Peña Arita v. United States*, -- F. Supp. 3d --, 2020 WL 3542256, at *8 (S.D. Tex. June 30, 2020) (dismissing IIED and negligence claims based on family separation because "constitutional tort claims are not actionable under the FTCA").

Far from refuting the constitutional nature of their claims, Plaintiffs' opposition only confirms it.  Plaintiffs maintain, for example, that: "the Complaint clearly alleges that [Defendant's] actions violated Plaintiffs' *constitutional rights*."  *See* Opp'n at 13 (emphasis added); "Plaintiffs allege that the United States' actions not only violated Plaintiff's *constitutional right* to family integrity . . ., a right recognized and affirmed by courts throughout the country, but also the *U.S. Constitution's* established due process rights governing immigration detainees and the right to family integrity[.]"  *See* Opp'n at 13 (emphasis added; citations and quotation marks omitted); "Plaintiffs have plausibly alleged that Defendant's separation of families and failure to track separated families and permit regular communications violated *federal* law and policy, including Plaintiffs' *constitutional rights*."  *See* Opp'n at 18 (emphasis added); "The Complaint alleges that the United States failed to follow its own directives and willfully violated Plaintiffs' *constitutional rights* to family integrity by forcibly separating Plaintiffs and acted toward them tortuously and negligently."  *See* Opp'n at 20 (emphasis added).

Plaintiffs frame the conduct at issue as constitutional violations to overcome the discretionary function exception, but then characterize that very same conduct as "common law" claims to avoid dismissal pursuant to 28 U.S.C. § 1346(b)(1).  In so doing, however, Plaintiffs fail to reconcile their attempt to overcome the discretionary function exception with allegations of constitutional violations and the Supreme Court's pronouncement that the United States

16

"simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Myer*, 510 U.S. at 478.

### V.    Plaintiffs' Claims Are Barred Because There Is No Private Analogue

Plaintiffs' claims further fail because the government actions Plaintiffs challenge have no private analogue.  The United States demonstrated in its motion that it has not waived its sovereign immunity for decisions to enforce federal immigration statutes because such decisions have no analogous private counterpart.  Only the federal government is in the position, and has the authority, to enforce the nation's immigration laws.  The separation of Matute and R.Y.M.R. resulted from the execution of those laws.

In a futile attempt to find a private analogue, Plaintiffs cite to several cases involving conduct of a wholly different nature than that challenged in this suit.  Plaintiffs' reliance on *Xue Lu v. Powell*, 621 F.3d 944 (9th Cir. 2010), for example, is unavailing.  *See* Opp'n at 26.  In *Lu*, two female asylum seekers brought claims under the FTCA based upon an asylum officer's solicitation of bribes and sexual favors in exchange for granting their asylum applications. Whether there was a private person analog to the government's enforcement of federal immigration law was not at issue in *Lu*.  Rather, *Lu* raised the issue of whether a federal immigration officer's criminal conduct was within the scope of his employment and whether the United States, as his employer, could be held liable for his actions.  *Id*. at 948.

Plaintiffs' reliance on *Liranzo v. United States*, 690 F.3d 78 (2d Cir. 2012) and other cases involving false arrest, false imprisonment, and the "unlawful taking" of a child is similarly misplaced.  *See* Opp'n at 26-27.  It is undisputed that Plaintiffs were lawfully apprehended following their illegal entry into the United States, and Matute was lawfully held in secure immigration detention pending removal proceedings.  Plaintiffs do not – and cannot – challenge

these governmental decisions.  Thus, Plaintiffs' claims are essentially a challenge to *where* and with *whom* aliens are detained.  Such discretionary decisions are made pursuant to federal statutory authority and are in the sole province of the federal government.  *See* MTD at 25-26; *accord Ryan v. ICE*, 974 F.3d 9, 26 (1st Cir. 2020) ("Controlling immigration and the presence of noncitizens within the country are duties and powers vested exclusively in the sovereign. . . . [A] private party cannot initiate proceedings to remove a noncitizen from the country.") (citations omitted).  Accordingly, there is no private person analogue for claims arising out of the lawful detention of an alien pending removal proceedings.

## VI.    Plaintiffs Failed To Plead Claims for Assault or Battery

As established in the United States' motion, Plaintiffs' claims for assault and battery also should be dismissed because the allegations do not sufficiently state a claim.  In their opposition, Plaintiffs argue that only the four corners of the complaint may be considered when determining whether an assault and battery claim has been plausibly pleaded.  *See* Opp'n at 29.  However, that is precisely what is done in the United States' motion.  Whether Plaintiffs have stated a plausible claim for assault and battery requires a determination of whether the challenged conduct is privileged.  *See, e.g.*, *Villafranca v. United States*, 587 F.3d 257, 262–64 (5th Cir. 2009) (holding that officers were privileged to use reasonable force); *Denson v. United States*, No. 98-7256, 2005 WL 8160747, * 7 (S.D. Fla. Aug. 9, 2005) ("law enforcement officers acting within the scope of their employment are privileged to use reasonable force to arrest or apprehend criminal suspects.").  If the conduct is privileged, a claim for assault and battery cannot survive.

According to Plaintiffs' own allegations, Matute resisted a lawful order by federal agents, resulting in the use of force.  (Compl. ¶ 69).  Force used under such alleged circumstances has

been recognized to be reasonable and thus privileged.  *See* MTD at 28 (citing *Cortez v. United States*, No. 10-CV-01473, 2012 WL 3861951, \*6 (S.D. Cal. Sept. 5, 2012).  Plaintiffs offer no substantive response to the United States' argument.  Instead, Plaintiffs object to the court's consideration of privilege at this stage.  However, a court clearly can (and should) determine whether an alleged use of force was privileged when raised in a motion to dismiss, especially when Plaintiffs allege in the Complaint that there was a refusal to comply with a lawful order.  *See Nettles v. New Horizons of the Treasure Coast, Inc.*, 559 F. App'x 946, 948 (11th Cir. 2014) (affirming dismissal of excessive use of force claim on motion to dismiss); *Long v. Slaton*, 508 F.3d 576, 585-86 (11th Cir. 2007) (district court erred in denying motion to dismiss where allegations in the complaint demonstrated that use of force was reasonable); *Andrade v. Miami Dade Cty.*, No. 09–23220, 2011 WL 4345665, \*7 (S.D. Fla. Sept. 16, 2011) (granting motion to dismiss excessive force claims based on allegations in the complaint).

## CONCLUSION

For the foregoing reasons, this action should be dismissed.

Date: December 22, 2020                           Respectfully submitted,

                                                  JEFFREY BOSSERT CLARK
                                                  Acting Assistant Attorney General

                                                  DOUGLAS G. SMITH
                                                  Deputy Assistant Attorney General, Civil Division

                                                  JAMES G. TOUHEY, JR.
                                                  Director, Torts Branch

                                                  *s/Phil MacWilliams*
                                                  PHILIP D. MACWILLIAMS
                                                  Trial Attorney
                                                  D.C. Bar No. 482883
                                                  THEODORE W. ATKINSON
                                                  Trial Attorney

D.C. Bar No. 458963
E-mail: phil.macwilliams@usdoj.gov
U.S. Department of Justice
Civil Division, Torts Branch
Benjamin Franklin Station, P.O. Box 888
Washington, DC 20044
Telephone: (202) 616-4285

Attorneys for United States of America


## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.


*s/Phil MacWilliams*
PHILIP D. MACWILLIAMS
Attorney for United States of America