Lee Gelernt*
Daniel Galindo*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., 18th Floor
New York, NY 10004
Tel.: (212) 549-2660
Fax: (212) 549-2654
*lgelernt@aclu.org*
*dgalindo@aclu.org*

*Attorneys for Plaintiffs*
(Additional counsel listed on signature page)
*Admitted Pro Hac Vice

Lisa Lehner (Fla. Bar 382191)
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 2201
Miami, FL 33166
Tel.: (305) 573-1106 Ext. 1995
Fax: (305) 576-6273
*llehner@aijustice.org*

Ian M. Ross (Fla. Bar No. 091214)
SIDLEY AUSTIN LLP
801 Brickell Avenue, Suite 800
Miami, FL 33131
Tel.: (305) 391-5218
Fax: (212) 839-5599
*iross@sidley.com*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

| | |
|---|---|
| ERIC MATUTE CASTRO, on his own behalf and as the representative of his minor son, R.Y.M.R., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 1:20-cv-23598-KMW-EGT <br><br> **NOTICE OF COMPLIANCE RE: MARCH 9, 2023 DISCOVERY HEARING** |

Plaintiffs Eric Matute Castro and his minor son, R.Y.M.R. ("Plaintiffs"), by and through undersigned counsel, hereby state that they have complied with the Court's procedures on discovery matters, including the Federal Rules of Civil Procedure, the Local Rules for the Southern District of Florida, and this Court's Standing Order Setting Discovery Procedures. Plaintiffs submit this Notice of Compliance in advance of the discovery hearing scheduled for **Thursday, March 9, 2023, at 11:30 am**, setting forth the substance of the discovery matters to be heard and the status of the parties' pre-filing efforts as to each issue. The source material relevant to these discovery disputes and a proposed order have been emailed to the Court.

1

## NATURE OF CASE AND PROCEDURAL POSTURE

This is a Federal Tort Claims Act case involving a father ("Eric Matute Castro") who was forcefully separated from his son ("R.Y.M.R.") by the U.S. Government.  Plaintiffs seek monetary compensation for Defendant's wrongful and lengthy separation of Plaintiffs beginning on November 16, 2017, when R.Y.M.R. was only three years old.  He was separated from his father for over two months, deprived of all contact with his father, and had only minimal contact, by phone, with his mother.  Judge Williams denied Defendant's motion to dismiss, and discovery is set to end on March 17, 2023, with trial scheduled for October 2023.[1]

This discovery dispute concerns six identified deficiencies in Defendant's document production, as principally revealed by recent deposition testimony from an ICE officer, which, among other things, directly contradicted critical interrogatory responses from Defendant.

## FACTUAL OVERVIEW: DEFENDANT'S *OWN* WITNESS TESTIFIED THAT CRITICAL DISCOVERY RESPONSES BY THE GOVERNMENT WERE UNTRUE

Plaintiffs have several theories of liability, but the present discovery dispute focuses on only one.  Specifically, Plaintiffs allege that Defendant's conduct was, at minimum, negligent and reckless because ICE officers wrongly separated Plaintiffs based on purported doubts about their parent-child relationship, even though the person who Defendant claims in an interrogatory response "investigated the relationship" between Mr. Matute Castro and his son testified that she did no such investigation.  *Compare* Exhibit D (Def.'s Resp. to Pls.' Interrog. No. 12), *with* Exhibit F (Chairez Dep. 114:22–117:20).  In fact, just two days after three-year-old R.Y.M.R. was sent alone to Texas, ███████████████████████████████████

---

[1] Plaintiffs have noticed depositions of additional witnesses prior to the discovery cut-off on March 17, but counsel for the government has proposed that certain of these depositions occur in April (including the deposition of Gladys Martinez, who has been ill or otherwise inaccessible for several months).  Plaintiffs are willing to take depositions in April, provided that the usual discovery rules govern these depositions.

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ That same day, the ICE San Diego Field Office suspended all family separations until further notice.  Exhibit G (Ortiz Dep. at 157:9–24).

