UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20cv23598 WILLIAMS / TORRES

ERIC MATUTE CASTRO and R.Y.M.R.,

        Plaintiffs,

v.

UNITED STATES OF AMERICA,

        Defendant.
_____/

**DEFENDANT'S MOTION TO EXCLUDE OPINION TESTIMONY OF PLAINTIFFS'
EXPERT DR. CUNEO AND/OR STRIKE DR. CUNEO AS AN EXPERT WITNESS**

Defendant United States of America, pursuant to Federal Rule of Evidence 702, hereby moves to strike the reports of Plaintiffs' expert Dr. Charles Nicholas Cuneo, and preclude Plaintiffs from eliciting any opinions from Dr. Cuneo on the subject of post-traumatic stress disorder ("PTSD"), anxiety disorder, and the diagnosis of these conditions.

1. Dr. Cuneo, who is neither a psychiatrist nor a psychologist, is unqualified to make his findings.

2. Dr. Cuneo's reports have none of the reliability factors set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dr. Cuneo failed to comply with the standard testing methodologies for reaching his proffered diagnoses and his testing methodology has neither been subjected to peer review nor generally accepted in the scientific community.

**A. INTRODUCTION**

Plaintiffs have filed a tort action against the United States pursuant the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) ("FTCA"), in which they assert four causes of action under California

law: battery; assault; negligence; and intentional infliction of emotional distress ("IIED"). [ECF No. 24]. Plaintiffs allege that immigration officials unlawfully separated R.Y.M.R. from Eric Matute Castro and subsequently transferred R.Y.M.R. to the custody of a different government agency. *Id*. at ¶¶ 66, 68, 70, and 72. As a result, Plaintiffs allege that they suffered "substantial damages, including physical pain and suffering, mental and emotional pain and anguish, and other losses that continue to this day." *Id*. at ¶ 80.

On August 15, 2022, Plaintiffs disclosed Dr. Cuneo's two expert reports, as required by the Amended Scheduling Order and Order Extending Time to Serve Expert Disclosures [ECF Nos. 48 and 64]. ("R.Y.M.R. Report" and "Matute Castro Report," attached hereto as **Exhibits 1** and **2**, respectively)

Dr. Cuneo is not qualified to offer the mental health diagnosis opinions he has rendered in this case. He is neither a psychologist nor a psychiatrist, and he lacks the requisite education or training to offer his opinions. Moreover, while Dr. Cuneo diagnosed both Plaintiffs with PTSD, he failed to follow any reliable methodology in rendering those opinions. Not only did Dr. Cuneo fail to follow the accepted testing methodologies for PTSD assessment—the Clinician Administered PTSD Scale for DSM-5 ("CAPS-5")[1] and the Clinician Administered PTSD Scale for DSM-5 – Child/Adolescent Version ("CAPS-CA-5")[2]—he failed to use any reliable methodology. Dr. Cuneo also diagnosed R.Y.M.R. with "anxiety disorder," a condition he concedes is not in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition ("DSM-

---

[1] *Clinician-Administered PTSD Scale for DSM-5 (CAPS-5)*, U.S. DEPT. OF VETERANS AFFAIRS, NATIONAL CENTER FOR PTSD (June 25, 2023) https://www.ptsd.va.gov/professional/assessment/adult-int/caps.asp.

[2] *Clinician-Administered PTSD Scale for DSM-5 – Child/Adolescent Version (CAPS-CA-5)*, U.S. DEPT. OF VETERANS AFFAIRS, NATIONAL CENTER FOR PTSD (June 25, 2023) https://www.ptsd.va.gov/professional/assessment/child/caps-ca.asp.

5"). *See* Deposition of Dr. C. Nicholas Cuneo, p. 176:11 – 25, attached as **Exhibit 3**. Given Dr. Cuneo's lack of qualifications to render a mental health diagnosis and the unreliability of his opinions, Dr. Cuneo may not provide any opinions at trial, including his purported diagnoses and any causal connection between these diagnoses and the Plaintiffs' time in government custody.

