## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 1:20cv23598 WILLIAMS / TORRES

ERIC MATUTE CASTRO and R.Y.M.R.,

                    Plaintiffs,

     v.

UNITED STATES OF AMERICA,

                    Defendant.

_____/

### UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT

Defendant, United States of America, moves for summary judgement in favor of Defendant against Plaintiffs, Eric Matute Castro and R.Y.M.R., on Plaintiffs' "Corrected" Complaint. (ECF No. 24).  This motion is brought pursuant to Fed. R. Civ. P. 56, on the grounds that no triable issue of material fact exists as to any of Plaintiffs' four causes of action against Defendant.  This motion is based on the attached Memorandum of Points and Authorities, the concurrently-filed Statement of Undisputed Material Facts and Supporting Evidence, the concurrently-filed Compendium of Evidence and exhibits attached thereto, all matters of which the Court must or may take judicial notice, all pleadings and papers on file herein, and such evidence and argument as the Court may allow.

## TABLE OF CONTENTS

A.  **INTRODUCTION**

   1.  **Procedural History**

   2.  **Immigration Detention and Family Status Verification**

   3.  **The Federal Tort Claims Act ("FTCA")**

B.  **SUMMARY JUDGMENT STANDARD**

C.  **ARGUMENT**

   1.  **Plaintiffs' Negligence and IIED Claims Fail.**

      a.  **Plaintiffs' Negligence and IIED Claims are Barred by the FTCA's Discretionary Function Exception.**

      b.  **Plaintiffs' Allegation of a Constitutional Violation Does Not Negate Application of the Discretionary Function Exception.**

      c.  **The ICE ERO Officers' Investigation of the Plaintiffs' Familial Relationship and Resulting Decision to Separate the Plaintiffs Involved Elements of Judgment or Choice.**

      d.  **The ICE ERO Officers' Decisions Were Grounded in Considerations of Policy.**

   2.  **Plaintiffs' Claims Based on Their Separation Do Not Constitute a Tort Under California Law.**

      a.  **California Law Does Not Permit Tort Claims Based on Law Enforcement Investigative Activity.**

      b.  **Plaintiffs' Negligence and IIED Claims Fail Because the Decision to Separate Them Did Not Threaten Physical Injury.**

      c.  **Plaintiffs Fail to Establish the Elements of a Claim for IIED.**

      d.  **Plaintiffs' Battery and Assault Claims Fail Because ICE ERO Officers' Conduct Was Privileged.**

D.  **CONCLUSION**

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. INTRODUCTION

On November 13, 2017, Plaintiffs—an adult man ("Matute Castro") and his three-year-old son ("R.Y.M.R.")—were apprehended by U.S. Border Patrol shortly after unlawfully crossing the Southwest Border of the United States in Otay Mesa, California.  After briefly being held in U.S. Customs and Border Protection ("CBP") custody, the Plaintiffs were transferred to Immigration and Customs Enforcement, Enforcement and Removal Operations ("ICE ERO") custody in San Diego, California.  After approximately three days, during which ICE ERO officers were unable to confirm the Plaintiffs' familial relationship, Plaintiffs were separated on November 16, 2017, due to child safety concerns.  Consistent with the controlling laws and regulations, R.Y.M.R. was thereafter transferred to the U.S Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR") because he was an "unaccompanied alien child" ("UAC")[1] and placed with BCFS Health and Human Services (formerly known as Baptist Child and Family Services) in their transitional foster care program, where he resided with a foster family until his timely release to his mother as a category one sponsor on January 29, 2018. Matute Castro was transferred to an ICE detention center, and, on January 19, 2018, was timely released after posting bond.

Plaintiffs allege that their separation, and the manner in which they were allegedly separated, was a result of the former administration's "Zero Tolerance Policy" (announced in April

---

[1] UACs are defined by statute as juveniles who have "no lawful immigration status in the United States," have "not attained 18 years of age," and who either have "no parent or legal guardian in the United States" or have "no parent or legal guardian in the United States . . . available to provide care and physical custody."  *See* 6 U.S.C. § 279(g)(2).  Under the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"), any federal agency shall "transfer the custody of such child to [ORR] not later than 72 hours after determining that such child is" a UAC except in the case of exceptional circumstances. 8 U.S.C. § 1232(b)(3). Federal agencies are required to transfer UACs to the custody of ORR, an agency within HHS, within 72 hours of determining that a juvenile is unaccompanied.  *See* 8 U.S.C. § 1232(b)(3).  ORR has responsibility for "the care and placement of unaccompanied alien children who are in federal custody by reason of their immigration status." 6 U.S.C. §§ 279(a), (b)(1)(A), (b)(1)(C); *see also* 8 U.S.C. § 1232(b)(1).  ORR seeks to place UACs "in the least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A).  ORR "shall not release such children upon their own recognizance."  6 U.S.C. § 279(b)(2).  Once a minor is in ORR custody, statutory and regulatory provisions govern release of the minor to an approved sponsor. *See* 8 U.S.C. § 1232(c)(3).

2018) and that they were mistreated while in immigration custody in November 2017. (ECF No. 24, ¶¶ 1, 8, 21-24, 52). After taking office, President Biden denounced the prior practice of separating children from their families at the United States-Mexico border, condemned the human tragedy that occurred, and established a task force to continue efforts to reunify families who had been separated. The U.S. government does not defend the policy choices that led to family separations under that policy. This case, however, does not relate to those policy choices. It arises from a separation that occurred prior to the adoption of the Zero Tolerance Policy and DHS's corresponding policy to refer adults for prosecution (the "DHS Referral Policy"). The separation of these Plaintiffs, by contrast, took place because ICE had questions about whether Matute Castro was R.Y.M.R.'s father.

Plaintiffs assert claims of negligence, intentional infliction of emotional distress ("IIED"), battery, and assault. The crux of Plaintiffs' claims is twofold: First, that their separation by ICE ERO officers was unlawful. Second, that ICE ERO officers allegedly used excessive force to effectuate the separation.