Defendant claims that Plaintiffs were separated "due to the inability to authenticate the documents presented by Mr. Matute Castro and because R.Y.M.R. (age 3) was too young to question and provide statements" about whether Mr. Matute Castro was his father.  Exhibit C (Def.'s Resp. to Pls.' Interrog. No. 11).  Defendant now concedes Plaintiffs were in fact father and son.  Exhibit E (Def.'s Resp. to Pls.' RFA No. 2).

To contextualize this dispute, Plaintiffs set forth the two key interrogatory responses that Defendant's own witness has now directly contradicted in her deposition.  That deposition and the interrogatory responses—only one of which Defendant has chosen to correct—make clear that Defendant failed to produce numerous critical documents, despite repeated requests.

### The Interrogatory Responses

The deposition of ICE employee Maria Chairez revealed that Defendant's responses to two key interrogatories were incorrect.  Plaintiffs' **Interrogatory 4** asked which government officers were present during Plaintiffs' separation.  Defendant's initial response stated that four individuals, including Ms. Chairez, were present when Plaintiffs were separated.  Exhibit A (Def.'s Resp. to Pls.' Interrog. No. 4).  ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ After repeated prompting from Plaintiffs, Defendant—16 days after the deposition and over two years after its initial interrogatory response—amended its answer to Interrogatory 4 to state that Ms. Chairez was not in fact present, and that Defendant's "research indicates" only two ICE employees were present at the separation, not four.  Exhibit B (Def.'s Am. Resp. to Pls.' Interrog. No. 4).  Defendant has not yet produced any documents confirming that these two individuals (Mr. Vallejo and Ms. Carrizosa) were in fact present.

3

The second interrogatory at issue is Plaintiffs' **Interrogatory 12**, which goes to the heart of the case. Interrogatory 12 asked Defendant to identify all ICE employees "who were involved in or responsible for investigating, reviewing, or verifying" the relationship between Mr. Matute Castro and R.Y.M.R., and the action each took. Defendant responded that three individuals were involved in Plaintiffs' separation: Ms. Chairez (who Defendant claims "investigated the relationship"); Ms. Gladys Martinez (who Defendant claims "reviewed facts of the case and made the separation recommendation"); and Mr. Mario Ortiz (who Defendant claims "approved the separation of the Plaintiffs"). Exhibit D (Def.'s Resp. to Pls.' Interrog. No. 12). As discussed below, although Defendant's response stated that Ms. Chairez "investigated" the family relationship, ███████████████████████████████████████

Defendant has nonetheless declined to amend its response to Interrogatory 12.

### The Three Key ICE Officers Identified by Defendant

**Maria Chairez:** Ms. Chairez was a processing agent at the time of the separation. ██

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

4

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████ *see also* Pls.' Am. Compl. (stating that R.Y.M.R. was screaming "papi" when taken from his father). ███████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████ Defendant has not provided any directive, SOP or training manual stating that an original birth certificate is necessary for a family to avoid being separated (something that of course few asylum seekers are likely to possess when they flee their home country).

██████████████████████████████████████████████████████

████████████████████████████████████████ Yet despite repeated requests from Plaintiffs, Defendant has never produced evidence of such consultation, nor has it been willing to confirm that ICE failed to contact the consulate in this case. ████████████████████████

██████████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████

5



**Mario Ortiz:** At the time of Plaintiffs' separation, Mr. Ortiz was the AFOD in the family unit of the San Diego ICE Field Office. According to Defendant, the AFOD was responsible for making the final decision whether to separate families, and in that capacity, Mr. Ortiz made the final decision to separate Plaintiffs. Exhibit D (Def.'s Resp. to Pls.' Interrog. No. 12). But Mr. Ortiz testified that, while he was responsible for the final decision, he relied on the investigation and recommendation of others. In fact, he had only become the AFOD of the family unit the very week of Plaintiffs' separation and did not know the criteria for separating a family. *See* Exhibit G (Ortiz Dep. 123:15-19). Yet, as noted, Ms. Chairez denies ever

6

undertaking the investigation, and Defendant has failed to produce a memo from Ms. Martinez to Mr. Ortiz recommending separation.