### B. DR. CUNEO IS UNQUALIFIED TO RENDER AN OPINION ON MENTAL HEALTH; THEREFORE, HIS OPINIONS ON THIS SUBJECT MUST BE EXCLUDED UNDER *DAUBERT*

In *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, the Supreme Court held that a party proffering an expert must establish that the expert is qualified to render the opinions at issue and that the methodology used to reach the opinion is reliable. 509 U.S. 579, 592 (1993). The Supreme Court further held that Rule 702 "is premised on an assumption that the expert's opinions will have a reliable basis in the knowledge and expertise of *his discipline*." *Id*. at 592 (emphasis added). The critical inquiry is whether the expert has the knowledge and expertise for the particular opinion he or she seeks to offer at trial, which in this case is the diagnosis of PTSD, anxiety disorder and its purported causal connection Dr. C. Nicholas the Plaintiffs' treatment while in government custody.

Dr. Cuneo conceded in his deposition that he is neither a psychologist, nor is he a psychiatrist. *See* Cuneo deposition, p. 43:14 – p. 44:7. With respect to his formal training in the area of mental health, Dr. Cuneo did not take any classes in medical school sufficient to achieve a specialization in anything other than general medicine. *Id.* at p. 32:4-7. His exposure to psychiatry during his residency was limited to standard material integrated into multidisciplinary courses throughout his training, but was not a central focus. *Id*. at p. 33:19 – 34:10. Since becoming a licensed physician, he has never worked at a primary inpatient psychiatric institution. *Id*. at p. 45:16 – 23. He also does not treat adults at his primary employer of Bayview Pediatric Center in Maryland. *Id.* at p. 40:12-13. Simply put, Dr. Cuneo is not qualified to render his proffered medical

3

diagnoses, as he is a pediatrician with no recent or relevant education, training, or experience in psychiatry, psychology, or the diagnosis of mental health disorders. For this reason alone, Dr. Cuneo's mental health opinions should be disallowed. A medical doctor is unqualified to make a psychiatric diagnosis, such as PTSD, when the doctor does not have specialized training or education in the area of mental health disorders or psychiatry. *See Schaeffer v. US Airways Group, LLC*, 2012 U.S. Dist. LEXIS 99666, 2012 WL 2920375 (E.D. Penn. July 17, 2012) (excluding the testimony of a medical doctor on the subject of PTSD when he was not an expert in psychiatry, psychology, psychotherapy, the area of PTSD or its diagnostic criteria; only took a course in psychiatry while in medical school; and was "not an expert by skill or training in the area of diagnosis or causation of PTSD" but merely "occasionally treat[ed] patients who have the disorder").

Similarly, a medical doctor with limited education or training in psychiatry and psychology is not qualified to opine on the issue of PTSD. *See Ferris v. Penn. Fed. Brotherhood Maintenance of Way Employees*, 153 F. Supp. 2d 736, 745 (E.D. Penn. 2001). In *Ferris*, the plaintiff sought to introduce expert physician testimony on his alleged medical conditions. *Id*. at 743. However, the proffered expert medical doctor, who specialized in the areas of pathology and pain management, had limited training in depression and anxiety as he only took one course on mental health in medical school. *Id*. at 743-44. Analyzing the admissibility of the expert's opinions, the court stated: "Although an expert's testimony is not limited to the area in which he or she has specialized, the party offering the expert must demonstrate that the expert has the necessary expertise to provide reliable evidence." *Id*. When the proposed testimony falls outside of the witness's expertise, the court must exclude it. *Id*. Where a medical doctor has no expertise in the diagnosis and treatment of depression or anxiety disorders or the causes of these ailments, the doctor should be precluded

4

from providing any opinions with respect to the causal relationship between the plaintiff's mental conditions and diagnosis and the subject incident. *Id*. at 744.[3]