None of the acts challenged by Plaintiffs gives rise to tort liability for the United States. The decision to separate the Plaintiffs—including the ICE ERO officer's investigative steps leading up to that decision—is covered by the Federal Tort Claims Act's ("FTCA's") discretionary function exception, 28 U.S.C. § 2680(a). Furthermore, Plaintiffs' negligence and IIED claims fail as a matter of law for additional reasons. Their claims of assault and battery also fail under state law because, even viewing the facts in the light most favorable to Plaintiffs, Plaintiffs cannot meet their burden to establish that the officers' actions in effectuating their separation were not privileged under California law.

## 1. **Procedural History**

On August 28, 2020, Plaintiffs filed their Complaint. (ECF. No. 1). On November 2, 2020, the United States moved to dismiss, asserting, among other things, that the discretionary function exception to the FTCA applies and strips this Court of subject matter jurisdiction. (ECF No.12, p.20-29). On December 2, 2020, Plaintiffs filed their opposition to the Motion to Dismiss. (ECF No.14). In response to the discretionary function exception, Plaintiffs made the following relevant arguments: (1) "[t]he United States bears the burden of demonstrating to the Court that the FTCA's discretionary function exception applies," citing to Ninth Circuit law; *id.* p.12; (2) "[b]ecause application of the discretionary function exception may turn on the facts . . . it can be premature at

the motion to dismiss stage to decide whether the discretionary exception applies;" *id*.; and (3) "the discretionary function exception to the FTCA does not shield the United States from liability for unconstitutional acts;" *id*. p.13.

On February 5, 2021, this Court held a hearing on the Motion to Dismiss, during which it issued an *ore tenus* order denying the motion.[2]  With respect to the discretionary function exception, this Court observed that "the Constitutional violation" alleged in the Complaint "is a characterization of conduct [that] demonstrate[s] why the [discretionary function] exception is not applicable," February 5, 2021 hearing transcript p.51:15-19, and "the decision of whether the [discretionary function exception] is not applicable is not appropriate, I think, at the motion to dismiss stage," *id*. p.51:20-21.

On February 11, 2021, Plaintiffs filed a "Corrected" Complaint, (ECF No. 24), asserting the following causes of action: (1) battery; (2) assault; (3) negligence; and (4) IIED.  The United States answered the Corrected Complaint on March 4, 2021.  (ECF No. 27).

### 2.  <u>Immigration Detention and Family Status Verification</u>

Noncitizens arriving in or present in the United States who, following inspection, are deemed inadmissible are subject to removal from the United States and subject to detention during the pendency of their removal proceedings. *See* 8 U.S.C. §§ 1225(b); 1226; 1357.  DHS possesses statutory authority to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." *Id.* § 1231(g)(1).  In some cases, DHS may exercise its discretion to release a noncitizen from custody.  *See, e.g.*, *id.* §§ 1182(d)(5), 1226(a)(2).  Those determinations are made on a "case-by-case basis" pursuant to federal statutory and regulatory authorities.  *Id.* § 1182(d)(5); 8 C.F.R. §§ 235.3(b)(2)(iii), (b)(4)(ii).  When an agency takes custody of a noncitizen child for whom "there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody," 6 U.S.C. § 279(g)(2), the agency must designate that child as a UAC pursuant to the TVPRA, and transfer custody of the child to ORR.  *Id.*

---

[2] After the hearing, the Court issued a Paperless Order (ECF No.23) on the Motion to Dismiss, which stated that "the Motion is DENIED for the reasons discussed during the Hearing."

**3.   The Federal Tort Claims Act ("FTCA")**

The FTCA provides a limited waiver of the United States' sovereign immunity for tort claims. *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994). That waiver, however, is subject to a number of exceptions, including the discretionary function exception, which covers claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Eleventh Circuit has affirmed that the "burden [is] on the plaintiff to 'prove that the discretionary function exception does not apply.'" *Cuadrado-Concepcion v. United States*, 851 F. App'x 985, 990 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 407 (2021) (quoting *OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002)).[3] Moreover, since the Court ruled on the Motion to Dismiss in this case, the Eleventh Circuit held that an "FTCA tort claim based on the government's tortious abuse of [a discretionary] function— even unconstitutional tortious abuse—is barred by the statutory discretionary function exception." *Shivers v. United States*, 1 F.4th 924, 933 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 1361, 212 L. Ed. 2d 322 (2022) (emphasis omitted).

To state a claim under the FTCA, a plaintiff also bears the burden of establishing a state tort analogue that imposes liability. "Violating an internal policy or procedure does not create a cause of action under the FTCA against the government unless the challenged conduct is independently tortious under applicable state law." *Dalrymple v. United States*, 460 F.3d 1318, 1327 (11th Cir. 2006); *cf. Zelaya v. United States*, 781 F.3d 1315, 1324 (11th Cir. 2015) (noting that "the fact that a federal employee has failed to perform duties imposed by federal law is insufficient by itself to render the federal government liable under the FTCA" and that "a state tort cause of action is a *sine qua non* of FTCA jurisdiction"). Neither the violation of federal constitutional rights, nor the violation of federal statutes or regulations, nor violations of internal federal guidelines and policies, can form the basis for a FTCA claim unless such violation independently constitutes a tort under the law of the state where the violation occurred. *Smith v. United States*, 873 F.3d 1348, 1353 (11th Cir. 2017).

---

[3] The Eleventh Circuit's interpretation of the discretionary function exception, which places the burden on the plaintiff to prove that it does not apply, controls contrary to Plaintiffs' argument made in their motion to dismiss. (*See* ECF 14, p. 12, § III (citing Ninth Circuit law)).