**Gladys Martinez:** Ms. Martinez was a supervisor in the family unit. Because Ms. Martinez has been ill and otherwise unavailable for several months, Plaintiffs have not yet had an opportunity to depose her. However, according to Defendant, she was the supervisor who made the "recommendation" to AFOD Ortiz to separate Plaintiffs based on Ms. Chairez's "investigation." Exhibit D (Def.'s Resp. to Pls.' Interrog. No. 12). Yet, although Ms. Chairez testified that such a recommendation would be made in a "memo" containing a synopsis of the case, and despite Plaintiffs' repeated requests for that memo, Defendant has not produced a memo showing that Ms. Martinez recommended separating Plaintiffs, nor has it been willing to confirm that no such memo exists. ███████████████████████████████

███████████████████████████████████████████████████████████████

The specific discovery disputes outlined below relate to these inconsistencies and to Plaintiffs' continued efforts to determine exactly why a three-year-old child was separated from his father. And despite Defendant's refusal to provide relevant discovery to Plaintiffs, based on the discovery received to date, it appears increasingly likely that this family was separated without <u>any</u> U.S. government official actually investigating parentage. Indeed, discovery thus far has revealed that there were numerous <u>post</u>-separation meetings involving ICE officials, ██

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

7

**SPECIFIC DISPUTES**

The disputes before the Court involve specific document requests arising from a number of Plaintiffs' RFPs. Although Defendant has not produced several other categories of documents that fall under these requests, Plaintiffs are currently seeking only a limited set of documents that have become crucial in light of Ms. Chairez's testimony.[2]

**1. Supervisor Memo to AFOD for Plaintiffs' Separation**:  The Court should order Defendant either to produce the memo to AFOD Ortiz seeking authorization to separate Plaintiffs or to confirm that no such memo exists.

---

[2] *See, e.g.*, **RFP 27:** requests communications sent or received about a particular separation or separations in general from a discrete list of individuals who are highly relevant to this case (Ms. Chairez, Mario Ortiz, Ms. Martinez, Ms. Carrizosa, Mr. Vallejo, and Nathan MacCallum) and limited the request to a discrete time period (6 months before and 6 months after the separation).

**RFP 37:** requests all documents in effect from January 20, 2017 through January 20, 2021 at each CBP Sector along the Southwest Border, at each ICE Field Office in the states along the Southwest Border, and at HHS relating to the verification of parentage or legal guardianship, as well as all communications relating to such documents. At the parties' last discovery hearing, the Court ordered Defendant to produce documents regarding three ICE field offices.

**RFP 54:** requests communications sent from the ICE San Diego Field Office to the Honduran consulate for the discrete time period of November 13 to 25, 2017, including those related to Plaintiffs.

**2. Communications Between San Diego Field Office and the Honduran Consulate Related to Plaintiffs**: As noted, ███████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████ Plaintiffs have repeatedly requested communications between Defendant and the Honduran consulate before Plaintiffs' separation. Defendant has represented that it has conducted a "reasonable and diligent" search for consular communications relating to Plaintiffs and assert that they have no additional documents to produce, Exhibit O (Letter from J. Leinicke to J. Rubin (Feb. 28, 2023)), but Ms. Chairez testified that ███████████████████████████████████

█████████████████████████████████████████████ Accordingly, the Court should order Defendant to either produce any fax or phone logs showing communications with the Honduran consulate related to the Plaintiffs or confirm that no pre-separation communications by any means exists.

**3. Documents Concerning Three Other Separated Families Processed Together with Plaintiffs**: For these three other families, the Court should order Defendant to produce the supervisor memos to the AFOD and any correspondence with the consulate, or require Defendant to confirm the memo and consulate correspondence do not exist.