In this case, Dr. Cuneo is similarly unqualified to render a PTSD diagnosis based on his education, training, and experience. He is a pediatrician with no specialized training, experience, or education in psychiatry, psychology, or the diagnosis of PTSD. Although Dr. Cuneo may, on occasion, treat patients with a mental health disorder, this alone does not qualify him as an expert to diagnose PTSD. *See Schaeffer*, 2012 WL 2920375. Much like *Schaeffer* and *Ferris*, in which the medical doctors were not qualified to testify about their PTSD diagnosis or its causal connection to the subject incident, Dr. Cuneo should likewise be precluded from providing any

---

[3] Even proposed experts who—unlike Dr. Cuneo—specialize in counseling and treating patients with psychological conditions, such as licensed clinical social workers and licensed therapists, are also unqualified to render a PTSD diagnosis when they lack specialized psychological or psychiatric training and education. *See Naquin v. Elevating Boats, LLC*, 2012 WL 1664257 (E.D. La. May 11, 2012) (finding that "treating someone for PTSD is an altogether different matter than diagnosing it" and determining that a licensed clinical social worker was not qualified under *Daubert* to testify about her diagnosis of PTSD); *Nemeth v. Citizens Financial Group*, 2012 WL 3278968 (E.D. Mich. Aug. 10, 2012) (excluding opinion of licensed clinical social worker that the plaintiff suffered from PTSD because she lacked education and training in psychiatry and psychology and because her qualifications were limited to a master's degree in social work along with eighteen years of experience as a licensed therapist); *Lee v. National KK Passenger Corp.*, 2012 WL 92363 (S.D. Miss. Jan. 11, 2012) (precluding licensed clinical social worker from testifying about a PTSD diagnosis when she had no psychology degrees, was not a psychologist or psychiatrist, and could not administer psychological tests even though she treated patients suffering from PTSD as *treating* someone for PTSD is an altogether different matter than *diagnosing* it") (emphasis added); *Blackshear v. Werner Enters.*, 2005 WL 6011291 (E.D. Ky. May 19. 2005) (holding a diagnosis of PTSD was outside a licensed clinic social worker's "discipline" and qualifications as social workers are not qualified to make a PTSD diagnosis because they are not trained or licensed in psychology); *Berry v. McDermid Transp., Inc.*, 2005 WL 2147946 (S.D. Ind. Aug. 1, 2005) (holding a licensed therapist was not qualified to diagnose PTSD, even though the witness had 24 years of work experience with traumatized patients); *Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 561 (D. Md. 2001) ("Dr. Matson is not a psychologist nor a psychiatrist and is not qualified to offer an expert opinion as to any aspect of plaintiff's mental condition.").

opinions at trial about his PTSD diagnoses and anxiety disorder diagnosis, because he is not qualified as an expert in these areas.

### C. DR. CUNEO'S DIAGNOSES OF PTSD AND ANXIETY DISORDER ARE UNRELIABLE AND MUST BE EXCLUDED

When determining the reliability of an expert's proposed opinions, courts will consider a number of criteria, including: whether the expert's method consists of a testable hypothesis, whether the method has been subject to peer review, the existence of standards controlling the technique's operation, whether the method is generally accepted, and the relationship of the technique to the methods which have been established to be reliable. *Ferris*, 153 F. Supp. 2d at 741. The party offering the testimony has the burden of establishing the admissibility of the evidence, which in this case includes the reliability of the expert's proposed opinion. *Id*.