## B.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court's focus in reviewing a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir. 1997).  The moving party has the burden to establish the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has established the absence of a genuine issue of material fact, to which the nonmoving party bears the burden at trial, it is up to the nonmoving party to designate "specific facts showing that there is a genuine issue for trial." *Celotex v. Catrett,* 477 U.S. 317, 324 (1986).  Issues of fact are genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party. *See Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007)*.*  Summary judgment for the defendant is appropriate when the plaintiff "fails to make a sufficient showing to establish the existence of an element essential to [his] case, and on which [he] will bear the burden at trial." *Celotex*, 477 U.S. at 322.  Thus, "[i]f the non-movant . . . fails to adduce evidence which would be sufficient . . . to support a jury finding for the non-movant, summary judgment may be granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370 (11th Cir. 1997) (per curiam) (citation omitted).

## C.  **ARGUMENT**

While Plaintiffs identify multiple federal agencies in the Corrected Complaint and allege various actions by various agency actors, the pleaded counts fail to clearly identify which agency's, or agencies', alleged actions form the basis for each claim.  Moreover, given the undisputed evidence in this case, it appears all pleaded claims are based exclusively on actions allegedly taken by ICE employees.  Accordingly, this Motion focuses on the best understanding of the pleaded counts in light of the undisputed evidence in this case.

### 1.  **Plaintiffs' Negligence and IIED Claims Fail.**

#### a.  **Plaintiffs' Negligence and IIED Claims are Barred by the FTCA's Discretionary Function Exception.**

Plaintiffs' claims for negligence and IIED are based on their separation after ICE officers were initially unable to confirm a familial relationship. (ECF No. 14, p. 27). These claims are covered by the FTCA's discretionary function exception and accordingly must be dismissed.  The discretionary function exception "precludes government liability for 'any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'"  *Ochran v. United States*, 117 F.3d 495, 499 (11th Cir. 1997) (quoting 28 U.S.C. § 2680(a)). "[T]he discretionary function exception serves to preserve sovereign immunity for any claim that is based on a federal agency or employee's performance or nonperformance of a discretionary task, even if, in so acting, the agency employee may have abused his discretion." *Zelaya*, 781 F.3d at 1329.  The "purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."  *United States v. Gaubert*, 499 U.S. 315, 323 (1991) (internal quotation marks omitted).

Courts apply a two-part test for determining whether a government employee's action or omission falls within the discretionary function exception.  First, the court must consider the nature of the conduct and determine whether it involves "an element of judgment or choice."  *Ochran*, 117 F.3d at 499 (quoting *Gaubert*, 499 U.S. at 323).  "In determining whether judgment or choice is present in the particular conduct at issue, the inquiry focuses on 'whether [a] controlling statute or regulation mandates that a government agent perform his or her function in a specific manner.'" *Zelaya*, 781 F.3d at 1329 (quoting *Hughes v. United States*, 110 F.3d 765, 768 (11th Cir. 1997)). "[U]nless a federal statute, regulation, or policy specifically prescribes a course of action embodying a fixed or readily ascertainable standard, it will be presumed that the particular act involved an element of judgment or choice." *Id.* at 1330 (internal quotation marks omitted).

Second, if the conduct at issue involves the exercise of judgment, the court must determine whether that judgment is "grounded in considerations of public policy." *Ochran*, 117 F.3d at 499. This inquiry focuses 'not on the agent's subjective intent in exercising the discretion conferred by statute or regulation," but rather "on the nature of the actions taken and on whether they are susceptible to policy analysis." *Gaubert*, 499 U.S. at 325.  "The purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social,

economic, and political policy through the medium of an action in tort." *Id.* at 323 (citation omitted).

Concerns about subjecting policy-based decision making "to outside inquiry" are magnified in the immigration context. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 490 (1999). Further, "whether … allegations of negligence are true" is not assessed when determining whether the discretionary function exception applies, *Hughes v. United States*, 110 F.3d 765, 767 n.1 (11th Cir 1997), and the exception applies "whether or not the discretion involved [was] abused," 28 U.S.C. § 2680(a); *see also Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008) (finding discretionary function exception applies where there are allegations of "malicious and bad faith conduct" because "subjective intent is irrelevant to our analysis"). Plaintiffs have failed to meet their burden of establishing that the discretionary function exception does not apply because the government's separation of Plaintiffs was a discretionary act that was grounded in considerations of public policy.

### b. Plaintiffs' Allegation of a Constitutional Violation Does Not Negate Application of the Discretionary Function Exception.

As an initial matter, Plaintiffs have argued that the allegedly tortious conduct at issue—the investigation of the Plaintiffs' familial relationship and resulting decision to separate the Plaintiffs—is not subject to the discretionary function exception because Plaintiffs allege that the conduct was unconstitutional. (*See* ECF No. 24, ¶ 29 *and* ECF No 14, p.13). But the Eleventh Circuit has now expressly rejected the notion that there is a constitutional carveout from the discretionary function exception, foreclosing Plaintiffs' argument. Shortly after this Court denied the United States' Motion to Dismiss, the Eleventh Circuit made clear that the discretionary function exception analysis applies even when the alleged tortious conduct is also alleged to violate the Constitution:

> The critical inquiry in an FTCA case like this one, therefore, is whether the category or type of challenged government activity is discretionary under *Gaubert*. . . . Congress left no room for the extra-textual "constitutional-claims exclusion" for which Shivers advocates. . . . The inquiry is not about how poorly, abusively, or unconstitutionally the employee exercised his or her discretion but whether the underlying function or duty itself was a discretionary one. . . . [T]here is no "constitutional-claims exclusion" to the statutory discretionary function exception[.]

*Shivers*, 1 F.4th at 930-32.  And, in determining whether the alleged tortious conduct constituted a discretionary act, the Court explained that it looks to whether federal law "specifically prescribes a course of action for an employee to follow."  *Id.* at 931 (internal quotation marks omitted).

### c.   The ICE ERO Officers' Investigation of the Plaintiffs' Familial Relationship and Resulting Decision to Separate the Plaintiffs Involved Elements of Judgment or Choice.