As noted, three other families were separated on the same day as Plaintiffs, and their cases were handled by Ms. Chairez, Ms. Martinez, and Mr. Ortiz in the same manner. ██

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████

Defendant's handling of these three other families bears directly on what procedures were or were not followed in Plaintiffs' case, given that ICE San Diego processed these four families at the same time and discussed all four families together in virtually every memo and correspondence, including the post-separation Archambeault memo.  *See* Fed. R. Civ. P. 26 advisory committee's note (2000 Amendment) ("other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard"); *cf. O'Bryan v. Joe Taylor Restoration, Inc.*, No. 20-CV-80993, 2021 WL 633948, at *2 (S.D. Fla. Feb. 18, 2021), *objections overruled*, No. 9:20-CV-80993-WPD, 2021 WL 2000368 (S.D. Fla. Apr. 19, 2021) ("While Defendants argue that the facts and circumstances of other employees' departures are irrelevant, the Court finds that this information bears directly on willfulness and damages.").[3]

The request here for documents about the three other families separated on the same day as Plaintiffs is extremely modest given that the ICE San Diego was separating numerous families during this period based on supposed doubts about parentage.  Defendant's records show that in November 2017 alone, in addition to R.Y.M.R., Defendant separated 11 other children from their parent(s) in San Diego because the parental "relationship is in question" and separated another

---

[3]   Nor are there privacy concerns with this request. Defendant has already provided the names of these three families in other unredacted documents.  In any event, if Defendant has an objection on privacy grounds, the Court can allow it to redact the names.

seven children from their "possible father[s]." MATUTE_GOV_021270.[4] And Defendant separated another 12 children giving similar explanations in San Diego the previous month. *Id*.

**4. All Versions of the Post-Separation Archambeault Memo**: The memo that Ms. Chairez sent to Gregory Archambeault, the Field Office Director, titled "Family Unit Separation" is highly relevant. ███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████

Defendant has produced multiple versions of the memorandum. Some versions of the memorandum lack dates, and none has the signatures of each individual through whom the memorandum was routed. ███████████████████████████████

███████████████████████████████ In response to Plaintiffs' request for the original memo, ███████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████████████

███████████████████████ The Court should compel Defendant to produce the memorandum including the signatures of all persons to whom it was routed, or confirm that no such document exists.

---

[4] Due to the size of this document and because it includes a large number of names of children separated from parents, Plaintiffs are not including it in the package of source materials to the Court. Plaintiffs are prepared to provide the spreadsheet under seal if the Court requests.

**5. Chairez's Requests for Guidance to Separate Families from January 2017 - December 2017**: ███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████ Plaintiffs request that the Court compel Defendant to produce Ms. Chairez's "guidance requests" for other cases. This will allow Plaintiffs to assess her testimony on the crucial point of whether or not she was following her "usual practice" of always seeking to obtain written confirmation of the decision by her supervisor and the AFOD to separate a family. To the extent that Defendant is concerned about these other families' privacy, it can simply redact their names.

**6. Hard Copies, Other Electronic Documents, and/or Their Metadata for Documents Responsive to Plaintiffs' RFPs Nos. 1, 2, 13, 14, 20, 22, 23, 27, 56**: Plaintiffs have requested that Defendant produce electronic and hard copy documents responsive to these Requests, and metadata for such electronic documents. Defendant has not made clear whether it has collected or produced non-email electronic documents, and it has not produced metadata information. Plaintiffs request that the Court compel Defendant to produce these documents and metadata. Obviously, any Word or other documents that reference Plaintiffs are relevant to this action. Furthermore, Plaintiffs are entitled to all versions of the Archambeault memo, and it is relevant who was drafting and editing the Archambeault memorandum, and when. Similarly, it is critical that Defendant search for and make available any versions of a supervisor's memorandum on the

Plaintiffs and the other three families separated on November 16, 2017, as well as the metadata. Moreover, any hard copy documents that reflect information about the Plaintiffs are relevant.[5]

## CONCLUSION

Plaintiffs respectfully request that the Court order Defendant to respond to the disputed RFPs, consistent with the Proposed Order submitted concurrently.