When offering opinions on a PTSD diagnosis, the expert cannot simply rely on the patient's self-reported symptoms without performing any psychological tests to determine the accuracy of the diagnosis or otherwise independently verify the self-reported symptoms. *See Kador v. CU of New Roads*, 2011 WL 4889102 (M.D. La. Oct. 13, 2011). In *Kador*, the District Court determined the plaintiff's expert, who diagnosed him with PTSD and Panic Disorder with Agoraphobia by applying the plaintiff's symptoms to the criteria set forth in the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), did not use a reliable methodology. *Id*. In particular, the expert accepted the plaintiff's self-reported symptoms, but did nothing to independently verify them before making the diagnosis. *Id*. Under these circumstances, the opinion was "fundamentally unsupported" and offered no assistance to the jury. *Id*. Accordingly, the District Court excluded the expert's opinions at trial regarding the psychiatric diagnosis. *Id*.; *see also Ferris*, 153 F. Supp. 2d at 744 n. 4 (finding that medical doctor's diagnosis of PTSD, which assumed everything the

plaintiff told him was true unless it conflicted with his medical judgment, was either no method at all or contained no indicia of reliability, making it inadmissible).

Here, Dr. Cuneo took no account of reports from R.Y.M.R.'s other medical providers regarding R.Y.M.R.'s health and mental status that conflicted with his own findings. *See* Borinquen records, attached hereto as **Exhibit 4**, MATUTE_GOV_SUBP_000461; *See also id.* at MATUTE_GOV_SUBP_000451, 452, 455. Dr. Cuneo similarly took no account of the records of R.Y.M.R.'s mental health counselor, Paola Rojas, which also conflicted with his conclusions. *See* Trauma Resolution Center records, attached hereto as **Exhibit 5** at MATUTE_GOV_SUBP_000620, 636; Rojas deposition, attached hereto as **Exhibit 6**, p. 55:23 - 57:21, 87:2 – 88:12; 88:23 – 89:8; MATUTE_GOV_SUBP_000779; Exhibit 5 at MATUTE_GOV_SUBP_000650.

Similarly, when an expert's opinion conflicts with the relevant DSM criteria for a diagnosis of PTSD, that expert's opinion is not reliable. *See Woods v. Olin Corp.*, 2002 WL 34371098, *2 (S.D. Ill. July 9. 2002). In *Woods*, the expert's opinion on PTSD was based on inaccurate facts and the diagnosis itself conflicted with the PTSD criteria under the DSM-IV. *Id*. Regarding the inaccuracy of facts, the expert relied solely on information the plaintiff provided to render the diagnosis but did not contact any of the plaintiff's prior physicians or therapists to verify the information or review any other medical records or treatment notes from other physicians. *Id*. For this reason, the expert's opinions were based on inaccurate facts, making them unreliable. In addition, the expert testified she relied on the DSM-IV criteria to render her diagnosis; however, her opinions actually contradicted these criteria. *Id*. at *3. The district court concluded that "the expert's theory is a far cry from the tested hypotheses foreseen as the basis of 'scientific knowledge' testified to under Rule 702" and excluded the expert's testimony as unreliable. *Id*.

In this case, Dr. Cuneo likewise used no reliable methodology for diagnosing Plaintiffs with PTSD. By his own admission, Dr. Cuneo failed to employ a widely accepted method of PTSD diagnosis methodology; instead, he administered incomplete, "modified" versions of the CAPS-5 and CAPS-CA-5 PTSD tests to the Plaintiffs. Cuneo deposition p. 24:3-14. He did so despite conceding that providing complete versions of the exams is standard practice "for some." *Id.*, p. 87:24 – p. 88:3. Dr. Cuneo also conceded that he was unaware of any information or studies regarding the validity of administering only portions of the CAPS-5 or CAPS-CA-5 tests to assist in diagnosing or screening for PTSD. *Id.* at p. 17:10 – 17:19.