Turning to the elements of the discretionary function exception test, the actions that gave rise to Plaintiffs' negligence and IIED claims were discretionary, and thus meet the test's first element.  At every stage, the ICE ERO officers' decisions—beginning with Deportation Officer Maria Chairez's ("DO Chairez") recommendation to separate the Plaintiffs and concluding with Assistant Field Office Director Mario Ortiz's ("AFOD Ortiz") decision to separate, and the designation of R.Y.M.R. as a UAC—were predicated on an element of judgment or choice.  In November 2017, there was no across-the-board, one-size-fits-all policy at San Diego ICE ERO to prioritize the prosecution of all unlawfully entering adults regardless of family unit status, regardless of the specific facts of the detainees' case.[4]  Rather, ICE ERO officers would rely upon the totality of the circumstances and use their own judgment and experience when processing purported family units for placement.  SOF ¶¶ 10 – 17.

The essence of Plaintiffs' negligence and IIED claims is a challenge to federal employees' decisions regarding whether, and how, to investigate Plaintiffs' claims of a family relationship.  Specifically, based on the information available to them at the time, and the fact that they determined R.Y.M.R. was to too young to question, ICE ERO officers made the discretionary determination that that they could not verify that Matute Castro was R.Y.M.R.'s father and that R.Y.M.R.'s safety would be best served if he was removed from Matute Castro's custody.  SOF ¶¶ 20 – 23.

_____

[4] It bears repeating that the decisions made by ICE ERO officers concerning the Plaintiffs were not made pursuant to the "Zero Tolerance Policy" that was in effect for several months starting in April 2018.  (*See* ECF No. 24 ¶ 21).  That policy, in combination with the DHS Referral Policy, resulted in the prosecution of many adults apprehended at the border, and the separation of parents from their children.  Although much of Plaintiffs' Corrected Complaint is devoted to discussing the Zero Tolerance Policy, no such policy was in effect in California in November 2017, when Plaintiffs were apprehended after unlawfully crossing the border.  Nor was any such policy the reason for the separation of these Plaintiffs.  SOF ¶ 58.

Having made this determination, ICE ERO officers then determined that R.Y.M.R. was a UAC, which the law defines as a noncitizen child for whom "there is no parent or legal guardian in the United States [or] no parent or legal guardian in the United States is available to provide care and physical custody." 6 U.S.C. § 279(g)(2). SOF ¶ 24. This UAC determination was, again, a discretionary exercise of the ICE officers' authority. Once ICE officers had designated R.Y.M.R. as a UAC, the TVPRA required them to transfer R.Y.M.R. to the custody of ORR for temporary placement. *See* 8 U.S.C. § 1232(b)(3).[5] ORR placed R.Y.M.R. in foster care, where he stayed until ORR identified his mother as a sponsor to whom he could be released, pursuant to the TVPRA and the applicable regulations and policies. SOF ¶¶ 70 – 91.

The decisions that ICE ERO officers made in assessing whether there was a familial relationship between the Plaintiffs were an exercise of investigative discretion—regardless of whether their assessment was correct. Investigatory decisions are "inherently discretionary" in that they require both judgment and choice as to how and by what means an investigation will proceed. *Littell v. United States*, 191 F. Supp. 2d 1338, 1344 (M.D. Fla. 2002) ("Decision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments.") (citation omitted); *see also Mesa v. U.S.*, 837 F. Supp. 1210, 1213 (S.D. Fla. 1993) ("The overwhelming consensus of federal case law establishes that criminal law enforcement decisions—investigative and prosecutorial alike—are discretionary in nature"); *Tsolmon v. United States*, 841 F.3d 378, 383 (5th Cir. 2016) ("[D]ecisions on when, where, and how to investigate and whether to prosecute have long been found to be core examples of discretionary conduct for which the United States maintains its immunity." (citation omitted)).[6]

---

[5] Because the law required ICE to transfer R.Y.M.R. to ORR custody after he was designated a UAC, that act of transfer is covered by the exception to the FTCA that does not waive sovereign immunity for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid." 28 U.S.C. § 2680(a). Accordingly, the United States has not waived sovereign immunity with respect to any claims that are based on the transfer of R.Y.M.R. to ORR custody once ICE determined he was a UAC.

[6] In particular, numerous courts have recognized that decisions made in investigating an individual's immigration status necessarily involve the exercise of judgment by the investigating officer, and thus fall within the FTCA's discretionary function exception. *Douglas v. United States*, 796 F. Supp. 2d 1354, 1369 (M.D. Fla. 2011) (finding discretionary function exception barred plaintiff's claim arising from ICE's purportedly negligent investigation of his citizenship status); *Artega-Ruiz v. U.S.*, 705 F. App'x 597, 598 (9th Cir. 2017) (finding that the "manner in

Similarly, several courts have held that the decision to place a minor child in protective custody involves the exercise of discretion.  *See Green v. Mont. Dep't of Pub. HHS*, No. 6:12-cv-62, 2014 U.S. Dist. LEXIS 7376, 2014 WL 229828 at *6 (D. Mont. Jan. 21, 2014) (finding that the act of placing a child in protective custody "is a judgment call, and inherently discretionary"); *Richardson v. Schubert*, No. 3:14-cv-01027-ST, 2015 U.S. Dist. LEXIS 101000, at *37 (D. Or. June 5, 2015) (finding that decision by a government employee to place minor child in foster care was a discretionary decision); *cf. Cohen v. United States*, 151 F.3d 1338, 1345 (11th Cir. 1998) (finding Bureau of Prison's actions in classifying prisoners and placing them in institutions involve decisions within the discretionary function exception).

Moreover, the determination of whether and when a parent is "available to provide care and physical custody," and thus whether a child is a UAC within the meaning of the TVPRA, is a discretionary determination.  *See D.B. v. Poston*, 119 F. Supp. 3d 472, 482-83 (E.D. Va. 2015) ("Federal agencies are afforded discretion under the statutory scheme when classifying juveniles as unaccompanied alien children."), *aff'd in part and vacated in part*, 826 F.3d 721 (4th Cir. 2016).