## CERTIFICATE OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

Dated: March 6, 2023

    /s/ Ian M. Ross
Ian M. Ross (Fla. Bar No. 091214)
SIDLEY AUSTIN LLP
801 Brickell Avenue, Suite 800
Miami, FL 33131
Tel.: (305) 391-5218
Fax: (212) 839-5599
*iross@sidley.com*

Lee Gelernt*
Daniel A. Galindo*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
125 Broad St., 18th Floor
New York, NY 10004
Tel.: (212) 549-2660
Fax: (212) 549-2654
*lgelernt@aclu.org*
*dgalindo@aclu.org*

---

[5] Additionally, Plaintiffs note that Defendant promised on May 3, 2021, that it would provide a list of the custodians from whom the United States collected and produced documents. *See* E-mail from J. Leinicke to I. Ross (May 3, 2021). Defendant has not yet produced this list and responded only that the custodians were "Persons / locations with relevant information relating to the separation and placement of Plaintiffs." Def.'s Resp. to Pls.' First RFP at 3. The parties continue to meet and confer on this topic, but Plaintiffs reserve the right to seek recourse.

Stephen B. Kang*
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
IMMIGRANTS' RIGHTS PROJECT
39 Drumm Street
San Francisco, CA 94111
Tel.: (415) 343-1198
Fax: (415) 395-0950
*skang@aclu.org*

Katherine Holloway Blankenship (Fla. Bar No. 1031234)
ACLU FOUNDATION OF FLORIDA
4343 West Flagler Street Suite 400
Coral Gables, Florida 33134
Tel.: (615) 796-9027
*kblankenship@aclufl.org*

Lisa Lehner (Fla. Bar 382191)
AMERICANS FOR IMMIGRANT JUSTICE
6355 NW 36 Street, Suite 2201
Miami, FL 33166
Tel.: (305) 573-1106 Ext. 1995
Fax: (305) 576-6273
*llehner@aijustice.org*

Robert Parks (Fla. Bar No. 61436)
300 Sevilla Avenue, Suite 206
Coral Gables, FL 33134
Tel: (305) 445-4430
Fax: (305) 445-4431
*bob@garaylawfirm.com*

Alexander A. Reinert*
55 Fifth Avenue, Room 1005
New York, NY 10003
Tel: (646) 592-6543
*areinert@yu.edu*

Geoffrey R. Chepiga*
Hallie S. Goldblatt*
Jacqueline P. Rubin*
Steven C. Herzog*
Jing Yan*
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 373-3000
*gchepiga@paulweiss.com*
*hgoldblatt@paulweiss.com*
*jrubin@paulweiss.com*
*sherzog@paulweiss.com*
*jyan@paulweiss.com*

Andrew J. Topal*
Paul, Weiss, Rifkind, Wharton & Garrison LLP
2001 K Street, NW
Washington, DC 20006-1047
Tel: (202) 223-7300
*Atopal@paulweiss.com*

\**Admitted Pro Hac Vice*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| ERIC MATUTE CASTRO, on his own behalf and as the representative of his minor son, R.Y.M.R., <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | Case No. 1:20-cv-23598-KMW-EGT |

**CERTIFICATE OF SERVICE**

.   I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Compliance was served via the U.S. District Court for the Southern District of Florida's electronic filing system on March 6, 2023, on counsel for Defendant United States of America.  Service via the Court's electronic filing system is permitted under Federal Rule of Civil Procedure 5(b)(2)(E) and S.D. Fla. Local Rule 5.1(e).

Dated: March 6, 2023

                                               /s/ Ian M. Ross
                                               Ian M. Ross (Fla. Bar No. 091214)
                                               SIDLEY AUSTIN LLP
                                               801 Brickell Avenue, Suite 800
                                               Miami, FL 33131
                                               Tel.:  (305) 391-5218
                                               Fax:  (212) 839-5599
                                               *iross@sidley.com*