Specifically, pursuant to the DSM-5, a PTSD diagnosis requires eight criteria to be met, including:

> Criteria B: Presence of one (or more) of the intrusion symptoms associated with the traumatic event(s), beginning after the traumatic event(s) occurred;
> Criteria C: Persistent avoidance of stimuli associated with the traumatic event(s), beginning after the traumatic event(s) occurred;
> Criteria D: Negative alterations in cognitions and mood associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred;
> Criteria E: Marked alterations in arousal and reactivity associated with the traumatic event(s), beginning or worsening after the traumatic event(s) occurred
> Criteria F: Duration of the disturbance (Criteria B, C, D, and E) is more than 1 month;

*See* DSM-5, Posttraumatic Stress Disorder, Diagnostic Criteria, pp. 302 – 305. (Attached hereto as **Exhibit 7**). Critically,

> The diagnosis of PTSD requires that the duration of the symptoms in Criteria B, C, D, and E be more than 1 month (Criterion F). For a current diagnosis of PTSD, Criteria B, C, D, and E must all be met for more than 1 month, for at least the past month. For a lifetime diagnosis of PTSD, there must be a period of time lasting more than 1 month during which Criteria B, C, D, and E have all been met for the same 1-month period of time.

*Id.* at pp. 308 – 309. However, Dr. Cuneo's examinations of both Plaintiffs were limited to whether they had experienced symptoms in the past month—meaning he did not determinate whether they

had experienced any symptoms for *more than* one month.  Cuneo deposition at p. 18:2-5; p. 75:19-24; p. 83:15-19; p. 96:14-22; p. 121:17-21; p. 222:12-1; p. 260:10-16; p. 261:4-6; and p. 262:7-17. Dr. Cuneo's notes contain no information showing the persistence, duration, or severity of any of the Plaintiffs' symptoms, or whether *all* of PTSD Criteria B, C, D, and E were simultaneously met for more than a month.  *See* MATUTE_Plaintiffs_000733 – 000743, 000746 – 000747, 000767 – 000768, attached hereto as **Exhibit 8**).

In addition, both of Dr. Cuneo's modified PTSD tests were administered through an interpreter.  Cuneo deposition, p.62:13-22.  Plaintiffs have produced no evidence of the interpreter's qualifications, or accuracy.  Dr. Cuneo has no knowledge whether the interpreter ever received training or certification on administering the CAPS-5 or CAPS-CA-5 exams, or any medical exam in general.  *Id*. at p. 62:22-25.  Dr. Cuneo acknowledged that the actual administration of the CAPS-5 exam requires that the prompts be read verbatim.  *Id*. at p. 26:3-7. Plaintiffs have produced no evidence of the accurate translation of the "modified" versions of the two examinations.  Because Plaintiffs have produced no evidence that interpreter accurately conducted the "modified" CAPS-5 and CAPS-CA-5 examinations, Dr. Cuneo's reliance on the reports lacks all indicia of reliability as he failed to follow the standards controlling the methodology's operation. *Daubert,* 509 U.S. at 582.

Therefore, in addition to his lack of qualifications, Dr. Cuneo's testimony should also be excluded because his proffered diagnoses meet none of the reliability factors set forth in *Daubert* and lack indicia of reliability. His methods have not been tested or subjected to peer review and are not generally accepted in the scientific community.

D.  **CONCLUSION**

WHEREFORE Defendant, the United States of America, hereby seeks to exclude any opinions from Dr. Cuneo in which he discusses PTSD or anxiety disorder, diagnoses the Plaintiffs with PTSD or anxiety disorder, or provides any causation opinions relating Plaintiffs' PTSD or anxiety disorder arising from their time in government custody, and any other relief this Court deems proper.

Dated: June 30, 2023				Respectfully submitted,

						**MARKENZY LAPOINTE**
						**UNITED STATES ATTORNEY**

					By:	*John S. Leinicke*
						JOHN S. LEINICKE
						ASSISTANT UNITED STATES ATTORNEY
						Fla. Bar No. 64927
						United States Attorney's Office
						Southern District of Florida
						99 N.E. 4th Street, Third Floor
						Miami, FL 33132
						Tel: (305) 961-9212
						E-mail: John.Leinicke@usdoj.gov

						*Counsel for Defendant United States of America*