Nor are Plaintiffs' claims saved by their allegation that federal officers violated "legal obligations to ensure the prompt release of minors in their custody and to favor preserving family unity whenever possible."  (ECF No. 24 ¶ 30).  Although Plaintiffs have generally alleged

---

which [federal immigration agents] investigated [the plaintiff's] eligibility for removal" was covered by the discretionary function exception); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (observing in an immigration case "the thoroughness of an investigation is a central decision for law enforcement officers to make, one that is inherently discretionary"); *Pooler v. United States,* 787 F.2d 868, 871 (3d Cir. 1986) ("[D]ecision making as to investigation and enforcement, particularly when there are different types of enforcement action available, are discretionary judgments."); *Appolon v. United States*, No. 1:16-cv-2275, 2017 U.S. Dist. LEXIS 145925, at *48 (E.D.N.Y. Sep. 6, 2017), *report and recommendation adopted* 2018 U.S. Dist. LEXIS 8205 (E.D.N.Y. Jan. 11, 2018) (recognizing that "[t]he essence of plaintiff's negligent investigation claim challenges the ICE agents' decisions regarding whether and how to investigate his claims of United States citizenship."); *Medina v. United States*, 259 F.3d 220 (4th Cir. 2001) (holding the federal government immune from FTCA suit by non-citizen because INS's decision to arrest him and begin deportation proceedings was discretionary); *Nguyen v. United States*, No. 02-10013, 2003 U.S. App. LEXIS 28117, 2003 WL 1922969, at *1-2 (5th Cir. Mar. 31, 2003) (unpublished) (finding that INS's failure to obtain plaintiff's alien file and failing to otherwise determine from various documents that plaintiff was entitled to derivative citizenship "falls squarely within the discretionary function exception.")*; Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2012) *amended reh'g denied, reh'g en banc denied*, 689 F.3d 975 (9th Cir. 2012) (finding that immigration authorities' decision to detain non-citizen pending resolution of immigration proceedings fell within the discretionary function exception).

violations of the *Flores* Agreement, *Flores v. Reno*, No. 85-cv-4544, ECF. No. 177 (C.D. Cal. July 24, 2015), and 8 C.F.R. § 1236.3, neither of these authorities removes the discretion underpinning the ICE ERO officers' actions here.  First, 8 C.F.R. § 1236.3 is discretionary, not mandatory: it provides that "simultaneous release of the juvenile and the [juvenile's] parent, legal guardian, or adult relative shall be evaluated on a discretionary case-by-case basis." *Id.* § 1236.3(b)(2).  The regulation expressly recognizes that there may be "cases where the parent . . . is in Service detention" and provides for release to other individuals in those circumstances.  *Id.* § 1236.3(b)(3).

Likewise, the *Flores* Agreement "does not contemplate releasing a child to a parent who remains in custody, because that would not be a 'release.'" *Flores v. Lynch*, 828 F.3d 898, 906 (9th Cir. 2016); *see also id.* at 909 (noting that the *Flores* Agreement "provides no affirmative release rights for parents").  Moreover, while the *Flores* Agreement "grants class members a right to preferential release to a parent over others," that "does not mean that the government must also make a parent available; it simply means that, if available, a parent is the first choice." *Id.* at 908.

### d.  The ICE ERO Officers' Decisions Were Grounded in Considerations of Policy.

Turning to the second element of the discretionary function exception test, the ICE ERO officers' actions during their processing of the Plaintiffs—including reviewing the documents presented by the Plaintiffs, determining that R.Y.M.R. was too young to be questioned, concluding that they were unable to verify a familial relationship, and determining that R.Y.M.R. was a UAC and should be separated from Matute Castro—were decisions susceptible to policy considerations.  Choices made by law enforcement officers throughout an investigation necessarily implicate questions of policy. *See Illinois Metropolitan Investment Fund v. United States*, 773 F. App'x 540, 542 (11th Cir. 2019) (the "decision of how much investigation to conduct is precisely the type of governmental decision that the discretionary function exception was designed to protect" (citation omitted)); *see also Goble v. Ward*, 628 F. App'x 692, 700 (11th Cir. 2015) ("Because federal law empowers the SEC with discretion as to how it handles an investigation, we reasonably assume that the SEC investigators ground their investigative decisions on policy considerations.").

In particular, decisions about how to investigate the familial status of detained non-citizens raise policy questions about how to allocate limited resources at the border, especially where the agency has a variety of enforcement priorities and other cases requiring investigative resources.  Decisions relating to noncitizens are so "vitally and intricately interwoven with contemporaneous policies [and] so exclusively entrusted to the political branches of government as to be largely

13

immune from judicial inquiry or interference." *United States v. Lopez-Flores*, 63 F.3d 1468, 1474 (9th Cir. 1995) (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952)); *see also Arteaga-Ruiz v. United States*, 164 F. Supp. 3d 1198, 1204 (D. Idaho 2016), *affirmed* 705 F. App'x 597 (9th Cir. 2017) (finding plaintiff's claims of negligence, false imprisonment and IIED were all barred by the FTCA's discretionary function exception because "ICE agents' discretionary conduct in investigating Arteaga-Ruiz's immigration status, [and] analyzing the information received … were susceptible to policy analysis"). This is true even if the investigating officers "abused" their discretion. *Zelaya*, 781 F.3d at 1329. Likewise, ICE ERO officers' determination that R.Y.M.R. was a UAC under the TVPRA was also a decision susceptible to policy considerations. *See Baie v. Sec'y of Def.*, 784 F.2d 1375, 1377 (9th Cir. 1986) ("[I]nterpretation of [a] statute is a plainly discretionary administrative act the 'nature and quality' of which Congress intended to shield from liability under the FTCA.").

Because the actions Plaintiffs challenge were discretionary and susceptible to policy considerations, this Court should grant summary judgment in favor of the United States on Plaintiffs' negligence and IIED claims, insofar as those claims are based on the investigation into whether the Plaintiffs had a familial relationship, their separation based on the lack of a verifiable familial relationship, and the designation of R.Y.M.R. as a UAC. *See, e.g.*, *Arteaga-Ruiz*, 705 F. App'x at 598 (affirming dismissal of negligence and IIED claims based on ICE's faulty investigation of plaintiff's citizenship as "barred by the discretionary function exception").[7]

---

[7] To the extent Plaintiffs' claims are based on the allegation that the government limited communication between Matute Castro and R.Y.M.R. during the former's detention, (ECF No. 24 ¶¶ 6, 47, 49, 74-76), those claims are also based on discretionary acts grounded in policy considerations. Courts have repeatedly held that claims based on acts or omissions relating to conditions of confinement are barred by the FTCA's discretionary function exception because the manner in which the government manages and operates its detention facilities involves discretionary decisions. *See Dugan v. Warden, FCC Coleman—USP I*, 673 F. App'x 940, 942-943 (11th Cir. 2016) ("Although the [Bureau of Prisons] owes a general duty of care to safeguard federal prisoners, … [it] retains considerable discretion to determine the means by which it will fulfill these duties… [That determination] is grounded in public policy considerations"); *Huff v. Neal*, 555 F. App'x 289, 298–99 (5th Cir. 2014) (per curiam) (discretionary function exception applied to placement of inmates because such placement "inherently requires that prison officials exercise their discretion" and "[p]ublic policy demands that these decisions be made by prison officials, not judges"); *see also S.E.B.M. v. United States*, --- F.Supp.3d ----, 2023 WL 2383784, *16 (D.N.M. Mar. 6, 2023) ("The *Flores* Agreement provides no time parameters for how long or frequent calls between children and their family members should be.").

**2. Plaintiffs' Claims Based on Their Separation Do Not Constitute a Tort Under California Law.**

Plaintiffs' negligence and IIED claims fail for the additional reason that they fail to establish those torts under California law.[8] "Absent an actionable state law theory of liability, no FTCA claim will lie." *Smith v. United States*, 873 F.3d 1348, 1353 (11th Cir. 2017).

**a. California Law Does Not Permit Tort Claims Based on Law Enforcement Investigative Activity.**

The gravamen of Plaintiffs' negligence and IIED claims is that ICE ERO officers failed to effectively investigate their familial relationship and accordingly improperly separated them. However, under California law, law enforcement officers cannot be held liable for failing "to perform a reasonable and adequate investigation." *Hucko v. City of San Diego*, 179 Cal. App. 3d 520, 522 (1986). "Because investigation is an essential step toward the institution of formal proceedings, it is also cloaked with immunity." *Amylou R. v. County of Riverside*, 28 Cal. App. 4th 1205, 1210 (1994) (citations and internal quotation marks omitted). Thus, California courts recognize that law enforcement officers are immune from claims alleging a negligent investigation. *See Id.* (citing *Johnson v. City of Pacifica*, 4 Cal. App. 3d 82 (1970)); *Jenkins v. County of Orange,* 212 Cal. App. 3d 278, 283-284 (1989) (finding social worker immune from negligent investigation of child abuse reports and for her failure and refusal to consider all the evidence and resultant misrepresentations of information to the juvenile court, because the actions were within the context of her job). Moreover, this legal rule is codified: Cal. Gov. Code § 821.6 provides that a "public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously."

Because Plaintiffs' negligence and IIED claims are primarily based on the sufficiency of ICE ERO officers' investigation, the claims fail because California law imposes no duty to conduct investigations in any particular manner—let alone to reach any particular result. *See Struk v. Bush*, No. 3:10-cv-348, 2011 WL 5827196, at *10 (S.D. Cal. Nov. 18, 2011) ("Defendant is immune

---

[8] In an FTCA case, liability is determined in accordance with the law of the state where the alleged wrong occurred. 28 U.S.C. § 1346(b). The FTCA provides for liability "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Here, all allegedly tortious actions of United States employees occurred in the state of California.

from liability under California Government Code § 821.6 for his investigatory conduct, [which] immunizes officers for actions taken within the scope and course of their employment . . . including investigatory actions[.]").

> **b. Plaintiffs' Negligence and IIED Claims Fail Because the Decision to Separate Them Did Not Threaten Physical Injury.**

Because Plaintiffs concede the absence of bodily injury, and seek redress purely for emotional distress, their "negligence" claim is—at most—an attempted claim for negligent infliction of emotional distress ("NIED"). *See S.F. Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995) ("Until physical injury occurs—until damage rises above the level of mere economic loss—a plaintiff cannot state a cause of action for … negligence.") To allege a claim for NIED, a plaintiff must demonstrate that: (1) the defendant owed a duty; (2) the defendant breached that duty; (3) the plaintiff has suffered serious emotional distress as a result, which the defendant should have foreseen; and (4) damages. *See Kasramehr v. Wells Fargo Bank N.A.*, No. 5:11-cv-551, 2011 U.S. Dist. LEXIS 158425, 2011 WL 12473383, at *10 (C.D. Cal. May 18, 2011) (quotation marks omitted). Additionally, "with rare exceptions, a breach of the duty must threaten physical injury[.]" *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 985 (1993). Neither DO Chairez's recommendation to separate, nor AFOD Ortiz's decision to separate the Plaintiffs, nor the length of time either Plaintiff remained in government custody, in and of itself, threatened the Plaintiffs with physical injury.[9] Nor do the facts here fall within any of the "rare exceptions" that do not require such a threat.[10] Thus, Plaintiffs' claims for negligence cannot survive summary judgment.

---

[9] Although Plaintiffs have alleged that ICE ERO officers used excessive force when separating them, those allegations are distinct from the investigation of their familial relationship and the decision to separate them in the first place. Plaintiffs' claims relating to the alleged use of force also fail for the reasons separately discussed in Section C.2.d. below.

[10] California courts narrowly limit the "rare exceptions" to "certain specialized classes of cases[, w]here the negligence is of a type which will cause highly unusual as well as predictable emotional distress." *Branch v. Homefed Bank*, 6 Cal. App. 4th 793, 800 (1992); *see also Chaconas v. JP Morgan Chase Bank*, 713 F. Supp. 2d 1180, 1186 (S.D. Cal. 2010) (listing limited set of cases wherein California courts have allowed plaintiffs to pursue IIED claims absent the threat of physical injury to include: a doctor misdiagnosing a plaintiff's wife with syphilis, a hired therapist sexually molesting a plaintiff's sons, a school board failing to notify a plaintiff that her daughter was sexually molested by a fellow student, a crematorium mishandling the remains of plaintiffs'

### c.   Plaintiffs Fail to Establish the Elements of a Claim for IIED.

Under California law, to establish a claim for IIED the plaintiff must prove "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).  "Thus, the conduct must be "directed primarily at [plaintiffs], [be] calculated to cause them severe emotional distress, or [be] done with knowledge of their presence and of a substantial certainty that they would suffer severe emotional injury." *Christensen v. Superior Court*, 54 Cal. 3d 868, 906 (1991). Moreover, "[w]hether treated as an element of the prima facie case or as a matter of defense, it must also appear that the defendants' conduct was unprivileged." *Ross v. Creel Printing & Publishing Co., Inc.*, 100 Cal. App. 4th 736, 745 (2002) (citation omitted).   In particular, the investigation into the Plaintiffs' familial relationship, and the decision to separate the Plaintiffs based on concerns of parentage, were privileged activity that cannot support a claim for IIED.  As discussed above, under California law, decisions made during law enforcement investigations are "cloaked with immunity." *Amylou R.*, 28 Cal. App. 4th 1205 (1994).  Accordingly, those actions were privileged law enforcement activity.

Further, "[w]hether a defendant's conduct can reasonably be found to be outrageous is a question of law that must initially be determined by the court; if reasonable persons may differ, it is for the jury to determine whether the conduct was, in fact, outrageous." *Berkley v. Dowds*, 152 Cal. App. 4th 518, 534 (2007).  "In evaluating whether the defendant's conduct was outrageous, it is not enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (cleaned up).  The defendant's conduct must "exceed[] all bounds usually

---

close relative, and a company's unlawful disposal of toxic waste which caused plaintiff to develop a fear of cancer after ingesting contaminated water) (citations omitted)

tolerated by decent society, [and be] of a nature which is *especially calculated to cause*, and does cause, mental distress of a very serious kind." *Ochoa v. Superior Court*, 39 Cal. 3d 159, 165 n.5 (1985) (italics in original). Plaintiffs cannot establish facts sufficient to establish an IIED claim under this demanding standard, even when viewing the facts in the light most favorable to the Plaintiffs.

Finally, Plaintiffs have no evidence of the requisite intent on the part of any government employee to cause the Plaintiffs severe emotional distress. Rather, all available evidence, including contemporaneous written communications between officers, shows that in deciding to separate the Plaintiffs, the ICE ERO officers believed they were acting with R.Y.M.R.'s best interests in mind based on the information they had at the time. SOF ¶¶ 16 – 21.

    **d.**  **Plaintiffs' Battery and Assault Claims Fail Because the ICE ERO Officers' Conduct Was Privileged.**

Plaintiffs allege the torts of assault and battery based on the actions of ICE ERO officers when they separated Plaintiffs. Even viewing the facts in the light most favorable to Plaintiffs, the officers' actions do not meet the high bar necessary to establish claims for assault or battery under California law.

In California, the definitions of assault and battery in cases between private parties do not apply in actions alleging excessive force by law enforcement officers. *See Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272-73 (1998) (defining a "police defendant" as "not similarly situated to the ordinary battery defendant and need not be treated the same"). "Unlike private citizens, police officers act under color of law to protect the public interest. They are charged with acting affirmatively and using force as part of their duties[.]" *Id.* "The question is whether a peace officer's actions were objectively reasonable based on the facts and circumstances confronting the peace officer. . . .The test is highly deferential to the police officer's need to protect himself and others." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009) (citation and internal quotations omitted).

Because the Plaintiffs' assault and battery claims concern the conduct of law enforcement officers acting in their official capacities, Plaintiffs must establish, for each cause of action, that the officers used or threatened to use "unreasonable force." *Avina v. United States*, 681 F.3d 1127, 1131 (9th Cir. 2012) (citing *Munoz v. City of Union City*, 120 Cal. App. 4th 1077 (2004)). To establish a claim of battery by a law enforcement officer (nondeadly force) under California law,

"a plaintiff must prove 1) the officer intentionally touched Plaintiff; 2) the officer used *unreasonable* force in doing so; 3) Plaintiff did not consent to that use of force; 4) Plaintiff was [harmed]; and 5) the officer's use of unreasonable force was a substantial factor in causing Plaintiff's harm." *Monroe v. Kirby*, No. 2:21-cv-00017, 2023 U.S. Dist. LEXIS 65255, at *3 (C.D. Cal. Apr. 11, 2023) (citing California Civil Jury Instructions ("CACI") No. 1305A) (emphasis added). To establish a claim of assault by a law enforcement officer under California law, the plaintiff must show: (1) the officer acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) the plaintiff reasonably believed they were about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that the officer was about to carry out the threat; (3) the plaintiff did not consent to the officer's conduct; (4) the plaintiff was harmed; and (5) the officer's conduct was a substantial factor in causing plaintiff's harm. *Avina*, 681 F.3d at 1130 (citing CACI No. 1301). Moreover, like a battery, "[a]ssault [by a police officer] requires the threat of use of unreasonable force." *Johnson v. United States*, No. 13-cv-02405, 2016 U.S. Dist. LEXIS 114996, at *37 (N.D. Cal. Aug. 26, 2016). Accordingly, for both claims, the plaintiff bears the burden of putting forth evidence of *unreasonable* force, or the threat of same.

California applies the reasonableness standard of the Fourth Amendment to the question of force by law enforcement.[11] *Johnson*, 2016 U.S. Dist. LEXIS 114996, at *37. This standard requires that law enforcement officers executing an arrest or detention use only such force as is "objectively reasonable" under the circumstances. *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). "Force is excessive when it is greater than reasonable under the circumstances." *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395, (1989)).

---

[11] Courts generally analyze excessive force claims of pre-trial detainees in the same way as those of arrestees. *See Andrews v. Neer*, 253 F.3d 1052, 1060 (8th Cir. 2001) ("The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness standard."); *Kingsley v. Hendrickson*, 576 U.S. 389, 397-98 (2015) ("[T]he appropriate standard for a pre-trial detainee's excessive force claim is solely an objective one. For one thing, it is consistent with our precedent. We have said that 'the Due Process Clause protects a pre-trial detainee from the use of excessive force that amounts to punishment.'") (citing *Graham*, 490 U.S. at 395, n. 10).

In assessing a claim of excessive force, courts must ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," because "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving . . . ." *Id.* at 395-97.

"A court (judge or jury) cannot apply this standard mechanically." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). Rather, the inquiry "requires careful attention to the facts and circumstances of each particular case." *Graham*, 490 U.S. at 396. Those circumstances include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397.

Whether other, less intrusive means might have produced the same result is irrelevant. Instead, "the inquiry is whether the force that was used . . . was reasonable, viewing the facts from the perspective of a reasonable officer on the scene." *Forrester v. City of San Diego,* 25 F.3d 804, 807 (9th Cir. 1994). "Whether officers hypothetically could have used less painful, less injurious, or more effective force in executing an arrest is simply not the issue." *Id.; see also Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." (citations omitted)).

Moreover, California law imposes a generalized duty on individuals not to resist arrest or detention. *People v. Baca*, 247 Cal. App. 2d 487, 496 (1966) ("[I]t has been the policy of this state that a citizen, subjected to an attempted arrest by a known police officer, must submit quietly and settle his rights at the station and in the courts and not on the street corner."). This rule applies even if the arrest or detention is unlawful. *See Evans v. City of Bakersfield*, 22 Cal. App. 4th 321, 333 (1994) ("[T]here is no right to use force, reasonable or otherwise, to resist an unlawful detention … .") (citing Cal. Penal Code § 834a); *King v. State of Cal.*, 242 Cal. App. 4th 265, 294 (2015) ("A person who is subjected to an unconstitutional detention, arrest, or search does not have a right to use force to resist that constitutional violation.")

Here, neither Plaintiff claims to have suffered physical injury.  Given that Plaintiffs sustained no physical injuries, the gravamen of their battery and assault claims is that ICE ERO officers allegedly "took out" a taser and pepper spray during the separation, and this action alone constituted "excessive force."  SOF ¶ 47.  Defendants dispute this allegation.  *See* SOF ¶¶ 57 – 57. But even viewing the facts in the light most favorable to Plaintiffs, there is insufficient evidence to meet Plaintiffs' burden to show excessive force sufficient to support claims of battery or assault by a law enforcement officer under California law.  *See, e.g.*, *Howell v. Moore*, 2017 WL 9478511, at *6 n.1 (E.D. Va. 2017) ("courts have consistently held that the mere presence of an intimidating factor (e.g., a police canine, or an unholstered taser) does not, without more, constitute the use of excessive force"); *People v. Ghebretensae*, 222 Cal. App. 4th 741, 761 (2013) (finding no excessive force where police officer "took out his Taser, but there was no evidence that he ever deployed the Taser"); *see also Evans v. Plummer*, 687 F. App'x 434, 442 (6th Cir. 2017); *Pollreis v. Marzolf*, No. 21-3267, 2023 U.S. App. LEXIS 10269, at *10 (8th Cir. Apr. 27, 2023); *Lemmo v. City of New York*, No. 1:08-cv-2641, 2011 U.S. Dist. LEXIS 112572, 2011 WL 4592785, at *8 n.5 (E.D.N.Y. Sept. 30, 2011); *Hall v. McGhee*, 762 F. App'x 837, 845 (11th Cir. 2019); *Bilal v. Driver*, 251 F.3d 1346, 1349 (11th Cir. 2001) (citing *Michenfelder v. Sumner*, 860 F.2d 328 (9th Cir. 1988)); *Brown v. Moore*, No. 13-3049, 2014 U.S. Dist. LEXIS 125068, at *13-14 (W.D. Ark. July 29, 2014);  *Remy v. Beneri*, No. 2:09-cv-4444, 2011 U.S. Dist. LEXIS 130968, at *12 (E.D.N.Y. Nov. 9, 2011); *Pullman v. Schwarzenegger*, No. 11-cv-202, 2011 U.S. Dist. LEXIS 146164, 2011 WL 6396631, at *6 (S.D. Cal. Dec. 20, 2011).

### D.  <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant summary judgment in favor of the United States on each and every claim asserted by the Plaintiffs.

|

|

|

|

|

Dated: June 30, 2023                      Respectfully submitted,

                                          MARKENZY LAPOINTE
                                          UNITED STATES ATTORNEY

                              By:    *John S. Leinicke*
                                          JOHN S. LEINICKE
                                          ASSISTANT UNITED STATES ATTORNEY
                                          Fla. Bar No. 64927
                                          United States Attorney's Office
                                          Southern District of Florida
                                          99 N.E. 4th Street, Third Floor
                                          Miami, FL 33132
                                          Tel: (305) 961-9212
                                          E-mail: John.Leinicke@usdoj.gov

                                          *Counsel for Defendant United States of
                                          America*